UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ORA NAFTALI AND RONI NAFTALI, AS
TRUSTEES OF THE EDTOM TRUST DATED APRIL
10, 2011

                                                    Plaintiff,

                        v.

NEW YORK DEFERRED EXCHANGE CORP.,
FRITZ TRINKLEIN, and JEFFREY L. WECHSLER

                                                    Defendants.

**AMENDED COMPLAINT**

Case No.: 15-cv-07152 (JMA)(ARL)

Plaintiff, Ora Naftali and Roni Naftali (jointly, the "Trustees") as Trustees of the Edtom Trust ("Plaintiff" or the "Trust"), by and through its attorneys, the Law Offices of Kishner & Miller, as and for its complaint ("Complaint") against defendants New York Deferred Exchange Corp. ("Defendant NYDEC"), Fritz Trinklein ("Defendant Trinklein"), and Jeffrey L. Wechsler ("Defendant Wechsler") (Defendant NYDEC, Defendant Trinklein, and Defendant Wechsler shall collectively hereinafter be referred to as the "Defendants"), alleges upon information and belief as follows:

## PRELIMINARY STATEMENT

1.      This action was initially commenced by the Plaintiff to collect upon One Million Three Hundred Four Thousand Two Hundred Six Dollars ($1,304,206.00) ("Plaintiff's Monies") which monies were improperly held by Defendant NYDEC and Defendant Trinklein for a period of over one (1) year via their conversion and misappropriation of the Plaintiff's Monies. During this extensive period of time, neither Defendant NYDEC nor Defendant Trinklein exercised even the slightest diligence or care as a qualified intermediary ("QI") in the Plaintiff's like-kind exchange

#

process pursuant to Internal Revenue Code §1031 (the "1031 Exchange") and unilaterally determined that they were somehow entitled to hold the Plaintiffs Monies.

2.      In fact, *after* the instant Action was instituted, Defendant NYDEC and Defendant Trinklein agreed to finally return approximately One Million One Hundred Four Thousand Two Hundred Six Dollars ($1,104,206.00) of the Plaintiff's Monies, while Defendant NYDEC and Defendant Trinklein also simultaneously required that Plaintiff's current counsel, the Law Offices of Kishner & Miller ("Escrow Agent") hold the sum of Two Hundred Thousand Dollars ($200,000.00) ("Escrow Funds"). The rationale for the holding of the Escrow Funds in escrow is for the dubious purpose of purportedly securing payment to Defendant NYDEC and Defendant Trinklein in the unlikely event that the Internal Revenue Service ("IRS") assesses penalties, interests or fees against Defendant NYDEC despite the fact that all potential tax obligations of the Plaintiff were in fact paid to the IRS.

3.      Defendant NYDEC and Defendant Trinklein also refuse to provide an accounting of Plaintiff's monies leading Plaintiff fear whether the Defendants still have Plaintiff's monies.

4.      The impetus of this entire situation was the inadequate representation Plaintiff received from Defendant Wechsler who improperly advised the Plaintiff that the monies which Plaintiff earned from the sale of their condominium commonly known as Unit 42U1, 322 West 57th Street, New York, New York 10019, Block: 01047, Lot: 2414 (the "Premises") could be placed into a 1031 Exchange after the closing of the Premises had already occurred.

5.      As set forth herein, on October 10, 2014, Plaintiff sold their Premises and collected net proceeds of $1,795,405.61 which proceeds were then turned over to Defendant NYDEC and Defendant Trinklein in a purported professional capacity in that Defendant NYDEC and Defendant Trinklein held themselves out as a Qualified Intermediary Exchange Company (defined *infra*).

#

Plaintiff retained Defendant NYDEC to engage in what is commonly known as a 1031 Exchange process (described *infra*) which is governed by Section 1031 of the Internal Revenue Code ("IRC") to defer the payment of capital gains taxes when dealing with real property. However, from the onset, all of the Defendants knew, or with the slightest degree of reasonable care and diligence should have known, that the 1031 Exchange was defective, invalid, and would not stand up to IRS scrutiny if ever challenged due to, among other things, the fact that Plaintiff was deemed a "foreign entity" and did not have a Tax Identification Number or a Social Security Number. As such, Plaintiff comes before this Court in the hopes that it will receive back its monies and/or obtain judgment against the Defendants based upon Defendants' acts of conversion or, at a minimum, because of Defendants' breach of contract and negligent conduct (described *infra*). Plaintiff also seeks an immediate accounting of all monies delivered to Defendant NYDEC and Defendant Trinklein to make a determination as to whether Plaintiff's monies have at any time been converted and/or co-mingled as opposed to being segregated.

## JURISDICTION

6.      This Court has subject matter jurisdiction based on diversity of citizenship/alienage under 28 U.S.C. § 1332(a)(2) because there is complete alienage diversity between the parties and the amount of controversy exceeds the sum of $75,000.00, exclusive of fees and costs. 28 U.S.C. In particular, § 1332(a)(2) provides for jurisdiction by this Honorable Court when a matter in dispute involves citizens of a U.S. State and citizens or subjects of a foreign state. The Plaintiffs are citizens of the sovereign nation of Israel while the Defendants are entities of a U.S. State.

7.      This court may exercise supplemental jurisdiction over all state related law claims under 28 U.S.C. § 1367.

#

## VENUE

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as upon information and belief the Defendants Trinklein and Wechsler are residents of the State of New York and Defendant NYDEC's principal place of business is located within the jurisdiction of the Eastern District of New York.

## THE PARTIES

9.      At all times relevant herein, Plaintiff is a trust established under and pursuant to the laws of the State of New York, with an address care of Roni and Ora Naftali, 77 Hassadot Road, Kfar Shmaryahu 46910, Israel. The Trust was created for the sole purpose of holding ownership/the deed of the Premises. The Trust had no other purpose besides the ownership/maintenance of the Premises and engaged in no other business besides those ancillary issues that deal with the ownership of the Premises. The Trustees and beneficiaries under the Trust are the individuals, husband and wife, Ora and Roni Naftali.

10.     Upon information and belief, despite the fact that the Trust was created under the laws of the State of New York, for all relevant purposes such as IRS tax filings and New York State tax filings and for such other matters as may be relevant herein, the Trust/Plaintiff is considered to be a "foreign" entity because the Trustees and beneficiaries of the Trust are citizens of the sovereign Nation of Israel.

11.     Ora Naftali is a citizen of Israel with her residence at 77 Hassadot Road, Kfar Shmaryahu 46910, Israel.

12.     Roni Naftali is a citizen of Israel with his residence at 77 Hassadot Road, Kfar Shmaryahu 46910, Israel.

#

13.     Upon information and belief, Defendant NYDEC was and still is a corporation duly organized under and pursuant to the laws of the State of New York having a Department of State process address at 71-19 Northern Boulevard, Jackson Heights, New York 11372 and with a principal place of business located at 6800 Jericho Turnpike, Suite 120W, Syosset, New York 11791.

14.     Upon information and belief and at all times hereinafter mentioned, Defendant Trinklein is an individual with a principal place of business at 71-19 Northern Boulevard, Jackson Heights, New York 11372.

15.     Upon information and belief and at all times hereinafter mentioned, Defendant Trinklein is the director, officer, and shareholder of Defendant NYDEC.

16.     Upon information and belief, Defendant NYDEC was never formed to act or behave as a corporation, but instead was formed solely as an attempt to insulate Defendant Trinklein from liability for his unlawful and wrongful actions, such as the actions taken herein by the Defendants against the Plaintiff.

17.     Upon information and belief and at all times relevant herein, Defendant Wechsler was and still is an individual residing in the State of New York with an address of 60 West 42nd Street, Suite 1133, New York, New York 10165.

18.     Upon information and belief and at all times relevant herein, Defendant Wechsler was and still is an attorney licensed in the State of New York, first licensed to practice law in the State of New York in 1998, having a New York Attorney Registration Number of 2895324, and has a principal place of business located at 60 West 42nd Street, Suite 1133, New York, New York 10165.

19.     Upon information and belief and at all times relevant herein, Defendant Wechsler was and still is an certified public account ("CPA") licensed in the State of New York, first licensed to practice as a CPA in the State of New York in 1990, having a New York CPA License Number of 062854, and has a principal place of business located at 60 West 42nd Street, Suite 1133, New York, New York 10165.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**CREATION OF TRUST AND ACQUISITION AND SALE OF THE PREMISES**

20.     On or about April 10, 2011, the Trust was established by Ora and Roni Naftali, as settlors and Trustees, for the purpose of holding ownership of the Premises.

21.     On or about May 5, 2011, the Plaintiff took ownership of the Premises by way of a residential unit deed executed by the Plaintiff, as purchaser, and a company by the name of UT Borrower LLC, as seller. Said residential unit deed was recorded in the Office of the City Register of the City of New York on July 25, 2011 under City Register File Number (CRFN) 2011000261863 thereby having vested ownership of the Premises under the name of the Trust.

22.     On or about July 29, 2014 the Plaintiff, as seller, and an individual by the name of Yanping Zhou, as purchaser ("Purchaser"), entered into a certain agreement entitled Contract of Sale – Condominium Unit and Rider to Contract of Sale ("Contract of Sale") concerning the transfer of the Premises ("Sale of the Premises"). Pursuant to the terms and conditions of the Contract of Sale, the purchase price of the Premises was the sum of $3,950,000.00 (the "Purchase Price").

23.     The Plaintiff retained and hired Defendant Wechsler who acted as both the attorney and CPA of the Trust during the transaction of the Sale of the Premises.

24.     The Sale of the Premises occurred on October 10, 2014 (the "Closing Date,"), as on said date the Plaintiff executed a Bargain and Sale Deed dated October 10, 2015 (the "Deed"),

#

thereby transferring ownership of the Premises to the Purchaser. The Deed was recorded in the Office of the City Register of the City of New York on October 29, 2014, under City Register File Number (CRFN) 2014000360532.

**THE IRS 1031 EXCHANGE PROCESS**

25.     In accordance with Section 1445 of the Internal Revenue Code ("IRC") and other correlating relevant statutes governing such matters, whenever a foreign person, sells or otherwise disposes of a U.S. real property interest, said foreign person is subject to a certain income tax withholding. In such situations, Section 1445 of the IRC requires that the purchaser of a U.S. real property interest acquiring property from a foreigner becomes a "withholding agent" and is required to withhold 10% of the amount realized on the disposition (i.e. 10% of the purchase price) in order to ensure that any taxable gain realized by the foreign transferor is actually paid (the "10% Mandatory Withholding"). Therefore, in the normal course of business the Purchaser of the Premises would have been required to withhold 10% of the Purchase Price (i.e. $395,000.00) as 10% Mandatory Withholding, which would have been then payable to the IRS.

26.     Under certain limited circumstances, a foreign entity may be allowed to defer the 10% Mandatory Withholding if they engage in a tax-deferred exchange process commonly known as a 1031 exchange process, which is governed by IRC §1031 (the "1031 Exchange"). In sum and substance, the reason for this tax deferral of the 10% Mandatory Withholding is so that the net proceeds derived from a sale will eventually go into the purchase of another like kind property in the United States. In this manner, the 1031 Exchange encourages sellers to use the proceeds derived from the sale of their property to purchase a new like-kind property in the United States. However, if the monies are not utilized for the purposes of purchasing a new property within a prescribed

#

period of time,the 1031 Exchange is not effective and the 10% Mandatory Withholding must be paid to the IRS.

27.     In order to have a proper 1031 Exchange, the seller, among other matters, has to meet two non-extendable time limits. First, the potential replacement properties must be identified within 45 days from the date of the sale of the property (the "Identification Period"). This 45-day Identification Period needs to be abided by and cannot be extended whatsoever, even if the 45th day happens to fall on a Saturday, Sunday or on a United States holiday. Second, the replacement property must be received and the exchange completed no later than 180 days after the sale of the property (the "Exchange Period"). This 180-day Exchange Period is not extendable under any circumstances.

28.     To this effect, investors usually retain what is known as a qualified intermediary exchange company ("Qualified Intermediary Exchange Company") to facilitate the 1031 Exchange and assure that the required documentation is properly executed. Also, pursuant to the safe harbor provisions of Treas. Reg. § 1.1031(k)-1, the Qualified Intermediary Exchange Company holds the proceeds of the sale of the property in trust for the seller to avoid issues of actual or constructive receipt of the exchange proceeds by the seller. In sum and substance, the purposes of the 1031 Exchange is so that no monies may ever come under the control of the seller; as such, all of the net proceeds from a sale go directly to the Qualified Intermediary Exchange Company to later be delivered for the purchase of a new property or, if the exchange does not proceed forward, the monies would go back to the seller. However, under no circumstances do any of the proceeds belong to the Qualified Intermediary Exchange Company. Quite to the contrary, these monies belong to the seller. As will be discussed later herein, in this particular matter Defendant NYDEC, purportedly acting like a Qualified Intermediary Exchange Company, has maintained dominion and control over

the proceeds despite the fact that there is no longer any recognizable 1031 Exchange currently in effect.

29.     In a typical 1031 Exchange, a Qualified Intermediary Exchange Company is engaged weeks, if not months, prior to the scheduled closing of the transaction and specific language is included in the contract of sale pertaining to the 1031 Exchange. Typically, prior to the closing the Qualified Intermediary Exchange Company reviews the contract of sale and requires a number of documents to be executed by the sellers either prior to or at the closing of the transaction. Furthermore, the Qualified Intermediary Exchange Company typically requires that the purchaser's checks, instead of being made payable to the seller directly, are made payable to the Qualified Intermediary Exchange Company so as to avoid any proceeds being in the possession of the seller. However, as will be detailed herein, because of the negligence and improper conduct of the Defendants, essentially none of the customary and required 1031 Exchange rules were followed.

**THE DEFECTIVE 1031 EXCHANGE WHICH THE DEFENDANTS KNEW TO BE IMPROPER AND THE DEFENDANTS TAKING OF PLAINTIFF'S $1,795,405.61 MILLION DOLLARS**

30.     The Closing Date of the Premises occurred on October 10, 2014. Upon information and belief, on the Closing Date, Plaintiff's prior counsel, Defendant Wechsler, recommended, for the first time, that the Plaintiff engage in a 1031 Exchange. Despite only mentioning that the Plaintiff consider engaging in a 1031 Exchange on the actual Closing Date, Defendant Wechsler caused all checks issued on the Closing Date by the Purchase, as well as a check issued directly from the attorney escrow account of Defendant Wechsler, to be made directly payable to the Trust, in direct violation of the 1031 Exchange rules.

#

31.     Defendant Wechsler recommended Defendant NYDEC as a trustworthy candidate to act as Qualified Intermediary Exchange Company and Plaintiff decided to engage Defendant NYDEC based upon the advices of Defendant Wechsler.

32.     Defendant NYDEC is an entity who holds itself out to the public as an experienced/trustworthy 1031 Qualified Intermediary Exchange Company. Defendant NYDEC's website states that: *Due to its time-tested reputation of integrity and professionalism, NYDEC has been an active acquisition target by large banks and title companies for decades. NYDEC principals have respectfully declined these opportunities, preferring to continue as an unencumbered independent practitioner helping property owners in a more boutique, strategic planning fashion.*

33.     Further, Defendant NYDECs' website sets forth the procedure to which somebody engaging in a 1031 Exchange must follow. NYDEC's website provides the following:

Step 1: Arrive at an agreement to sell property to another party.

Step 2: Contact NYDEC in order to prepare the necessary documentation **prior** to the sale.

Step 3: **At the time** of the Relinquished Property closing ("RP Closing Date"), all net sale proceeds **must be made payable to a newly established segregated exchange account and not the Exchanger.**

Step 4: Within 45 days following the RP Closing Date, the Exchanger must identify in writing, potential real estate properties for acquisition.

Step 5: Negotiate the purchase of Acquired Property(ies) from third party seller(s), requesting funds held in the Exchange Account for down payment(s) held by seller's attorney.

Step 6: Within 180 days following the RP Closing Date or the Exchanger's tax filing due date, including extensions (whichever is sooner), the Exchanger must finalize the acquisition of any or all of the properties identified in Step 4 above. In order to avoid any capital gains tax from the sale of the Relinquished Property, the Acquired Property must be of equal or greater value (reduced by reasonable and customary closing costs). In addition, the Exchanger cannot end up with net cash at the conclusion of the exchange

#

34.     Upon information and belief, Defendants did not follow the correct procedures but rather, in an attempt to gain Plaintiff's Monies, did not inform Plaintiff of the defects in the attempted 1031 exchange process. The 1031 exchange process was defective since its commencement and continued to be defective. Among the various failures of the Defendants are the following: 1. Defendants neither reviewed nor prepared any documents prior to the Sale of the Premises and went into the 1031 Exchange not knowing any pertinent facts relating to the Sale of the Premises such as the basic fact that the Plaintiff was a foreigner without a Tax ID number; 2. At the time of the Sale of the Premises the net sale proceeds were not made payable to a newly established segregated exchange account which should have been set up by the Defendants prior to the closing; in fact, Defendants did not even know that Plaintiff did not have a Tax ID number which would have been required to open up the required segregated account by the Defendants. 3. Plaintiffs did not identify in writing any potential real estate property for acquisition within 45 days subsequent to the Sale of the Premises; as such, the 1031 Exchange should not have been continued subsequent to the 45 day mandatory identification process; 4. Within 180 days following the Sale of the Premises, there was no property for which the money was exchanged/invested. As such, the 1031 Exchange Process was, from its commencement, not valid and negligently handled. **The 1031 Exchange Process continues not to be valid and is no longer in effect. Regardless, Defendant NYDEC and Defendant Trinklein wrongfully maintain Plaintiff's Escrow Funds.**

**DEFENDANT NYDEC AND DEFENDANT TRINKLEIN AGREE TO ACT AS A 1031 EXCHANGE INTERMEDIARY WITHOUT ANY PRIOR REVIEW OF DOCUMENTS AND WITHOUT OPENING UP A SEGREGATED BANK ACCOUNT UNDER PLAINTIFF'S TAX EIN WHILE DEFENDANT WECHSLER NEGLIGENTLY AND IMPROPERLY GUIDES THE PLAINTIFF INTO AN IMPROPER 1031 EXCHANGE.**

35.     Upon information and belief, on the Closing Date, Defendant Wechsler, for the first time, contacted Defendant Trinklein, president and principal of Defendant NYDEC with regard to

#

the Plaintiff's sale of the Premises. Defendant Trinklein agreed that Defendant NYDEC would serve as the Qualified Intermediary Exchange Company in Plaintiff's intended 1031 Exchange, despite not having reviewed any documentation relating to the Trust, the Trustees, the Premises or the underlying transaction. Defendants knew or should have known that the Plaintiff did not have a Tax ID and that further Plaintiff was a foreign entity. Upon information and belief, Defendant NYDEC does not deal with foreign entities and is not familiar with the various rules and regulations dealing with foreigners. Furthermore, without Plaintiff having a Tax EIN number Defendants were not capable of opening up a segregated escrow account under Plaintiff's name.  As such, the 1031 Exchange was invalid from the onset and the Defendants should have not engaged in the 1031 Exchange process because the IRC §1031 rules were not followed.

36.     Defendant Wechsler, in his capacity as a CPA, should have known the various issues and, as an attorney, should have never advised or allowed the Plaintiff to proceed on the Closing Date via a 1031 Exchange as it was clearly invalid and improper in both the form and manner in which it was pursued from the outset.

**DEFENDANT NYDEC AND DEFENDANT TRINKLEIN'S FAILURE OF OPENING OF AN ACCOUNT WHICH SHOULD HAVE BEEN OPENED NO LATER THAN THE CLOSING DATE AND SHOULD HAVE BEEN PLACED UNDER PLAINTIFF'S TAX EIN**

37.     Defendant NYDEC and Defendant Trinklein's website states that:

> *Protecting your money is NYDEC's most important function. Many precautions have been instituted that together provide the most secure accounts available in the country.*
>
> * *All exchange funds are housed in segregated bank accounts (bearing the exchanger's tax identification number)*

38.     As previously mentioned, Plaintiff did not have a Tax EIN. This was a critical fact that the Defendants were aware of and, therefore, Defendant NYDEC and Defendant Trinklein

#

failed to open up a segregated escrow account under the Tax EIN of the Plaintiff. Regardless, Defendants proceeded forward with the 1031 Exchange Process misguiding the Plaintiffs in believing that they had a segregated bank account with all of their funds being held in an appropriate manner and as represented by the Defendants.

**DEFENDANTS' IMPROPER RECOMMENDATION TO RE-CUT CHECKS AT THE CLOSING THEREBY MAKING A DEFECTIVE 1031 EXCHANGE BECAUSE PLAINTIFF HAD CONSTRUCTIVE CONTROL OF THE PROCEEDS FROM THE SALE**

39.     To effectuate a proper 1031 Exchange, the seller of a property must never come into possession of the proceeds derived from the sale and there may be no point in time in which monies may be payable to the Plaintiff or under Plaintiff's control. However, on the Closing Date the following checks were issued in favor of the Plaintiff towards the Purchase Price ("Original Closing Checks"):

a.      Check number 113232059 dated October 9, 2014, from the George R. Bunn, Jr., Attorney Trust Account (attorney for Yanping Zhou), in the amount of One Million Four Hundred Seven Thousand Four Hundred Sixteen and 96/100 Dollars ($1,407,416.96) payable to the Plaintiff.

b.      Check number 113185468 dated October 10, 2014, from the Jeffrey L. Wechsler Attorney at Law escrow account (Defendant Wechsler) in the amount of Three Hundred Eighty-Five Thousand Dollars ($385,000.00) payable to the Plaintiff.

c.      Check number 2452 dated October 10, 2014, from Jeffrey L. Wechsler Attorney at Law escrow account (Defendant Wechsler), in the amount of Two Thousand Seven Hundred Eighty-Eight Dollars and 65/100 ($2,788.65) payable to the Plaintiff.

d.      Check number 3146 dated October 10, 2014, from the George R. Bunn, Jr.,
Attorney Trust Account, in the amount of Two Hundred Dollars ($200.00) payable
to the Plaintiff.

e.      Other checks were cut in favor of the New York City Department of Finance
(for transfer taxes) and to Mortgage Service Center (to pay off the Plaintiff's
mortgage on the Premises), as well as other checks written to other entities for other
fees due and owing relating to the Sale of the Premises but which are not relevant to
the causes of action outlined herein.

40.     Upon information and belief, the Defendants knew that the Original Closing Checks
were cut in favor of the Plaintiff, which raises issues of constructive receipt of the sale proceeds by
Plaintiff, which potentially invalidates the 1031 Exchange. Defendant NYDEC, in a complete and
reckless disregard for the 1031 Exchange procedures, and in order to gain a fee for services and
take in Plaintiff's proceeds, continued the 1031 Exchange process and held Plaintiff's monies.

41.     Upon information and belief, on or about the Closing Date, the Defendants and, in
particular both Defendant Wechsler and Defendant Trinklein improperly directed the Plaintiff to
take the Original Closing Checks and to reissue them in favor of Defendant NYDEC. To this effect,
relying on the professional advices of the Defendants, the Original Closing Checks were voided and
replaced by the following checks all made payable to NYDEC (the "Replacement Checks"):

a.      Check number 3149 dated October 10, 2014, from George R. Bunn, Jr.,
Control IOLA account (attorney for the Purchaser), in the amount of One Million
Four Hundred Seven Thousand Six Hundred Sixteen and 96/100 Dollars
($1,407,616.96) made payable to "NYDEC fbo The Edtom Trust".

b.      Check number 2454 dated October 10, 2014, from Jeffrey L. Wechsler, Attorney at Law, Attorney Escrow IOLA account (Defendant Wechsler) in the amount Three Hundred Eighty-Seven Thousand Seven Hundred Eighty-Eight and 65/100 Dollars ($387,788.65) made payable to "NYDEC fbo The Edtom Trust".

42.     The total amount of checks cut in favor of Defendant NYDEC on or about the Closing Date was in the sum of One Million Seven Hundred Ninety-Five Thousand Four Hundred Five and 61/100 Dollars ($1,795,405.61) (these monies shall hereinafter be referred to as the "Exchange Proceeds").

**THE IMPROPER ISSUANCE OF DOCUMENTS ON THE CLOSING DATE, THE CONTINUED DEFECT OF NOT HAVING A TAX IDENTIFICATION NUMBER AND THE IMPROPER OPENING OF AN ACCOUNT SUBSEQUENT TO THE CLOSING DATE WHICH ACCOUNT WAS NEVER OPENED UP UNDER THE TAX ID/NAME OF THE PLAINTIFFS**

43.     Upon information and belief, on or about the Closing Date, Defendant NYDEC and Defendant Trinklein issued certain documents dated October 10, 2014, in an attempt to proceed forward with the 1031 Exchange:

a.      Exchange Agreement

b.      Assignment and Acceptance-Sale of Relinquished Property Contract

c.      Identification of Acquired Property form

d.      Certificate of Insurance

e.      Defendant's Audit Defense Certificate

f.      W-9 form

g.      Fund Request form

44.     Upon information and belief, on October 14, 2014, *four days after the closing of the Premises had taken place*, Defendant Wechsler mailed or otherwise caused the delivery to

#

Defendant NYDEC and Defendant Trinklein of the Replacement Checks along with other documents, including:

a.    Exchange Agreement dated October 10, 2014 by and between Defendant NYDEC and the Plaintiff, which was duly signed by the Plaintiff and Defendant Trinklein, as president of Defendant NYDEC ("Exchange Agreement."). It must be noted that in this particular document the Plaintiff did not enter its Federal Tax Identification Number ("EIN"), as it did not have one (and the Defendants were fully aware of Plaintiff's and not having an EIN).

b.    Assignment and Acceptance Sale of Relinquished Property pursuant to which the Plaintiff assigned to Defendant NYDEC its right, title, and interest in the transaction for the sale of the Premises.

c.    Identification of Acquired Property Form, which was incomplete but signed by the Plaintiff.

d.    Signed but incomplete W-9 Form. Again, it should be noted that the W-9 form submitted by the Plaintiff did not include Plaintiffs Tax EIN as the Plaintiff did not have one (and the Defendants were fully aware of it). The documents identified in (a)-(d) are hereinafter referred to as the "Exchange Documents".

45.    The Exchange Documents which are customarily reviewed, signed and approved by the Qualified Intermediary Exchange Company no later than the actual closing date in this case was being reviewed and handled many days subsequent to the Sale of the Premises. The Exchange Documents were first directed by Defendant Wechsler to Defendant NYDEC and Defendant Trinklein four days subsequent to the Closing Date.

#

46.     Upon information and belief, Defendant Wechsler, Defendant NYDEC and Defendant Trinklein knew when the Exchange Documents were issued and received, or in the exercise of reasonable care and diligence should have known, that the 1031 Exchange was inappropriate/invalid and that the Plaintiff should have been advised not to proceed forward with the 1031 Exchange. Upon information and belief, the 1031 Exchange was invalidated, at a minimum, by the following aspects:

a.      As previously mentioned, the Plaintiff did not enter its EIN in the Exchange Documents as Plaintiff did not have such a Tax EIN. Therefore, upon information and belief, Defendants knew, or in the exercise of reasonable care and diligence should have known that the Trust did not have a valid EIN and, further, that the Trust was deemed to be foreign entity. In addition, Defendants knew, or in the exercise of reasonable care and diligence should have known that they should not be taking the Exchange Proceeds as they would not be able to open up a segregated escrow account in the name of the Trust in which the Exchange Proceeds would gain interest, as would have been required under the Exchange Agreement.

b.      Defendants knew, or in the exercise of reasonable care and diligence should have known that the fact that the Original Closing Checks were cut in favor of the Plaintiff raises issues of constructive receipt of the Exchange Proceeds and potentially invalidates the 1031 Exchange.

c.      The fact that the Exchange Proceeds were received four days subsequent to the actual Closing Date and not deposited into a proper exchange account also potentially invalidated the entire 1031 Exchange.

#

**DEFENDANT NYDEC AND DEFENDANT TRINKLEIN'S TAKING CONTROL OF PLAINTIFF'S $1,795,405.61 AS PART OF AN INVALID 1031 EXCHANGE, DEFENDANT NYDEC AND DEFENDANT TRINKLEIN'S OPENING OF AN ACCOUNT 12 DAYS SUBSEQUENT TO THE CLOSING DATE IN VIOLATION OF THE 1031 EXCHANGE RULES; THE ACCOUNT DOES NOT BEAR INTEREST IN VIOLATION OF THE EXCHANGE AGREEMENT.**

47.     On October 16, 2014, the Defendant NYDEC and Defendant Trinklein took full possession and control of Exchange Proceeds in the amount of $1,795,405.61, purportedly depositing the proceeds into an account at Sterling National Bank ending in 0770 in the name of Defendant NYDEC.

48.     Upon information and belief and contrary to the terms of the Exchange Agreement, on October 22, 2014, twelve days after the Closing Date, the Defendant NYDEC and Defendant Trinklein opened up a certain 1031  account with Sterling National Bank in the name of "New York Deferred Exchange Corporation 1031 Escrow Account F/B/O The Edtom Trust" (the "Escrow Account.").

49.     Upon information and belief, and contrary to the terms of the Exchange Agreement, any monies deposited into the Escrow Account would not accrue interest. As a result, upon information and belief, Defendant NYDEC and Defendant Trinklein breached the Exchange Agreement, specifically Article 5(a) thereof, which provides, in relevant part, that:

> All funds received by Bank shall be deposited on behalf of [Plaintiff] into a escrow account until verification by Bank that all funds have cleared and are deemed "available funds." Said funds shall be transferred to the Exchange Escrow Account within two (2) business banking days of when said funds are deemed available, which funds shall be invested and reinvested as a segregated bank account under which [Defendant] continues to serve as escrowee. The commencement date for accrual of interest on [Plaintiff's] behalf, and for [Plaintiff's] benefit, shall be within two (2) business banking days of the funding of said segregated Exchange Escrow Account.

50.     Upon information and belief, on or about October 22, 2014, Defendant Wechsler

executed a certain document claiming to have the authority to bind the Trust and purported to waive any interest which the Trust may earn on the Exchange Proceeds deposited with Defendant NYDEC and Defendant Trinklein.

51.    Upon information and belief, Defendant Wechsler never received any authorization or authority from the Trust to bind the Trust to any agreement including an agreement which would purport to waive interest to be earned on the Exchange Proceeds.

52.    Upon information and belief Defendant Wechsler knew or should have known that only trustees of a trust may bind a trust to an agreement and, in particular, this Trust did not ever delegate any duty to Defendant Wechsler to bind the Trust to any agreement including one which would purport to waive interest to be earned on the Exchange Proceeds.

**SUBSEQUENT INVALIDATION OF THE 1031 EXCHANGE FOR FAILURE TO MEET THE REQUIRED TIME LIMITS WHICH SHOULD HAVE CAUSED THE IMMEDIATE RELEASE OF THE EXCHANGE PROCEEDS**

**A.    Invalidation for Failure to Meet the 45 Day Identification Period Subsequent to the Closing Date.** #
#

53.    Pursuant to the initial correspondence and documents that were submitted to the Plaintiff from the Defendants including specifically the Exchange Agreement, the Defendants advised the Plaintiff that pursuant to the rules of IRC §1031 the Plaintiff was required to complete and submit the Identification of Acquired Property Form to Defendant NYDEC "by midnight of the 45th day after the Relinquished Property Closing Date [45 days after October 10, 2014, i.e. November 24, 2014], which concludes the Exchange Identification Period."

54.    However, in or about November 2014, the Plaintiff advised the Defendants that it had not, nor would it, be identifying or closing on an acquired property; therefore, the 1031 Exchange would no longer be valid and Plaintiff would not be engaging in the 1031 Exchange.

55.    In this regard, Article 2(a) of the Exchange Agreement provides, in relevant part:

#

If Acquired Property has not been identified by [Plaintiff] on or before the [Subject Premises] Closing Date, [Plaintiff] may, at any time prior to the expiration of the period ending on midnight on the 45th day after the [Premises] Closing Date, referred to herein as the "Identification Period", identify Acquired Property to [Defendant]…For purposes of this Article, identification of Acquired Property only occurs if the Property is designated as Acquired property in writing, signed by [Plaintiff], and hand delivered, sent by certified mail, or faxed to [Defendant] before the expiration of the Identification Period.

56.     In addition, Article 5(a) of the Exchange Agreement provides, in relevant part:

No amounts in the Exchange Escrow Account shall be paid, loaned, pledged or otherwise made available to [Plaintiff] until: (i) If [Plaintiff] has not identified any Acquired Property on or before 45 days from the [Premises] Closing Date, after 45 days from the [Premises] Closing Date…

57.     The Plaintiff did not identify any acquired property during the 45-day Identification Period subsequent to the Closing Date. As a result, pursuant to federal tax regulations and Article 5(c) of the Exchange Agreement, the Plaintiff was entitled receive the Exchange Proceeds as of the 46th day after the Closing Date (i.e. November 25, 2014), as at that time the 1031 Exchange was no longer a proper exchange.

58.     Upon information and belief, despite knowing that as of November 25, 2014 there was no longer a proper 1031 Exchange, Defendants failed to notify the Plaintiff that the 1031 Exchange was no longer valid and could no longer be effectuated but rather maintained Plaintiff's Exchange Proceeds in the amount $1,795,405.61.

**B.      Invalidation for Failure to Meet the 180 Day Exchange**

59.     On April 8, 2015 the 180-day Exchange Period ended without the Plaintiff having closed on any exchange property. The Exchange Agreement, Article 5 (C) provides, in relevant part, that: *{T}he exchange escrow account shall terminate on the day after the exchange period*

#

*expires and NYDEC { Defendant} shall…. pay all remaining amounts in the Exchange Account to Owner {"Plaintiff"}.* As a result, pursuant to the Exchange Agreement and IRC §1031, the 1031 Exchange was not viable at all and the Plaintiff was entitled to receive the Exchange Proceeds. However, despite demand Defendant NYDEC and Defendant Trinklein failed to release the Exchange Proceeds.

60.     Upon information and belief, Defendant NYDEC and Defendant Trinklein wrongfully continued, more than a year after the 1031 Exchange was invalidated, to maintain control, custody, and possession of the Exchange Proceeds.

**DEFENDANT NYDEC AND TRINKLEIN'S REFUSAL TO RELEASE PLAINTIFF'S EXCHANGE PROCEEDS CLAIMING THAT THEY ARE THE WITHHOLDING AGENT AND THAT MONIES NEED TO BE FILED WITH THE IRS; PLAINTIFF'S COMPLIANCE WITH THE DEFENDANTS' DEMAND AND DEFENDANTS' CONTINUED REFUSAL TO RETURN PLAINTIFF'S MONIES**

61.     Since the 1031 Exchange was no longer viable and the Plaintiff had already placed the Defendants on notice that it would not be identifying or purchasing an acquired property, upon information and belief, in or about January 2015, Defendant Wechsler made numerous oral and written demands upon Defendant NYDEC and Defendant Trinklein for the return of the Exchange Proceeds. However, despite the Plaintiff's due demands, Defendant NYDEC and Defendant Trinklein unlawfully refused, and continued to refuse for more than a year, to return the Exchange Proceeds to the Plaintiff.

62.     Upon information and belief, on or about that time, Defendant NYDEC and Defendant Trinklein stated to the Plaintiff that the Plaintiff had to pay certain "withholding taxes" that could be due to the IRS before Defendant NYDEC and Defendant Trinklein would release the Exchange Proceeds to the Plaintiff.

#

63.     Upon information and belief, Defendant NYDEC and Defendant Trinklein advised the Plaintiff that since the Purchaser of the Premises had not made the 10% Mandatory Withholding pursuant to IRC §1445 of the IRC, Defendant NYDEC was now deemed to be the "withholding agent" and was responsible for submitting the payment of the 10% Mandatory Withholding (i.e. 10% of the Purchase Price, $395,000.00) to the IRS. As such, Defendant NYDEC and Defendant Trinklein's stated that once the 10% Mandatory Withholding was authorized and approved by the Plaintiff and submitted to the IRS that Defendant NYDEC and Defendant Trinklein would then immediately release the remainder of the Exchange Proceeds in Defendant NYDEC and Defendant Trinklein's possession to the Plaintiff. Of course, the statement was false in that even after the 10% Mandatory Withholding was effectuated and the necessary papers filed with the IRS Defendant NYDEC and Defendant Trinklein still continued to refuse to turn over Plaintiff's monies.

64.     Upon information and belief, in or about April 2015, Defendant NYDEC and Defendant Trinklein unilaterally prepared and filed with the IRS the Form 8288, U.S. Withholding Tax Return for Dispositions by Foreign Persons of U.S. Real Property Interests. Defendant NYDEC and Defendant Trinklein submitted the 10% Mandatory Withholding (i.e. 10% of the Purchase Price, $395,000.00) to the IRS.  It should be noted that Defendant NYDEC and Defendant Trinklein misrepresented in the 8288 Form that the closing of the Premises occurred on April 8, 2015, as opposed to October 10, 2014, the actual Closing Date, and Defendant NYDEC and Defendant Trinklein's misrepresentation has caused unnecessary delays in Plaintiff's dealings with the IRS.

65.     Notwithstanding the fact that Defendant NYDEC and Defendant Trinklein themselves submitted the payment of the 10% Mandatory Withholding to the IRS and Defendant NYDEC was no longer deemed to be a "withholding agent," Defendant NYDEC and Defendant Trinklein continued to withhold the Exchange Proceeds.

#

**PLAINTIFF RETAINS TAX PROFESSIONALS WHO FILE PLAINTIFF'S TAX RETURNS INDICATING THAT MONIES ARE OWED TO PLAINTIFF**

66.     Subsequent to the issuance of the 10% Mandatory Withholding, Defendant NYDEC and Defendant Trinklein in their continued effort to withhold Plaintiff's monies came up with a further delay tactics by stating that the Plaintiff still had tax liability to the IRS and that the Plaintiff did not have a Tax ID Number. Upon information and belief, Defendant NYDEC and Defendant Trinklein stated that if the Plaintiffs filed their 2014 tax returns along with obtaining a tax identification number that Defendant NYDEC and Defendant Trinklein would immediately release the Exchange Proceeds to Plaintiff. However, this was also a complete fabrication as the Plaintiff complied with all of Defendant NYDEC and Defendant Trinklein unilaterally "made up" demands. In particular, in or about April 2015, Defendant Wechsler, acting as the Plaintiff's Certified Public Accountant, prepared the Plaintiff's state and local tax forms and further obtained for Plaintiff a Tax ID number.

67.     Upon information and belief, Defendant Wechsler prepared on behalf of the Plaintiff a 1041 Form, U.S. Income Tax Return for Estates and Trust, for the year 2014 and on or about April 15, 2015 submitted it to the IRS with proof of payment of taxes along with the Form 8288A, Statement of Withholding on Dispositions by Foreign Persons of U.S. Real Property Interests, and a copy of the check submitted by Defendant NYDEC and Defendant Trinklein to the IRS in payment of the 10% Mandatory Withholding in the amount of $395,000.00.

68.     Upon information and belief, a review of the 1041 Form reveals that there are monies owed to the Plaintiff from the IRS in the sum of $180,118.00.

**PLAINTIFF'S OBTAINING OF TAX IDENTIFICATION NUMBERS**

69.     Notwithstanding the fact that Defendant Wechsler being a CPA and an attorney knowing the requirements of foreign entities selling real property in New York, for the first time on or about April 15, 2015, Defendant Wechsler submitted to the IRS two Form W-7's and applied for Individual Taxpayer Identification Numbers ("TIN's") for each of the Trustees. This was done because the Plaintiff's Prior Counsel advised that that before the Trust could obtain an EIN the Trustees had to obtain Individual TIN's. Thereafter, on or about July 9, 2015, the IRS issued an EIN to the Trust.

**DEMANDS MADE UPON DEFENDANT NYDEC AND DEFENDANT TRINKLEIN FOR THE RETURN OF THE PLAINTIFF'S MONIES**

70.     On or about June 2015, since the Plaintiff had already complied with and fully paid its tax obligations, the Plaintiff, through its newly retained attorneys Jordan Barness, Esq., and Alan Dlugash ("Plaintiff's Second Attorneys"), demanded the return of the balance of the Exchange Proceeds in the amount One Million Three Hundred Four Thousand Two Hundred Six Dollars ($1,304,206.00) ("Plaintiff's Monies").

71.     However, despite the Plaintiff's due demands, Defendant NYDEC and Defendant Trinklein unlawfully refused to release the Plaintiff's Monies. In fact, upon information and belief Defendant NYDEC and Defendant Trinklein stated that they would withhold the Plaintiff's Monies in order to allegedly protect themselves against a purported tax liability that could be imposed upon Defendant NYDEC and Defendant Trinklein for the Plaintiff's late payment of the 10% Mandatory Withholding. In sum and substance, Defendant NYDEC and Defendant Trinklein  was holding itself out as an agent of the IRS stating that until such time that the statute of limitations ran out on any potential tax liability of the Plaintiff, Defendant NYDEC and Defendant Trinklein would not release Plaintiffs Monies.

#

72.     Upon information and belief, on or about June 2015 the Plaintiff's Second Attorneys engaged in negotiations with Defendant NYDEC and Defendant Trinklein for the release of Plaintiff's Monies. In furtherance thereof, the parties sought expert tax advice to determine the extent of the Defendant NYDEC and Defendant Trinklein's potential tax liability resulting from the Plaintiff's late payment of the 10% Mandatory Withholding.

73.     Upon information and belief, the tax expert's advice confirmed that Defendant NYDEC and Defendant Trinklein had no liability and, in any case, the IRS penalties for the late payment of the 10% Mandatory Withholding would not exceed, under any circumstance, One Hundred Thousand Dollars ($100,000.00).

74.     In September, October, November, and December, 2015, the Plaintiff, once again, demanded that Defendant NYDEC and Defendant Trinklein release the Plaintiff's Monies in the amount One Million Three Hundred Four Thousand Two Hundred Six Dollars ($1,304,206.00).

75.     Notwithstanding Plaintiff's good faith attempts to obtain a return of the Plaintiff's Monies, Defendant NYDEC and Defendant Trinklein refused to return the Plaintiff's Monies to the Plaintiff.

76.     It was not until after the filing of this action that Defendant NYDEC and Defendant Trinklein finally agreed to release a portion of the Plaintiff's Monies to the Plaintiff with the caveat that the Plaintiff deposit the sum of Two Hundred Thousand Dollars ($200,000.00) with the Escrow Agent (hereinafter referred to the as the "Escrow Funds").

## RIGHT TO PIERCE THE CORPORATE VEIL OF NEW YORK DEFERRED EXCHANGE CORP.

77.     Plaintiff repeats and realleges each and every allegation as stated in paragraphs 1 through 76 as if fully set forth in its entirety herein.

#

78.     Upon information and belief, Defendant Trinklein is the officer, director, and shareholder of Defendant NYDEC and, as such, Defendant Trinklein uses Defendant NYDEC to advance his own business.

79.     Upon information and belief, Defendant NYDEC has been and continues to be influenced solely by Defendant Trinklein in that there is such unity of both ownership and interest between Defendant NYDEC and Defendant Trinklein that the separateness of the corporate structure has ceased.

80.     Upon information and belief, Defendant NYDEC has allowed for Defendant Trinklein to keep total control of Defendant NYDEC as merely an alter ego of Defendant Trinklein.

81.     Upon information and belief, Defendant Trinklein has exercised complete domination and control over Defendant NYDEC in respect to the intended 1031 Exchange and Defendants' subsequent failure to turn over the Plaintiff's Monies.

82.     Defendant Trinklein's domination and control over Defendant NYDEC has allowed Defendant Trinklein to unlawfully withhold Plaintiff's Monies and engage in further misconduct as alleged herein while insulating himself from liability.

83.     Upon information and belief, Defendant NYDEC is undercapitalized as a true corporation.

84.     Upon information and belief, Defendant NYDEC has both failed to observe the formalities of corporate existence and does not keep proper books, records, and minutes as would be required.

85.     Upon information and belief, Defendant NYDEC has failed to keep corporate property separate, Defendants commingled personal and corporate funds, and Defendant Trinklein has misappropriated corporate funds for his personal use.

#

86.     Upon information and belief, the use of Defendant NYDEC is a perpetration of a fraud and promotes injustice as Defendant Trinklein is using Defendant NYDEC as a shell/alter ego to insulate Defendant Trinklein from liability for his unlawful actions undertaken under the veil of Defendant NYDEC.

87.     Upon information and belief, Defendant Trinklein has abused the privilege of incorporation to perpetrate wrong against the Plaintiff by frustrating Plaintiff's ability both to recover the Plaintiff's Monies and to satisfy a judgment against Defendant NYDEC.

88.     As a result, Defendant Trinklein and Defendant NYDEC must be held jointly and severally liable for all monetary and equitable damages awarded against the Defendants in this Action.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST DEFENDANT NYDEC AND DEFENDANT TRINKLEIN
### *Negligence*

89.     Plaintiff repeats and realleges each and every allegation as stated in paragraphs 1 through 88 as if fully set forth in its entirety herein.

90.     Defendant Trinklein and Defendant NYDEC owed a duty to conform to a specific standard of conduct for the protection of the Plaintiff against an unreasonable risk of economic injury.

91.     In fact, Defendant Trinklein and Defendant NYDEC held themselves as a knowledgeable company and person with ample experience working on 1031 Exchanges. Further, as a qualified intermediary, Defendant NYDEC is held to the standard of care of a knowledgeable and skilled qualified intermediary in similar circumstances. As such, Defendant Trinklein and Defendant NYDEC had a duty to ensure that the contemplated 1031 Exchanges was viable and completed in accordance with the law.

#

92.     Defendant Trinklein and Defendant NYDEC breached that duty by acting negligently and failing to ensure that the contemplated 1031 Exchange was viable and completed in accordance with the law.

93.     Particularly, Defendant Trinklein and Defendant NYDEC failed to ask the Plaintiff relevant questions and ask for relevant documentation that would have revealed that the Plaintiff was a foreign entity. Further, Defendant Trinklein and Defendant NYDEC failed to review the closing documents ahead of the Closing Date, which would have prevented subsequent errors. Under no circumstances should of the Defendants opened up an account 12 days after the Sale of the Premises. 1. Defendant Trinklein and Defendant NYDEC did not review nor prepare any documents prior to the Sale of the Premises and went into the 1031 Exchange not knowing any pertinent facts relating to the Sale of the Premises such as the basic fact that Plaintiff was a foreigner without a Tax ID number; 2. at the time of the Sale of the Premises the net sale proceeds were not made payable to a newly established segregated exchange account which should have been set up by Defendant Trinklein and Defendant NYDEC prior to the closing; in fact, Defendant Trinklein and Defendant NYDEC did not even know that Plaintiff did not have a Tax ID number which would have been required to open up the required segregated account by Defendant Trinklein and Defendant NYDEC; 3. Plaintiff did not identify, in writing, any potential real estate property for acquisition within 45 days subsequent to the Sale of the Premises; as such, the 1031 Exchange should not have been continued subsequent to the 45 day mandatory identification process; 4. Within 180 days following the Sale of the Premises, there was no property to which the money was invested. As such, the 1031 Exchange Process was, from its commencement, neither valid nor was it handled properly. The 1031 Exchange Process continues to be invalid and, to this date, is no longer in effect. In accordance with the Exchange Agreement the process has terminated as the

Page **28** of **41**

#

exchange period is over. Regardless, Defendant Trinklein and Defendant NYDEC wrongfully maintain Plaintiff's Monies.

94.     Defendant Trinklein and Defendant NYDEC also breached their duty of care by failing to act with due diligence and failing to return the Plaintiff's Monies once the 1031 Exchange was no longer viable. In fact, despite the Plaintiff complying with its tax obligations and placing several demands upon Defendant Trinklein and Defendant NYDEC, Defendant Trinklein and Defendant NYDEC have failed to turn over the Plaintiff's Monies causing further injury to the Plaintiff.

95.     Based on the foregoing, Defendant Trinklein and Defendant NYDEC's conduct has fallen below the standard of care of a reasonable and skilled qualified intermediary under similar circumstances.

96.     But for the Defendant Trinklein and Defendant NYDEC's negligent acts and/or omissions from the commencement of the contemplated 1031 Exchange, the Plaintiff would not have been deprived of the Plaintiff's Monies for almost a year, and continue to be deprived of Plaintiff's Monies to the date hereof.

97.     Defendant Trinklein and Defendant NYDEC's conduct is the actual and proximate cause of the Plaintiff's injury. As a result of Defendant Trinklein and Defendant NYDEC's conduct, the Plaintiff has been deprived of the Plaintiff's Monies.

98.     Defendant Trinklein and Defendant NYDEC's actions and omissions increased the risk of Plaintiff's injury and, further, Plaintiff's injury is a normal incident resulting from the Defendant Trinklein and Defendant NYDEC's breach of its duty of care.

99.     As a result, Defendant Trinklein and Defendant NYDEC have committed great harm and potential future harm to the Plaintiff in an amount to be determined at trial but no less than Five

Hundred Thousand Dollars ($500,000.00) plus interest from November 25, 2014, costs, and attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT NYDEC AND DEFENDANT TRINKLEIN**
*Conversion*

100.    Plaintiff repeats and realleges each and every allegation as stated in paragraphs 1 through 99 as if fully set forth in its entirety herein.

101.    On October 14, 2014, Defendant Trinklein and Defendant NYDEC accepted the Plaintiff's Exchange Proceeds in the amount of One Million Seven Hundred Ninety-Five Thousand Four Hundred Five and 61/100 Dollars ($1,795,405.61).

102.    Defendant Trinklein and Defendant NYDEC's possession of the Exchange Proceeds from the onset was not lawful in that the 1031 Exchange had already been broken and, therefore, Plaintiff would not have been able to successfully engage in a 1031 Exchange process. Further, as of November 25, 2014, and continuing through the date hereof, Defendant Trinklein and Defendant NYDEC have wrongfully exercised a right of ownership of the Plaintiff's Monies and now the Escrow Funds and, upon information and belief, converted Plaintiff's Monies for Defendant Trinklein and Defendant NYDEC's own use without the Plaintiff's authority. Defendant Trinklein and Defendant NYDEC have taken dominion and control over Plaintiff's Monies and now the Escrow Funds.

103.    The Plaintiff has made repeated demands for the return of the Escrow Funds being held at the behest of Defendant Trinklein and Defendant NYDEC.

104.    Despite due demand, Defendant Trinklein and Defendant NYDEC have refused and continue to refuse to allow for the return of the Escrow Funds.

#

105.    As a result of the foregoing, the Plaintiff has been damaged by being permanently deprived of the Escrow Funds.

106.    Plaintiff is entitled to an Order mandating the Escrow Agent, the Law Offices of Kishner & Miller, to disburse the Escrow Funds in the sum of Two Hundred Thousand Dollars ($200,000.00) to the Plaintiff as well as an Order for damages against Defendant Trinklein and Defendant NYDEC for interest on the Plaintiff's Monies from November 25, 2014, costs, and attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION
*Breach of Contract*

107.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 106 as if more fully at length herein.

108.    The Plaintiff and Defendant NYDEC entered into the Exchange Agreement on or about October 10, 2014, which is a valid and enforceable contract.

109.    a. Defendant Trinklein and Defendant NYDEC did not review or prepare any documents prior to the Sale of the Premises and went into the 1031 Exchange not knowing any pertinent facts relating to the Sale of the Premises such as the basic fact that Plaintiff was a foreigner without a Tax ID number; b. At the time of the Sale of the Premises the net sale proceeds were not made payable to a newly established segregated exchange account which should have been set up by Defendant Trinklein and Defendant NYDEC prior to the closing; in fact, Defendant Trinklein and Defendant NYDEC did not know that Plaintiff did not have a Tax ID number which would have been required to open up the necessary segregated account by Defendant Trinklein and Defendant NYDEC pursuant to the terms of the Exchange Agreement to earn interest; c.  Plaintiff did not identify, in writing, any potential real estate property for acquisition within 45 days

subsequent to the Sale of the Premises; as such, the 1031 Exchange should not have been continued subsequent to the 45 day mandatory identification process; d. Within 180 days following the Sale of the Premises, there was no property to which the money was invested. As  a result of the foregoing, the 1031 Exchange Process was, from its commencement, not valid nor handled properly pursuant to the terms of the Exchange Agreement. Furthermore, pursuant to the very terms of the Exchange Agreement, the Exchange Agreement was to earn interest in favor of the Plaintiff. However, no interest has been reported as being earned by Plaintiff. Additionally, pursuant to the terms of the Exchange Agreement, the Exchange Agreement has terminated and Defendant Trinklein and Defendant NYDEC was required to immediately release Plaintiff's Monies to the Plaintiff. However, regardless of the fact that Defendant Trinklein and Defendant NYDEC breached the terms of the Exchange Agreement and the further fact that the 1031 Exchange Process continues not to be valid and, to this date, is no longer in effect Defendant Trinklein and Defendant NYDEC wrongfully maintained the Plaintiff's Monies and currently wrongfully is withholding the disbursement of the Escrow Funds.

110.    For all of the above reasons, Defendant Trinklein and Defendant NYDEC breached the Exchange Agreement and pursuant to Article 5(c) of the Exchange Agreement the Defendant Trinklein and Defendant NYDEC are required to turn over the Exchange Proceeds to Plaintiff which now amounts to the Escrow Funds.

111.    Notwithstanding the foregoing, Defendant Trinklein and Defendant NYDEC are and continue to be in complete control of the Escrow Funds, which are required to be turned over to the Plaintiff in accordance with the Exchange Agreement.

#

112.     Despite making due demand upon the Defendants on several occasions, the Defendants have improperly refused to turnover to Plaintiff the Escrow Funds as well as any information regarding the Escrow Account which held the Exchange Proceeds.

113.     Defendant Trinklein and Defendant NYDEC's continued refusal to turn over the Plaintiff's Monies is a clear breach of the provisions of the Exchange Agreement.

114.     Further, the Defendants breached Article 5(a) of the Exchange Agreement by making a delayed deposit of the Exchange Proceeds in an Escrow Account that did not accrue any interest.

115.     Based on the foregoing, the Plaintiff has been damaged by Defendant Trinklein and Defendant NYDEC in an amount to be determined at trial but no less than Five Hundred Thousand Dollars ($500,000.00) plus interest from November 25, 2014, costs, and attorneys' fees.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT NYDEC AND DEFENDANT TRINKLEIN
### *Injunction*

116.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 115 as if more fully at length herein.

117.     Pursuant to Article 5(a) of the Exchange Agreement, Defendant Trinklein and Defendant NYDEC were required to deposit the Exchange Proceeds in an interest-bearing escrow account, which funds would be invested and reinvested as a segregated bank account under which Defendant NYDEC would serve as escrowee.

118.     However, upon information and belief, Defendant Trinklein and Defendant NYDEC placed the Exchange Proceeds in an account which did not accrue any interest.

119.     Upon information and belief, the Exchange Proceeds were not invested in a segregated bank account.

#

120.    The Plaintiff has requested on several occasions that Defendant Trinklein and Defendant NYDEC turnover the information of or related to the Escrow Account and/or other bank accounts and securities accounts of Defendant Trinklein and Defendant NYDEC in which Defendant Trinklein and Defendant NYDEC may have deposited and/or held the Exchange Proceeds.

121.    Despite the Plaintiff's due demand, Defendant Trinklein and Defendant NYDEC failed to turn over such information.

122.    Plaintiff has and will continue to suffer irreparable loss unless Defendant Trinklein and Defendant NYDEC are forthwith compelled to turn over all bank records, including but not limited to any statements of account which detail all transactions, account balances and related activities concerning the Escrow Account, from its inception in October 2014 to the date hereof.

123.    Irreparable loss to the Plaintiff consists of the Plaintiff's inability to monitor or track the activity of the Escrow Account in which Plaintiff's Monies were, upon information and belief, being held by Defendant Trinklein and Defendant NYDEC. Plaintiff is unable to determine precisely what assets remain in the Escrow Account, or if Defendant Trinklein and Defendant NYDEC have removed any assets from the Escrow Account. As the Escrow Account is an account opened by Defendant NYDEC, Sterling National Bank would not provide the Plaintiff directly with any statements or information pertaining to the Escrow Account.

124.    As set forth above, the Plaintiffs assert that the Escrow Account did not accrue any interest. However, the only way to determine whether the assertions are accurate is by granting the instant injunction.

125.    The Plaintiff has no other adequate remedy at law.

#

126.     Further, the Plaintiff cannot be adequately compensated by monetary damages alone. Defendant Trinklein and Defendant NYDEC must be compelled to relinquish and allow the turnover of the Escrow Funds to the Plaintiff as well as well as any and all bank records, statements of account and the like which detail the various transactions, account balances and related activities concerning the Escrow Account, from its inception in October 2014 to the date hereof.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT NYDEC AND DEFENDANT TRINKLEIN
*Accounting*

127.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 126 as if more fully at length herein.

128.     Article 5(a) of the Exchange Agreement makes clear that Defendant NYDEC was required to transfer the Exchange Proceeds to an escrow account, which funds would be invested and reinvested as a segregated bank account under which Defendant NYDEC would serve as escrowee.

129.     Upon information and belief, the Escrow Account is a non-interest bearing account.

130.     Further, Article 5(c) of the Exchange Agreement makes clear that Defendant NYDEC was required to turn over the Plaintiff's Monies to the Plaintiff in the event that the Plaintiff did not identify any replacement property during the 45-day identification period.

131.     Nevertheless, Defendant NYDEC never complied with its obligations to turn over the Plaintiff's Monies pursuant to Article 5(c) of the Exchange Agreement.

132.     The Plaintiff does not have access to the statements of account and the like which detail the various transactions, account balances and related activities concerning the Escrow Account and/or any other bank accounts, securities accounts, cash and/or cash equivalents that were

#

held by Defendant Trinklein and Defendant NYDEC, in which Defendant Trinklein and Defendant NYDEC had an interest and/or in which Defendant Trinklein and Defendant NYDEC may have deposited or withheld Plaintiff's Monies. As a result, the Plaintiff has no ability to monitor or track the activity of Defendant Trinklein and Defendant NYDEC's accounts or be able to determine precisely what assets remain in Defendant Trinklein and Defendant NYDEC's accounts, or if the Defendant Trinklein and Defendant NYDEC have removed any assets from the Escrow Account to other accounts.

133.    Although demanded by the Plaintiff, Defendant Trinklein and Defendant NYDEC have failed and refused, and still fail and refuse, to account to the Plaintiff for all bank accounts, securities accounts, cash and/or cash equivalents that were held by Defendant Trinklein and Defendant NYDEC, in which Defendant Trinklein and Defendant NYDEC had an interest and/or in which Defendant Trinklein and Defendant NYDEC may have deposited and/or withheld the Plaintiff's Monies.

134.    The Plaintiff demands that Defendant Trinklein and Defendant NYDEC account to the Plaintiff for all bank accounts, securities accounts, cash and/or cash equivalents that were held by Defendant Trinklein and Defendant NYDEC, which Defendant Trinklein and Defendant NYDEC had an interest and/or in which Defendant Trinklein and Defendant NYDEC may have deposited and/or withheld the Plaintiff's Monies.

135.    The Plaintiff has no adequate remedy at law.

136.    Based on the foregoing, Plaintiff is entitled to an Order requiring an accounting against Defendant Trinklein and Defendant NYDEC for all of Defendant Trinklein and Defendant NYDEC's bank accounts, securities accounts and cash or cash equivalents of the Defendant

#

Trinklein and Defendant NYDEC and/or in which Defendant Trinklein and Defendant NYDEC may have deposited and/or withheld the Plaintiff's Monies.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST PLAINTIFF'S FORMER ATTORNEY AND CPA, DEFENDANT WECHSLER
*Legal Malpractice and Negligence*

137.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs 1 through 136 as if more fully at length herein.

138.    Plaintiff and Defendant Wechsler entered into an attorney-client relationship as well as a CPA-client relationship simultaneously in or about June 2014.

139.    As set forth herein, Defendant Wechsler failed to exercise the care, diligence and reasonable skill commonly possessed and exercised by a member of the legal profession providing advice on real estate transactions.

140.    As set forth herein, Defendant Wechsler failed to exercise the care, diligence and reasonable skill commonly possessed and exercised by a certified public accountant providing advice on real estate transactions.

141.    Plaintiff incurred actual damages as a result of Defendant Wechsler's actions and inactions.

142.    Defendant Wechsler's negligence was the proximate cause of the damage sustained by the Plaintiff.

143.    But for Defendant Wechsler's inadequate representation, the Plaintiff would not have sustained any damages. Had Plaintiff received adequate legal and accounting advice from Defendant Wechsler, Plaintiff would not have even proceed with the 1031 Exchange upon the sale of the Premises.

144.    In particular, Defendant Wechsler failed the Plaintiff by: a. not reviewing or

#

preparing any documents prior to the Sale of the Premises by allowing the Plaintiff to go into the 1031 Exchange not knowing any pertinent facts relating to the Sale of the Premises such as the basic fact that Plaintiff was a foreigner without a Tax ID number; b. at the time of the Sale of the Premises the net sale proceeds were not made payable to a newly established segregated exchange account; c. Defendant Wechsler never received any authorization or authority from the Trust to bind the Trust to any agreement including any agreement which would purport to waive interest to be earned on the Exchange Proceeds – yet, despite this Defendant Wechsler signed a document with Defendant Trinklein and Defendant NYDEC which Defendant Trinklein and Defendant NYDEC now claim allowed for a waiver of interest on the Exchange Proceeds; d. Plaintiff did not identify, in writing, any potential real estate property for acquisition within 45 days subsequent to the Sale of the Premises; as such, the 1031 Exchange should not have been continued subsequent to the 45 day mandatory identification process; e. Within 180 days following the Sale of the Premises, there was no property to which the money was invested. As such, the 1031 Exchange Process was, from its commencement, not valid nor handled properly; and f. wholly failing in any effort to obtain the refund from the United States Treasury for the withholding which, upon information and belief, a review of the 1041 Form reveals that there are monies owed to the Plaintiff from the IRS in the sum of $180,118.00.

145.    Furthermore, had the Plaintiff received adequate legal advice and accounting advice from Defendant Wechsler, the Plaintiff would have taken the appropriate steps to set up the sale of the Premises including making all withholdings on the Closing Date and never proceeding with the 1031 Exchange.

146.    As a result of Defendant Wechsler's inadequate representation and negligence in his

(none)

total failure to advise and represent the Plaintiff, the Plaintiff has been damaged in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

   **WHEREFORE**, Plaintiff respectfully requests the Court enter judgment in favor of Plaintiff as follows:

   (a)      On Plaintiff's First Cause of Action, a judgment and order declaring that Defendant Trinklein and Defendant NYDEC's actions and inactions as outlined herein amount to negligence that injured the Plaintiff, entitling the Plaintiff to damages in an amount to be determined at trial but no less than  Five Hundred Thousand Dollars ($500,000.00) plus interest from November 25, 2014;

   (b)      On Plaintiff's Second Cause of Action, a judgment and order mandating the Escrow Agent, the Law Offices of Kishner & Miller, to disburse the Escrow Funds in the sum of Two Hundred Thousand Dollars ($200,000.00) to the Plaintiff as well as an Order for damages against Defendant Trinklein and Defendant NYDEC for interest on the Plaintiff's Monies from November 25, 2014, costs, and attorneys' fees;

   (c)      On Plaintiff's Third Cause of Action, a judgment and order that Defendant Trinklein and Defendant NYDEC actions and inactions as outlined herein are a breach of Exchange Agreement entitling the Plaintiff to damages in an amount to be determined at trial but no less than Five Hundred Thousand Dollars ($500,000.00) plus interest from November 25, 2014;

   (d)      On Plaintiff's Fourth Cause of Action, a judgment and order mandating Defendant Trinklein and Defendant NYDEC be compelled to relinquish and allow the turnover of the Escrow Funds to the Plaintiff as well as well as any and all bank records, statements of account and the like which detail the various transactions, account balances and related activities concerning the Escrow Account, from its inception in October 2014 to the date hereof;

#

(e)     On Plaintiff's Fifth Cause of Action, a judgment and order declaring that the Plaintiff is entitled to an accounting against Defendant Trinklein and Defendant NYDEC for all bank accounts, securities accounts, cash and/or cash equivalents that were held by Defendant Trinklein and Defendant NYDEC, which Defendant Trinklein and Defendant NYDEC had an interest and/or in which Defendant Trinklein and Defendant NYDEC may have deposited and/or withheld the Plaintiff's Monies;

(f)     On Plaintiff's Sixth Cause of Action, a judgment and order declaring that Defendant Wechsler is liable to the Plaintiff for all damages which have been incurred and may be incurred in the future by the Plaintiff in an amount to be determined by this Honorable Court, plus interests, costs, and attorneys' fees;

(g)     Plaintiff's costs, disbursements of this action including reasonable attorney's fees; and

(h)     Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 22, 2016

                                        LAW OFFICES OF
                                        KISHNER & MILLER
                                        *Attorneys for Plaintiff*

                              By:       _____
                                        Bryan W. Kishner, Esq.
                                        Ryan O. Miller, Esq.
                                        420 Lexington Avenue - Suite 300
                                        New York, New York 10170
                                        (212) 585-3425

#

TO:    **HINSHAW & CULBERTSON LLP**
        *Attorneys for Defendants*
        *New York Deferred Exchange Corp. and Fritz Trinklein*
        Attn. Alan F. Kaufman, Esq.
        800 Third Avenue, 13th Floor
        New York, New York 10022

        **JEFFREY WECHSLER, ESQ. & CPA**
        60 East 42nd Street, Suite 1133
        New York, New York 10165

#