UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORA NAFTALI AND RONI NAFTALI, AS TRUSTEES OF THE EDTOM TRUST,<br><br>　　　Plaintiff,<br><br>　　　　　- v –<br><br>NEW YORK DEFERRED EXCHANGE CORP., AND JEFFREY WECHSLER<br><br>　　　Defendants. | Civil Action No. 15-cv-7152 (JMA)(ARL) |
| And related Counterclaims and Third-Party Actions | |

**DEFENDANT NEW YORK DEFERRED EXCHANGE CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**



800 Third Ave., 13th Floor
New York, NY 10022
212-471-6200

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 3

      A.      Plaintiffs Failed to Comply with Their Tax Obligations ........................................ 3

      B.      Plaintiffs Lied When They Entered Into the Exchange Agreement ....................... 4

      C.      Plaintiffs' Lie Was Exposed ................................................................................... 6

      D.      NYDEC Paid the Withholding Tax to the IRS ....................................................... 7

      E.      NYDEC Agreed to Release the Vast Majority of the Proceeds to Plaintiffs
            and $200,000 Has Been Held in Escrow ............................................................... 8

ARGUMENT ............................................................................................................................... 9

I.      THE COURT SHOULD DISMISS PLAINTIFFS' BREACH OF CONTRACT
        CLAIM BECAUSE THEY HAVE NOT PERFORMED THEIR OBLIGATIONS ........ 10

II.     NYDEC IS ENTITLED TO SUMMARY JUDGMENT DISMISSING
        PLAINTIFFS' NEGLIGENCE CLAIM BECAUSE IT OWED THEM NO DUTY ....... 11

III.    NYDEC IS ENTITLED TO SUMMARY JUDGMENT DISMISSING
        PLAINTIFFS' CONVERSION CLAIM ....................................................................... 14

      A.      Plaintiffs' Conversion Claim Improperly Duplicates Their Breach of
            Contract Claim ...................................................................................................... 14

      B.      Plaintiffs' Conversion Claim Fails Because NYDEC Lawfully Obtained
            Possession of the Proceeds and Does Not Exercise Dominion Over Them ......... 15

CONCLUSION .......................................................................................................................... 16

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bradley v. Roe*,
  282 N.Y. 525 (1940) .................................................................................................15, 16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..............................................................................................................9

*Command Cinema Corp. v. VCA Labs, Inc.*,
  464 F. Supp. 2d 191 (S.D.N.Y. 2006) ..............................................................................14, 15

*Demetriades v. Royal Abstract Deferred, LLC*,
  No. 156478/2012, 2017 NY Slip Op 30900(U), (N.Y. County Sup. Ct. May 2,
  2017), *rev'd on other grounds*, 159 A.D.3d 501, 74 N.Y.S.3d 5 (1st Dep't
  2018) ........................................................................................................................................13

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
  17 N.Y.3d 565 (2011) .........................................................................................................11

*GTF Marketing, Inc. v. Colonial Aluminum Sales, Inc.*,
  66 N.Y.2d 965 (1985) .........................................................................................................10

*Johnson v. Nextel Communs., Inc.*,
  660 F.3d 131 (2d Cir. 2011) ................................................................................................10

*Kinojuz I.P. v. IRP Int'l Inc.*,
  No. CV-11-299, 2016 U.S. Dist. LEXIS 141176 (E.D.N.Y. Oct. 12, 2016) ..........................15

*Pulka v. Edelman*,
  40 N.Y.2d 781 (1976) .........................................................................................................11

*Sebastian Holdings, Inc. v. Deutsche Bank, AG*,
  108 A.D.3d 433, 969 N.Y.S.2d 46 (1st Dep't 2013) ............................................................13

*Valdez v. City of New York*,
  18 N.Y.3d 69 (2011) ...........................................................................................................11

*Verizon N.Y., Inc. v. Optical Communications Group, Inc.*,
  91 A.D.3d 176, 936 N.Y.S.2d 86 (1st Dep't 2011) .........................................................13, 14

**Statutes**

Internal Revenue Code § 1031 .............................................................................................. *passim*

Internal Revenue Code § 1445(a) ...................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................................................9

Fed. R. Civ. P. 56(c) ...................................................................................................................1

**PRELIMINARY STATEMENT**

Defendant New York Deferred Exchange Corporation ("NYDEC") respectfully submits this memorandum of law in support of its motion for summary judgment dismissing Plaintiffs' claims against it with prejudice pursuant to Federal Rule of Civil Procedure 56(c).[1]

The parties are in this action because Plaintiffs failed to comply with their federal tax obligations and lied to NYDEC. In 2011, the Naftalis created the Edtom Trust to purchase an apartment in New York. For the next three years, Plaintiffs rented the apartment to a tenant, but, in violation of US tax law, never obtained a tax identification number and never filed US income tax returns. In 2014, Plaintiffs decided to sell the apartment.

At the closing table, Plaintiffs came to understand that they may be able to circumvent an otherwise mandatory federal withholding tax, and avoid or minimize federal capital gains tax, by purporting to sell the property through an Internal Revenue Code Section 1031 like-kind property exchange. Plaintiffs decided to move forward with the Section 1031 exchange, and on the day of the closing requested that NYDEC act as the "qualified intermediary" for the exchange. In doing so, Plaintiffs signed an Exchange Agreement with NYDEC in which they represented, under penalty of perjury, that the trust was not a "foreign person" and had a tax identification number (a "TIN, also called an Employer Identification Number, or "EIN"). The Naftalis, however, were citizens of Israel, and they and the trust were "foreign persons" under US tax law. Plaintiffs also agreed to – but never did – pay NYDEC a fee for acting as the QI. Plaintiffs further agreed that

---

[1] "NYDEC" refers to Defendant/Counterclaim Plaintiff/Third-Party Plaintiff/Third-Party Counterclaim Defendant New York Deferred Exchange Corporation. "Plaintiffs" refers collectively to Plaintiffs/Counterclaim Defendants/Third-Party Defendants/Third-Party Counterclaimants/Third-Party Cross-Claim Plaintiffs Edtom Trust and its trustees Ora and Roni Naftali.

NYDEC made no guarantee, promise or other representation with respect to the validity, viability or qualification of the Section 1031 exchange.

Relying on Plaintiffs' representations, NYDEC agreed to act as the QI, and accepted possession of the proceeds of the sale until Plaintiffs completed the Section 1031 exchange. Eventually, Plaintiffs' lie was exposed and NYDEC learned that it was potentially liable to the IRS, in its inadvertent role as a "withholding agent," for penalties and interest because of Plaintiffs' actions. Thus, when the time for Plaintiffs to complete the Section 1031 exchange expired, NYDEC paid the federal and state withholding tax from the proceeds. NYDEC also tried to work with Plaintiffs to come to an agreement on the return the lion share of the remaining proceeds to them while ensuring NYDEC was protected from the risks to which Plaintiffs had exposed NYDEC.

Instead of working with NYDEC, Plaintiffs went on the attack. In a brazen effort to shift the consequences of their wrongdoing to NYDEC, Plaintiffs commenced this action, accusing NYDEC of breach of the Exchange Agreement for failing to return the proceeds, conversion of the proceeds, and negligence for failing to determine if the sale had been structured to comply with Section 1031.

NYDEC is entitled to summary judgment on each of Plaintiffs' claims. NYDEC is entitled to summary judgment on the breach of contract claim because the undisputed material facts establish that Plaintiffs failed to perform their obligations under the Exchange Agreement. NYDEC is entitled to summary judgment on the conversion claim because it improperly duplicates the breach of contract claim, and in any event, NYDEC lawfully obtained the proceeds and has not asserted dominion over them. NYDEC is also entitled to summary judgment on the negligence

2

claim because NYDEC owed no duty to Plaintiffs to determine if the sale had been structured to comply with Section 1031.

## STATEMENT OF FACTS

### A.    Plaintiffs Failed to Comply with Their Tax Obligations

In 2011, the Naftalis created the Edtom Trust to purchase the condominium at 322 West 57th Street, Unit 42U1, New York, New York (the "Apartment"). *See* Joint Pretrial Statement at pp. 20-21, ¶¶ 4, 14 (D.E. 74). Plaintiffs utilized the Apartment strictly for investment purposes, renting it and receiving income on it for the next three years, but never filed income tax returns for the rental income and never obtained a TIN. *See id.* at p. 21, ¶ 29; *see also* O. Naftali Dep. Tr. at 41:19- 42:17 & 54:7-55:25 (Ex. I).[2]

In 2014, Plaintiffs decided to sell the Apartment. *See* Joint Pretrial Statement at p. 21, ¶ 15 (D.E. 74). On October 10, 2014, Plaintiffs attended the closing of the sale. *See id.* at p. 22, ¶¶ 22-30. The sale price was $3,950,000, and the net proceeds of sale were $1,795,405.61 (the "Proceeds"), checks for which were initially made payable to Plaintiffs. *See id.* at pp. 22-23, ¶¶ 23 & 26. The Plaintiffs faced potential tax consequences as a result of the Sale, including possible capital gains taxes and FIRPTA withholding tax.[3] *See id.* at p. 21, ¶ 21. At the closing table, Defendant Jeffrey Wechsler (Plaintiffs' then counsel) and Third-Party Defendant Joseph Taplitzky (Plaintiffs' real estate broker), explained to Plaintiffs that they may be able to avoid or limit the

---

[2] All references to Exhibits refer to the documents annexed to the Declaration of Matthew C. Ferlazzo, dated February 19, 2021, submitted herewith in support of NYDEC's motion for summary judgment.

[3] The Foreign Investment in Real Property Tax Act of 1980 ("FIRPTA", Internal Revenue Code § 1445(a)) requires that when a "foreign person" disposes of US real property, the "transferee" (usually the buyer) deduct and withhold a tax equal to ten (10) percent of the gross proceeds of the sale. The "foreign person" can then claim the withheld tax as a credit on their income tax return. *See* Joint Pretrial Statement at p. 21, ¶ 21 (D.E. 74).

3

tax consequences of the sale through a Section 1031 like-kind property exchange.[4] *See* J. Wechsler Dep. Tr. at 70:12-22 & 75:14-76:30 (Ex. L); J. Taplitzky Dep. Tr. at 81:23-83:24 (Ex. M). After the discussion with Messrs. Wechsler and Taplitzky, Plaintiffs decided to move forward with the Section 1031 exchange. *See* J. Wechsler Dep. Tr. at 75:14-76:8 (Ex. L); J. Taplitzky Dep. Tr. at 81:23-84:4 (Ex. M).

### B. Plaintiffs Lied When They Entered Into the Exchange Agreement

In light of Plaintiffs decision, Mr. Wechsler stepped out of the closing and contacted NYDEC to see if Plaintiffs could retain NYDEC as the QI for the Section 1031 exchange. *See* J. Wechsler Dep. Tr. at 85:6-87:8, 92:12-95:14 & 268:14-17 (Ex. L). Mr. Wechsler has testified that when he stepped out of the closing, the checks payable to Plaintiff had not been handed to Plaintiffs. *See id.* at 270:10-20. NYDEC was not told that Plaintiffs had received checks payable for the Proceeds. *See* F. Trinklein Dep. Tr. at 72:15-22 (Ex. J).[5] NYDEC agreed to act as the QI, and the closing of the sale of the Apartment was completed that same day. *See* Joint Pretrial Statement at p. 21, ¶ 29 (D.E. 74). The checks payable to Plaintiffs were voided and the buyer issued new checks for the Proceeds payable to NYDEC. *See* J. Wechsler Dep. Tr. at 98:6-16 (Ex. L); Joint Pretrial Statement at p. 23, ¶¶ 32-34 (D.E. 74). At the same time, Plaintiffs agreed to and signed an Exchange Agreement with NYDEC. *See id.* at p. 22, ¶ 30.

---

[4] A like-kind property exchange in accordance with Internal Revenue Code Section 1031 provides a procedure that may allow the seller of real property to postpone paying tax on the gain realized in the sale of real property. Among the requirements of a Section 1031 exchange are that within 45 days of the sale, the seller identify potential like-kind property to purchase (the "Replacement Property"), and that the seller purchase the Replacement Property within 180 days of the sale. In order to facilitate the Section 1031 exchange a QI may be used to hold the proceeds of the sale during the six-month exchange period. Using a QI ensures that the proceeds are never in the possession of the seller, which is a requirement of a Section 1031 exchange.

[5] Fredrich "Fritz" Trinklein is the President of NYDEC.

4

In Article 8(C) of the Exchange Agreement (on the signature page, in 12-point type), Plaintiffs certified as follows:

> under penalties of perjury that Owner is not a "Foreign Person" as defined by Section 1445 of the Internal Revenue Code and the regulations promulgate there under, that Owner's United State taxpayer identification number is _____ and that Owner's address if 322 West 57th Street, Apartment 42U1, New York, NY 10019 and that Owner is not subject to a backup withholding.

Exchange Agreement, Art. 8(C), at p. 9 (Ex. B). The Naftalis, however, were citizens of Israel, and they and the trust were "foreign persons" under US tax law. *See* Joint Pretrial Statement at p. 20, ¶¶ 1, 5-6 (D.E. 74). Moreover, when they signed the Exchange Agreement, neither the Naftalis nor the trust had a TIN. *See id.* at p. 21, ¶¶ 19-20.

In agreeing to act as the QI, NYDEC relied on Plaintiffs' representation – NYDEC does not act as a QI involving "foreign persons" due to the complications and financial risks. *See* F. Trinklein Dep. Tr. at 31:8-32:7 (Ex. J). Thus, had Plaintiffs told the truth, NYDEC never would have acted as the QI. Moreover, Mr. Wechsler told NYDEC that the trust had a TIN, and that it would be provided to NYDEC. *See id.* at 85:7-23.

In the Exchange Agreement, Plaintiffs agreed to a number of other key provisions:

- Notwithstanding anything herein contained to the contrary; QI shall not be in default under this Exchange Agreement and shall not be liable for any damages, losses or expenses incurred by Owner, if: (i) QI fails to take any steps to locate or negotiate for Acquired Property or borrow or locate funds to acquire Acquired Property, or (ii) any Acquired Property fails to qualify as "like kind" property, or (iii) **the transaction otherwise fails, for any reason, to afford Owner the benefits of Section 1031 of the Internal Revenue Code.**

Exchange Agreement, Art. 6(A), at p. 7 (Ex. B) (emphasis added).

- Owner shall hold QI harmless from and indemnify QI against any and all claims (and expenses relating thereto) made against QI at any time with respect to the Relinquished Property and the Acquired Property or any of the transactions contemplated by the Exchange Agreement. This indemnity

5

shall survive the end of the Exchange Period and all Closings pursuant to this agreement.

*Id.*, Art. 6(B), at p. 7.

- **QI makes no guarantee, promise or other representation with respect to the validity, viability or qualification of this transaction for IRC Section 1031**. The Exchangor acknowledges that QI has not been a party to contract execution, actual closing or settlement, or any ministerial or logistical issues or matters related thereto. All of said matters related thereto, including pertinent dates, issuance of checks (except for checks issued by QI), have been made and will be made by Exchangor or his Counsel without verification or validation by QI. Accordingly. The Exchangor hereby expressly releases and relieves QI of any liability or responsibility as it relates to any tax matter.

*Id.*, Art. 6(F), at p. 7 (emphasis added).)

- To pay NYDEC a fee of $3,100 for acting as the QI – a fee which Plaintiffs never paid NYDEC. *See id.*, Art. 8(D), at p. 9; F. Trinklein Decl., ¶4 (Ex. K).

- That Jeffrey Wechsler would serve as Plaintiffs' agent. *See* Exchange Agreement at p. 8 (Ex. B).

C. **Plaintiffs' Lie Was Exposed**

In order for Plaintiffs to move forward with the Section 1031 exchange, on October 14, 2014, Mr. Wechsler sent to NYDEC the checks payable to it from the buyer of the Apartment for the Proceeds. *See* Joint Pretrial Statement at p. 23, ¶¶ 32-35 (D.E. 74). On November 18, 2014, however, Mr. Wechsler notified NYDEC that Plaintiffs no longer wished to move forward with the exchange. NYDEC requested that Mr. Wechsler provide it with Plaintiffs' TIN so that NYDEC could release the Proceeds to Plaintiffs. *See* Nov. 2014 email exchange between NYDEC and Mr. Wechsler (Ex. C). At this point, Plaintiffs finally came clean and admitted that they did not have a TIN. NYDEC also learned that Plaintiffs were "foreign persons," and thus, FIRPTA withholding tax may have been due. *See* Dec. 23, 2014 email exchange between NYDEC and Mr. Wechsler

6

(Ex. E). Because the buyer had not withheld the tax, NYDEC, as the party now holding the Proceeds, was concerned it may be liable for paying that tax and filing any associated forms. *See* Joint Pretrial Statement at pp. 21, 23, ¶¶ 21, 39 (D.E. 74); F. Trinklein Dep. Tr. at 104:2-107:3 (Ex. J). NYDEC was also concerned that Plaintiffs had made it a party to tax fraud. *See* F. Trinklein Dep. Tr. at 104:2-107:3 (Ex. J).

Accordingly, NYDEC advised Mr. Wechsler that it might commence an impleader action seeking permission to pay the Proceeds to the IRS. Mr. Wechsler assured NYDEC that there was no fraud, and that Plaintiffs now wished to continue with the Section 1031 exchange. Mr. Wechsler also provided written proof that Plaintiffs had identified a Replacement Property by making an offer on a condominium within the 45-day "property identification" period. *See* Dec. 2014 email exchanges between NYDEC and Mr. Wechsler (Ex. D).

### D.  NYDEC Paid the Withholding Tax to the IRS

The "180-day exchange period" expired on April 8, 2015, and Plaintiffs still had not provided NYDEC with a TIN and had not completed the exchange. Because the purchaser of the Apartment had not deducted the mandatory FIRPTA Withholding Tax from the Proceeds, NYDEC was now responsible for payment of such fee. *See* Joint Pretrial Statement at p. 23, ¶ 39 (D.E. 74). Therefore, at the expiration of the exchange period, and with Plaintiffs consent, NYDEC filed IRS Form 8288, and paid the FIRPTA withholding tax ($395,000) and state withholding tax ($96,206) due as a result of the sale. *Id.* at pp. 23-24, ¶¶ 40 & 43-44. NYDEC paid the FIRPTA and state withholding tax from the Proceeds. *See* Jan. 5, 2016 Agreement at p. 1 (Ex. H). On the IRS Form 8288, NYDEC listed the "Date of Transfer", as April 8, 2015, the last date of the exchange period. *See* Form 8288 (Ex. F). NYDEC believed that the under the IRS rules, this was the proper date to use under exchange parlance, and it also minimized any liability that NYDEC or Plaintiffs might face for an alleged failure to file the form and pay the withholding tax at the time of the sale in

7

November 2014. *See* Apr. 10, 2015 Email (Ex. F); F. Trinklein Dep. Tr. at 170:2-176:21 (Ex. J). After NYDEC paid the withholding taxes, the balance of the Proceeds totaled $1,309,199.61. *See* Joint Pretrial Statement at p. 24, ¶ 45 (D.E. 74).

### E. NYDEC Agreed to Release the Vast Majority of the Proceeds to Plaintiffs and $200,000 Has Been Held in Escrow

NYDEC continued to be concerned that it had been implicated in Plaintiffs tax fraud, and, based on advice provided by counsel hired by NYDEC, was concerned that it faced potential liability if the IRS asserted that the Form 8288 and the FIRPTA withholding tax had been filed and paid late (defined by the IRS as more than 20 days after the "Date of Transfer"). *See* F. Trinklein Dep. Tr. at 182:21-184:7 & 195:2-15 (Ex. J). Therefore, NYDEC engaged in discussions with Plaintiffs' counsel to address NYDEC's concerns by returning the vast majority of the remaining the Proceeds to them and holding a small portion of the Proceeds in escrow. *Id.* at 189:20-190:18 & 195:2-15.

In lieu of continuing to work with NYDEC to resolve the issues they created, in December 2015 Plaintiffs commenced this action. *See* Complaint (D.E. 1). On January 5, 2016, NYDEC and Plaintiffs agreed that the vast majority of the Proceeds would be paid to Plaintiffs ($1,104,199.61), and $200,000 would be placed in escrow to protect NYDEC's potential liability to the IRS (the "Balance of Escrow"). *See* Jan. 5, 2016 Agreement at p. 1 (Ex. H); F. Trinklein Dep. Tr. at 216:2-14 (Ex. J). Paragraph 3 of the January 5, 2016 agreement states:

> Escrow Agent agrees to continue to hold the sum of Two Hundred Thousand Dollars ($200,000.00) ("Balance of Escrow") until there is an adjudication determining the disbursement of the Balance of Escrow in the Action or a further agreement of both the Plaintiff and Defendants.

Jan. 5, 2016 Agreement at p. 1 (Ex. H). As there has been no adjudication determining the disbursement of the Balance of Escrow nor a further agreement of Plaintiffs and NYDEC,

8

Plaintiffs' counsel continues to hold the Balance of Escrow as required by the explicit terms of the January 2016 agreement.

On July 22, 2016, Plaintiffs filed an Amended Complaint and added Mr. Wechsler as a Defendant. *See* Amended Complaint (D.E. 15). The Court subsequently granted Mr. Trinklein's motion to dismiss the claims against him and granted NYDEC's motion to dismiss to the extent of dismissing Plaintiffs' claims for an accounting and for an injunction. *See* Order (D.E. 34). After the Court's decision on the motion to dismiss, Plaintiffs only remaining claims against NYDEC are for breach of contract, conversion and negligence. NYDEC has asserted counterclaims and third-party claims against Plaintiffs.[6] *See* Answer with Affirmative Defenses, Counterclaims and Third-Party Complaint (D.E. 35). Mr. Wechsler has asserted a third-party claim against the Mr. Taplitzky. *See* Second Third-Party Complaint (D.E. 48). The parties have completed discovery and filed a Joint Pretrial Statement (D.E. 74).

## **ARGUMENT**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When the nonmoving party bears the burden of proof at trial, then summary judgment is also appropriate when the movant points to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In that event, to avoid summary judgment, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact. *See Celotex*, 477 U.S. at 322-23. Pursuant to the foregoing standards, NYDEC is entitled to summary judgment on each of Plaintiffs' claims.

---

[6] NYDEC is not seeking summary judgment on its affirmative claims against Plaintiffs.

9

**I. THE COURT SHOULD DISMISS PLAINTIFFS' BREACH OF CONTRACT CLAIM BECAUSE THEY HAVE NOT PERFORMED THEIR OBLIGATIONS**

In New York, to recover for a breach of contract claim a plaintiff must show "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Communs., Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). The plaintiff cannot recover for breach of contract if it has not performed its obligations. *See GTF Marketing, Inc. v. Colonial Aluminum Sales, Inc.*, 66 N.Y.2d 965, 968 (1985) (holding that plaintiff's breach of contract cause of action should be dismissed because it did not perform its obligations under the contract).

In this action, Plaintiffs claim that NYDEC breached the Exchange Agreement "by refusing to pay the remaining escrow monies . . . after a new 'exchange property' was not timely identified [in November 2014] and the time period of accomplishing an exchange transaction had ended [in April 2015]." Joint Pretrial Statement at pp. 8-9 (D.E. 74). Plaintiffs breach of contract claim, however, is fatally flawed because the indisputable facts establish that they have not performed their obligations under the Exchange Agreement. Specifically, Plaintiffs have never paid NYDEC the agreed upon fee for NYDEC acting as the QI. *See* F. Trinklein Decl., ¶4 (Ex. K). Also, at the times Plaintiffs allege NYDEC breached the Exchange Agreement (*i.e.*, November 2014 and April 2015), Plaintiffs had not provided a TIN to NYDEC as required by the Exchange Agreement because they did not have one. *See* IRS Notice issuing a TIN to the trust, dated July 9, 2015 (Ex. G). Because Plaintiffs failed to perform their obligations under the Exchange Agreement, they cannot assert a breach of contract claim against NYDEC and NYDEC is entitled to summary judgment on that claim.

10

## II. NYDEC IS ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFFS' NEGLIGENCE CLAIM BECAUSE IT OWED THEM NO DUTY

NYDEC is entitled to summary judgment on Plaintiffs' negligence claim because Plaintiffs have failed to demonstrate that NYDEC owed them a legal duty independent of NYDEC's obligations under the Exchange Agreement. "To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on defendant's part to plaintiff, breach of the duty and damages." *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 576 (2011). "It is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff. In the absence of duty, there is no breach and without a breach there is no liability." *Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976) (citations omitted). It is "the fundamental obligation of a plaintiff pursuing a negligence cause of action to prove that the putative defendant owed a duty of care." *Valdez v. City of New York*, 18 N.Y.3d 69, 75 (2011).

Plaintiffs assert that NYDEC acted negligently when it "accepted the position as a [QI] knowing that the transaction had not been structured in compliance with the legal requirements for such an exchange." Joint Pretrial Statement at p. 8 (D.E. 74). Specifically, Plaintiffs have limited this portion of their negligence claim to the assertion that NYDEC knew that the Section 1031 exchange failed because Plaintiffs had received checks payable for the Proceeds. *See id.* There is, however, no federal or New York statutory or case law imposing a duty on a QI to determine if the transaction had been structured in compliance with the legal requirements for a Section 1031 exchange, or to inform the exchanger about whether the requirements for a Section 1031 exchange have not been satisfied. Moreover, Plaintiffs' accounting expert was unable to testify to what duties a QI may owe towards the exchanger because he was unfamiliar with QI business practices. *See* D. Goykhman Dep. Tr. at 33:17-34:12 & 37:7-15 (Ex. N).

11

The undisputed facts also establish that NYDEC did not know that Plaintiffs had received checks payable for the Proceeds. NYDEC was not told that Plaintiffs had received checks payable for the Proceeds. *See* F. Trinklein Dep. Tr. at 72:15-22 (Ex. J). Further, Plaintiffs' attorney at the closing, Mr. Wechsler, testified that when he spoke to NYDEC on the day of the closing, he told NYDEC that checks had been issued payable to Plaintiffs, but at the time he spoke to NYDEC the checks had not been handed to Plaintiffs.[7] *See* J. Wechsler Dep. Tr. at 270:10-20 (Ex. L). Thus, even viewing the evidence in the light most favorable to Plaintiffs, NYDEC did not (and could not) know that checks had been delivered to Plaintiffs. Accordingly, Plaintiffs' negligence claim should be dismissed because Plaintiffs cannot establish that NYDEC owed them a duty to determine if the sale had been structured to comply with Section 1031, and NYDEC did not know that Plaintiffs had received checks payable for the Proceeds.

Plaintiffs also assert that NYDEC acted negligently when it allegedly "knowingly remitted a FIRPTA withholding payment with an IRS filing that contained materially incorrect information about the sale transaction." Joint Pretrial Statement at p. 8 (D.E. 74). Again, however, there is no federal or New York statutory or case law holding that there is a duty running from a QI - who has unwillingly been made a withholding agent for the FIRPTA tax - to the foreign person with respect to what is included in the FIRPTA withholding tax form. Accordingly, Plaintiffs' negligence claim should be dismissed because Plaintiffs cannot establish that NYDEC owed them a duty with respect to completing the Form 8288.

Plaintiffs' negligence claim is also subject to dismissal on summary judgment because, even assuming NYDEC owed Plaintiffs the alleged duties, Plaintiffs accepted NYDEC's

---

[7] NYDEC disputes that Mr. Wechsler told it the checks had been made payable to Plaintiffs, but that dispute is irrelevant for the purposes of this motion.

12

disclaimer of those duties in the Exchange Agreement. Like any other contracting party, a QI can disclaim duties in the exchange agreement. *See Demetriades v. Royal Abstract Deferred, LLC*, No. 156478/2012, 2017 NY Slip Op 30900(U), at *8-9 (N.Y. County Sup. Ct. May 2, 2017) (granting QI summary judgment on the exchanger's breach of fiduciary duty claim because the QI had disavowed acting as the exchanger's agent in the exchange agreement), *rev'd on other grounds*, 159 A.D.3d 501, 74 N.Y.S.3d 5 (1st Dep't 2018); *see also Sebastian Holdings, Inc. v. Deutsche Bank, AG*, 108 A.D.3d 433, 433, 969 N.Y.S.2d 46, 47 (1st Dep't 2013) (dismissing negligence claim that paralleled breach of contract claim because the "agreements expressly absolved defendant from any liability" for the alleged wrongful conduct). Here, the Exchange Agreement is explicit that NYDEC made no guarantee, promise or other representation with respect to the validity, viability or qualification of the Section 1031 exchange. *See, e.g.,* Exchange Agreement, Arts. 6(A), (B) & (F), at p 7 (Ex. B). The terms of the Exchange Agreement govern the obligations of the parties, and in light of those terms, NYDEC is entitled to summary judgment dismissing the negligence claim.

Plaintiffs also cannot assert that any duty separate and apart from the Exchange Agreement grew out of that agreement. New York courts have recognized that a contractual relationship can give rise to duties independent of the contract when the nature of the services to be performed are "affected with a significant public interest" and the failure to carefully and competently perform the service can "have catastrophic consequences." *See Verizon N.Y., Inc. v. Optical Communications Group, Inc.*, 91 A.D.3d 176, 181, 936 N.Y.S.2d 86, 90 (1st Dep't 2011) (internal quotations omitted). But, no independent duty can arise out of the contractual relationship when the plaintiff asserts only economic harm. *See id.* In this case, the contractual relationship between NYDEC and Plaintiffs does not give rise to tort liability because Plaintiffs seek to recover only for

13

economic harm. *See* Joint Pretrial Statement at pp. 25-26 (describing Plaintiffs damages as the amount of the remaining Proceeds held in escrow, prejudgment interest, the loss of use of the Proceeds and accounting fees) (D.E. 74). Plaintiffs' negligence claim is subject to summary judgment for this additional reason. *See Verizon*, 91 A.D. at 182, 936 N.Y.S.2d at 90 (dismissing tort counterclaim that allegedly arose out of the parties' contract because the defendant sought to recover solely for financial harm).

### III. NYDEC IS ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFFS' CONVERSION CLAIM

#### A. Plaintiffs' Conversion Claim Improperly Duplicates Their Breach of Contract Claim

Plaintiffs' conversion claim impermissibly duplicates their breach of contract claim. A conversion claim "may only succeed if the party alleges a wrong that is distinct from any contractual obligations. There is no conversion action where damages are sought for breach of contract. Rather, a plaintiff must show acts that were unlawful or wrongful as opposed to violations of contractual rights." *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006). Here, Plaintiffs conversion claim is based on the assertion that "NYDEC refused to release" the Proceeds to them. *See* Joint Pretrial Statement at pp. 6-7 (D.E. 74). As noted above, Plaintiffs breach of contract claim is based on the assertion that NYDEC breached the Exchange Agreement "by refusing to pay the remaining escrow monies." *Id.* at pp. 8-9. Plaintiffs description of their breach of contract and conversion claims demonstrates that the conversion claim is not based on a wrong distinct from the breach of contract claim – both are based on the alleged duty to return the Proceeds to Plaintiffs. Thus, NYDEC is entitled to summary judgment on Plaintiffs duplicative conversion claim. *See Command Cinema*, 464 F. Supp. 2d at 203 (dismissing conversion claim that was based on the same wrong – failure to return property – as the breach of contract claim).

14

### B. Plaintiffs' Conversion Claim Fails Because NYDEC Lawfully Obtained Possession of the Proceeds and Does Not Exercise Dominion Over Them

To maintain a claim for conversion, "a plaintiff must show: (1) legal ownership or an immediate superior right of possession to a specific identifiable thing' and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Command Cinema*, 464 F. Supp. 2d at 199 (internal quotations omitted). There is no conversion when the plaintiff voluntarily provides the property at issue to the defendant. *See Kinojuz I.P. v. IRP Int'l Inc.*, No. CV-11-299, 2016 U.S. Dist. LEXIS 141176, at *21 (E.D.N.Y. Oct. 12, 2016) (holding that plaintiff's conversion claim failed because it "voluntarily provided those funds to" defendant). Further, "[w]here a person is rightfully in possession of property and refus[es] to deliver on demand of the owner until the owner proves his right, constitutes no conversion." *Bradley v. Roe*, 282 N.Y. 525, 531 (1940). For example, a person who deposits property with a custodian designated by a court and subject to court order does not commit conversion because, in that circumstance, there is "not an assertion of dominion over the property." *Id*. at 532.

In this case, NYDEC lawfully obtained possession of the Proceeds when Plaintiffs willingly transferred the Proceeds to NYDEC in an effort to complete a 1031 exchange. *See* Joint Pretrial Statement at pp. 6-7 (D.E. 74). Further, NYDEC has never asserted dominion over the Proceeds. Instead, NYDEC asserted that Plaintiffs had to establish their right to the Proceeds by complying with their tax obligations and providing a TIN, and that a portion of the Proceeds had to be held in escrow to protect NYDEC against its potential liability to the IRS. *See* F. Trinklein Dep. Tr. at 189:20-190:18 & 195:2-15 (Ex. J). In fact, since January 2016, the remaining portion of the Proceeds have been held in escrow by Plaintiffs' counsel pursuant to the parties' agreement, and subject to this Court's order. *See* Jan. 6, 2016 Agreement at p. 1 (Ex. H). Under these

15

undisputed facts, NYDEC has not committed conversion and is entitled to summary judgment dismissing that claim. *See Bradley*, 282 N.Y. at 531-33.

## CONCLUSION

For the foregoing reasons, NYDEC respectfully requests that the Court issue an Order granting it summary judgment dismissing Plaintiffs' claims against it with prejudice, and such other, further and different relief as this Court deems just and proper.

Dated: February 19, 2021
      New York, NY

**HINSHAW & CULBERTSON LLP**
*Attorneys for Defendant and Counterclaim Plaintiff/ Third-Party Plaintiff/Third-Party Counterclaim Defendant New York Deferred Exchange Corp.*

By: _____
    Matthew C. Ferlazzo

800 Third Avenue, 13th Floor
New York, NY 10022
Tel: 212-471-6200
Email: mferlazzo@hinshawlaw.com

16