# Exhibit A


EXHIBIT
Def+s 2
8/23/19

> **CONTRACT OF SALE - CONDOMINIUM UNIT (2000)**
> This form was prepared by the Real Property Section of the New York State Bar Association and the Committee on Real Property Law and the Committee on Cooperative and Condominium Law of the Association of the Bar of the City of New York.

*Note: This form is intended to deal with matters common to most transactions involving the sale of a condominium unit. Provisions should be added, altered or deleted to suit the circumstances of a particular transaction. No representation is made that this form of contract complies with Section 5-702 of the General Obligations Law ("Plain Language Law").*

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

### Contract of Sale – Condominium Unit

**Agreement** made as of July 30, 2014 between

Ora Naftali and Roni Naftali as Trustees of The Edtom Trust ("Seller")
residing at
322 West 57th Street, Apartment 42U1, New York, New York 10019

and

Yanping Zhou ("Purchaser")
residing at
Flat 1003, Block B Queens Garden, # 9 Old Peak Road, Mid-levels Hong Kong

1. **Unit:** Seller agrees to sell and convey, and Purchaser agrees to purchase, Unit No. **42U1** ("Unit") in the building ("Building") known as **The Sheffield** Condominium ("Condominium") and located at **322 West 57th Street, New York, NY 10019**, New York, together with a **0.21045** percent undivided interest in the Common Elements (as defined in para. 6) appurtenant thereto, all upon and subject to the terms and conditions set forth herein. The Unit shall be as designated in the Declaration of Condominium Ownership (as the same may be amended from time to time, the "Declaration") of the Condominium, recorded in **New York** County, New York or the By-Laws (as the same may be amended from time to time, the "By-Laws") of the Condominium.

2. **Personal Property:** (a) The sale includes all of Seller's right, title and interest, if any, in and to:

   (i) the refrigerators, freezers, ranges, ovens, built-in microwave ovens, dishwashers, washing machines, clothes dryers, cabinets and counters, lighting and plumbing fixtures, chandeliers, air conditioning equipment, venetian blinds, shades, screens, storm windows and other window treatments, wall-to-wall carpeting, bookshelves, switchplates, door hardware and mirrors, built-ins and articles of property and fixtures attached to or appurtenant to the Unit, except those listed in subpara. 2(b), all of which included property and fixtures are represented to be owned by Seller, free and clear of all liens and encumbrances other than those encumbrances ("**Permitted Exceptions**") set forth on Schedule A annexed hereto and made a part hereof *(strike out inapplicable items)*; and

   (ii) **Shades**

   (b) Excluded from this sale are:
   (i) furniture and furnishings (other than as specifically provided in this Contract); and
   (ii)

   (c) The property referred to in subpara. 2(a)(i) and (ii) may not be purchased if title to the Unit is not conveyed hereunder.

3. **Purchase Price:** (a) The purchase price ("Purchase Price") is $ 3,950,000.00 , payable as follows:

(i) $ 395,000.00 ("Down payment") on the signing of this Contract by good check subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to para. 16; and

(ii) $ 3,555,000.00 constituting the balance of the Purchase Price, by certified check of Purchaser or official bank check (except as otherwise provided in this Contract) on the delivery of the deed as hereinafter provided.

(b) All checks in payment of the Purchase Price shall represent United States currency and be drawn on or issued by a bank or trust company authorized to accept deposits in New York State. All checks in payment of the Downpayment shall be payable to the order of Escrowee (as hereinafter defined). All checks in payment of the balance of the Purchase Price shall be payable to the order of Seller (or as Seller otherwise directs pursuant to subparas. 6(a)(viii) or 18(b)).

(c) Except for the Downpayment and checks aggregating not more than one-half of one percent of the Purchase Price, including payment for closing adjustments, all checks delivered by Purchaser shall be certified or official bank checks as hereinabove provided.

4. **Closing of Title:** The closing documents referred to in para. 6 shall be delivered, and payment of the balance of the Purchase Price shall be made, at the closing of title ("Closing"), to be held on or about August 19, 2014 at 2:00pm , at the offices of Jeffrey L. Wechsler, Esq., 60 East 42nd Street, Suite 1133, New York, New York 10165

or at the office of Purchaser's lending institution or its counsel; provided, however, that such office is located in either the City or County in which either (a) Seller's attorney maintains an office or (b) the Unit is located.

5. **Representations, Warranties and Covenants:** Seller represents, warrants and covenants that:

(a) Seller is the sole owner of the Unit and the property referred to in subpara. 2(a), and Seller has the full right, power and authority to sell, convey and transfer the same;

(b) The common charges (excluding separately billed utility charges) for the Unit on the date hereof are $1,334.48 per month.

(c) Seller has not received any written notice of any intended assessment or increase in common charges not reflected in subpara. 5(b). Purchaser acknowledges that it will not have the right to cancel this Contract in the event of the imposition of any assessment or increase in common charges after the date hereof of which Seller has not heretofore received written notice;

(d) The real estate taxes for the Unit for the fiscal year of 7/1/14 through 6/30/15 are $ 26,068.24

(e) Seller is not a "sponsor" or a nominee of a "sponsor" under any plan of condominium organization affecting the Unit;

(f) All refrigerators, freezers, ranges, dishwashers, washing machines, clothes dryers and air conditioning equipment included in this sale will be in working order at the time of Closing;

(g) If a copy is attached to this Contract, the copy of the Certificate of Occupancy covering the Unit is a true and correct copy; and

(h) Seller is not a "foreign person" as defined in para. 17. *(If inapplicable, delete and provide for compliance with Code Withholding Section, as defined in para. 17.)*

6. **Closing Documents:** (a) At the Closing, Seller shall deliver to Purchaser the following:

(i) Bargain and sale deed with covenant against grantor's acts ("Deed"), complying with RPL § 339-o and containing the covenant required by LL § 13(5), conveying to Purchaser title to the Unit, together with its undivided interest in the Common Elements (as such term is defined in the Declaration and which term shall be deemed to include Seller's right, title and interest in any limited common elements attributable to or used in connection with the Unit) appurtenant thereto, free and clear of all liens and encumbrances other than Permitted Exceptions. The Deed shall be executed and acknowledged by Seller and, if requested by the Condominium, executed and acknowledged by Purchaser, in proper statutory form for recording;

(ii) If a corporation and if required pursuant to BCL § 909, Seller shall deliver to Purchaser (1) a resolution of its board of directors authorizing the delivery of the Deed and (2) a certificate executed by an officer of such corporation certifying as to the adoption of such resolution and setting forth facts demonstrating that the delivery of the Deed is in conformity with the requirements of BCL § 909. The Deed shall also contain a recital sufficient to establish compliance with such law;

(iii) A waiver of right of first refusal of the board of managers of the Condominium ("Board") if required in accordance with para. 8;

(iv) A statement by the Condominium or its managing agent that the common charges and any assessments then due and payable the Condominium have been paid to the date of the Closing;

(v) All keys to the doors of, and mailbox for, the Unit;

(vi) Such affidavits and/or other evidence as the title company ("Title Company") from which Purchaser has ordered a title insurance report and which is authorized to do business in New York State shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against Seller and persons or entities whose names are the same as or are similar to Seller's name;

(vii) New York City Real Property Transfer Tax Return, if applicable, and New York State Real Estate Transfer Tax Return, prepared, executed and acknowledged by Seller in proper form for submission;

(viii) Checks in payment of all applicable real property transfer taxes except a transfer tax which by law is primarily imposed on the purchaser ("Purchaser Transfer Tax") due in connection with the sale. In lieu of delivery of such checks, Seller shall have the right, upon reasonable prior notice to Purchaser, to cause Purchaser to deliver said checks at the Closing and to credit the amount thereof against the balance of the Purchase Price. Seller shall pay the additional transfer taxes, if any, payable after the Closing by reason of the conveyance of the Unit, which obligation shall survive the Closing;

(ix) Certification that Seller is not a foreign person pursuant to para. 17 or a withholding certificate from the Internal Revenue Service. *(If inapplicable, delete and provide for compliance with Code Section, as defined in para. 17.);* and

(x) Affidavit that a single station smoke detecting alarm device is installed pursuant to New York Executive Law §378(5).

(b) At the Closing, Purchaser shall deliver to Seller the following:

(i) Checks in payment of (y) the balance of the Purchase Price in accordance with subpara. 3(b) and (z) any Purchaser Transfer Tax;

(ii) If required by the Declaration or By-Laws, power of attorney to the Board, prepared by Seller, in the form required by the Condominium. The power of attorney shall be executed and acknowledged by Purchaser and, after being recorded, shall be sent to the Condominium;

(iii) New York City Real Property Transfer Tax Return executed and acknowledged by Purchaser and an Affidavit in Lieu of Registration pursuant to New York Multiple Dwelling Law, each in proper form for submission, if applicable, and

(iv) If required, New York State Equalization Return executed and acknowledged by Purchaser in proper form for submission.

(c) It is a condition of Purchaser's obligation to close title hereunder that:

(i) All notes or notices of violations of law or governmental orders, ordinances or requirements affecting the Unit and noted or issued by any governmental department, agency or bureau having jurisdiction which were noted or issued on or prior to the date hereof shall have been cured by Seller;

(ii) Any written notice to Seller from the Condominium (or its duly authorized representative) that the Unit is in violation of the Declaration, By-Laws or rules and regulations of the Condominium shall have been cured; and

(iii) The Condominium is a valid condominium created pursuant to RPL Art. 9-B and the Title Company will so insure.

7. **Closing Adjustments:** (a) The following adjustments shall be made as of 11:59 P.M. of the day before the Closing:

(i) Real estate taxes and water charges and sewer rents, if separately assessed, on the basis of the fiscal period for which assessed, except that if there is a water meter with respect to the Unit, apportionment shall be based on the last available reading, subject to adjustment after the Closing, promptly after the next reading is available; provided, however, that in the event real estate taxes have not, as of the date of Closing, been separately assessed to the Unit, real estate taxes shall be apportioned on the same basis as provided in the Declaration or By-Laws or, in the absence of such provision, based upon the Unit's percentage interest in the Common Elements;

(ii) Common charges of the Condominium; and

(iii) If fuel is separately stored with respect to the Unit only, the value of fuel stored with respect to the Unit at the price then charged by Seller's supplier (as determined by a letter or certificate to be obtained by Seller from such supplier), including any sales taxes.

(b) If at the time of Closing the Unit is affected by an assessment which is or may become payable in installments, then, for the purposes of this Contract, only the unpaid installments which are then due shall be considered due and are to be paid by Seller at the Closing. All subsequent installments at the time of Closing shall be the obligation of Purchaser.

(c) Any errors or omissions in computing closing adjustments shall be corrected. This subpara. 7(c) shall survive the Closing.

(d) If the Unit is located in the City of New York, the "customs in respect to title closings" recommended by The Real Estate Board of New York, Inc., as amended and in effect on the date of Closing, shall apply to the adjustments and other matters therein mentioned, except as otherwise provided herein.

8. **Right of First Refusal:** If so provided in the Declaration or By-Laws, this sale is subject to and conditioned upon the waiver of a right of first refusal to purchase the Unit held by the Condominium and exercisable by the Board. Seller agrees to give notice promptly to the Board of the contemplated sale of the Unit to Purchaser, which notice shall be given in accordance with the terms of the Declaration and By-Laws, and Purchaser agrees to provide promptly all applications, information and references reasonably requested by the Board. If the Board shall exercise such right of first refusal, Seller shall promptly refund to Purchaser the Downpayment (which term, for all purposes of this Contract, shall be deemed to include interest, if any, earned thereon) and upon the making of such refund this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract. If the Board shall fail to exercise such right of first refusal within the time and in the manner provided for in the Declaration or By-Laws or shall declare in writing its intention not to exercise such right of first refusal (a copy of which writing shall be delivered to Purchaser promptly following receipt thereof), the parties hereto shall proceed with this sale in accordance with the provisions of this Contract.

9. **Processing Fee:** Seller shall, at the Closing, pay all fees and charges payable to the Condominium (and/or its managing agent) in connection with this sale, including, without limitation, any processing fee, the legal fees, if any, of the Condominium's attorney in connection with this sale and, unless otherwise agreed to by Seller and Purchaser in writing, all "flip taxes," transfer or entrance fees or similar charges, if any, payable to or for the Condominium or otherwise for the benefit of the Condominium unit owners, which arise by reason of this sale.

10. **No Other Representations:** Purchaser has examined and is satisfied with the Declaration, By-Laws and rules and regulations of the Condominium, or has waived the examination thereof. Purchaser has inspected the Unit, its fixtures, appliances and equipment and the personal property, if any, included in this sale, as well as the Common Elements of the Condominium, and knows the condition thereof and, subject to subpara. 5(f). agrees to accept the same "as is," i.e., in the condition they are in on the date hereof, subject to normal use, wear and tear between the date hereof and the Closing. Purchaser has examined or waived examination of the last audited financial statements of the Condominium, and has considered or waived consideration of all other matters pertaining to this Contract and to the purchase to be made hereunder, and does not rely on any representations made by any broker or by Seller or anyone acting or purporting to act on behalf of Seller as to any matters which might influence or affect the decision to execute this Contract or to buy the Unit, or said personal property, except those representations and warranties which are specifically set forth in this Contract.

11. **Possession:** Seller shall, prior to the Closing, remove from the Unit all furniture, furnishings and other personal property not included in this sale, shall repair any damage caused by such removal, and shall deliver exclusive possession of the Unit at the Closing, vacant, broom-clean and free of tenancies or other rights of use or possession.

12. **Access:** Seller shall permit Purchaser and its architect, decorator or other authorized persons to have the right of access to the Unit between the date hereof and the Closing for the purpose of inspecting the same and taking measurements, at reasonable times and upon reasonable prior notice to Seller (by telephone or otherwise). Further, Purchaser shall have the right to inspect the Unit at a reasonable time during the 24-hour period immediately preceding the Closing.

13. **Defaults and Remedies:** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

14. **Notices:** Any notice, request or other communication ("Notice") given or made hereunder (except for the notice required by para. 12), shall be in writing and either (a) sent by any of the parties hereto or their respective attorneys, by registered or certified mail, return receipt requested, postage prepaid, or (b) delivered in person or by overnight courier, with receipt acknowledged, to the address given at the beginning of this Contract for the party to whom the Notice is to be given, or to such other address for such party as said party shall hereafter designate by Notice given to the other party pursuant to this para. 14, or (c) with respect to para. 6(a)(viii) or para. 18(b), sent by fax to the party's attorney. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same and each Notice delivered in person or by overnight courier shall be deemed given when delivered. A copy of each notice sent to a party shall also be sent to the party's attorney. Each notice sent by fax shall be deemed given when transmission is confirmed by the sender's fax machine. The attorney's for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

15. **Purchaser's Lien:** The Downpayment and all other sums paid on account of this Contract and the reasonable expenses of the examination of title to, and departmental violation searches in respect of, the Unit are hereby made a lien upon the Unit, but such lien shall not continue after default by Purchaser hereunder.

16. **Downpayment in Escrow:** (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at the depository identified at the end of this Contract until Closing or sooner termination of this Contract and shall pay over or apply the Downpayment in accordance with the terms of this para. 16. Escrowee shall hold the Downpayment in a(n) __non-interest__ -bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Down-payment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Down-payment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 14) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this Contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment with the clerk of a court in the county in which the Unit is located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this para. 16, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this para. 16 by signing in the place indicated in this Contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

17. **FIRPTA:** Seller represents and warrants to Purchaser that Seller is not a "foreign person" as defined in IRC § 1445, as amended, and the regulations issued thereunder ("Code Withholding Section"). At the Closing Seller shall deliver to Purchaser a certificate stating that Seller is not a foreign person in the form then required by the Code Withholding Section or a withholding certificate from the Internal Revenue Service. In the event Seller fails to deliver the aforesaid certificate or in the event that Purchaser is not entitled under the Code Withholding Section to rely on such certificate, Purchaser shall deduct and withhold from the Purchase Price a sum equal to 10% thereof and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

18. **Title Report; Acceptable Title:** (a) Purchaser shall, promptly after the date hereof, or after receipt of the mortgage commitment letter, if applicable, order a title insurance report from the Title Company. Promptly after receipt of the title report and thereafter of any continuations thereof and supplements thereto, Purchaser shall forward a copy of each such report, continuation or supplement to the attorney for Seller. Purchaser shall further notify Seller's attorney of any other objections to title not reflected in such title report of which Purchaser becomes aware following the delivery of such report, reasonably promptly after becoming aware of such objections.

(b) Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the date of Closing, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser at the Closing official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with subpara. 3(b). If the Title Company is willing to insure Purchaser that such charges, liens and encumbrances will not be collected out of or enforced against the Unit and is willing to insure the lien of Purchaser's Institutional Lender (as hereinafter defined) free and clear of any such charges, liens and encumbrances, then Seller shall have the right in lieu of payment and discharge to deposit with the Title Company such funds or to give such assurances or to pay such special or additional premiums as the Title Company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the Title Company has agreed so to insure shall not be considered objections to title.

(c) Seller shall convey and Purchaser shall accept fee simple title to the Unit in accordance with the terms of this Contract, subject only to: (a) the Permitted Exceptions and (b) such other matters as (i) the Title Company or any other title insurer licensed to do business by the State of New York shall be willing, without special or additional premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Unit and (ii) shall be accepted by any lender which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Unit ("**Purchaser's Institutional Lender**"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

(d) Notwithstanding any contrary provisions in this Contract, express or implied, or any contrary rule of law or custom, if Seller shall be unable to convey the Unit in accordance with this Contract (provided that Seller shall release, discharge or otherwise cure at or prior to Closing any matter created by Seller after the date hereof and any existing mortgage, unless this sale is subject to it) and if Purchaser elects not to complete this transaction without abatement of the Purchase Price, the sole obligation and liability of Seller shall be to refund the Downpayment to Purchaser, together with the reasonable cost of the examination of title to, and departmental violation searches in respect of, the Unit, and upon the making of such refund and payment, this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract. However, nothing contained in this subpara. 18(d) shall be construed to relieve Seller from liability due to a willful default.

19. **Risk of Loss; Casualty:** (a) The risk of loss or damage to the Unit or the personal property included in this sale, by fire or other casualty, until the earlier of the Closing or possession of the Unit by Purchaser, is assumed by Seller, but without any obligation of Seller to repair or replace any such loss or damage unless Seller elects to do so as hereinafter provided. Seller shall notify Purchaser of the occurrence of any such loss or damage to the Unit or the personal property included in this sale within 10 days after such occurrence or by the date of Closing, whichever first occurs, and by such notice shall state whether or not Seller elects to repair or restore the Unit and/or the personal property, as the case may be. If Seller elects to make such repairs and restorations, Seller's notice shall set forth an adjourned date for the Closing, which shall be not more than 60 days after the date of the giving of Seller's notice. If Seller either does not elect to do so or, having elected to make such repairs and restorations, fails to complete the same on or before said adjourned date for the Closing, Purchaser shall have the following options:

(i) To declare this Contract cancelled and of no further force or effect and receive a refund of the Downpayment in which event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract; or

(ii) To complete the purchase in accordance with this Contract without reduction in the Purchase Price, except as provided in the next sentence. If Seller carries hazard insurance covering such loss or damage, Seller shall turn over to Purchaser at the Closing the net proceeds actually collected by Seller under the provisions of such hazard insurance policies to the extent that they are attributable to loss of or damage to any property included in this sale, less any sums theretofore expended by Seller in repairing or replacing such loss or damage or in collecting such proceeds, and Seller shall assign (without recourse to Seller) Seller's right to receive any additional insurance proceeds which are attributable to the loss of or damage to any property included in this sale.

(b) If Seller does not elect to make such repairs and restorations, Purchaser may exercise the resulting option under (i) or (ii) of (a) above only by notice given to Seller within 10 days after receipt of Seller's notice. If Seller elects to make such repairs and restorations and fails to complete the same on or before the adjourned closing date, Purchaser may exercise either of the resulting options within 10 days after the adjourned closing date.

(c) In the event of any loss of or damage to the Common Elements which materially and adversely affects access to or use of the Unit, arising after the date of this Contract but prior to the Closing, Seller shall notify Purchaser of the occurrence thereof within 10 days after such occurrence or by the date of Closing, whichever occurs first, in which event Purchaser shall have the following options:

(i) To complete the purchase in accordance with this Contract without reduction in the Purchase Price; or

(ii) To adjourn the Closing until the first to occur of (1) completion of the repair and restoration of the loss or damage to the point that there is no longer a materially adverse effect on the access to or use of the Unit or (2) the 60th day after the date of the giving of Seller's aforesaid notice. In the event Purchaser elects to adjourn the Closing as aforesaid and such loss or damage is not so repaired and restored within 60 days after the date of the giving of Seller's aforesaid notice, then Purchaser shall have the right either to (x) complete the purchase in accordance with this Contract without reduction in the Purchase Price or (y) declare this Contract cancelled and of no further force or effect and receive a refund of the Downpayment, in which latter event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract.

(d) In the event of any loss of or damage to the Common Elements which does not materially and adversely affect access to or use of the Unit, Purchaser shall accept title to the Unit in accordance with this Contract without abatement of the Purchase Price.

20. **Internal Revenue Service Reporting Requirement:** Each party shall execute, acknowledge and deliver to the other party such instruments, and take such other actions, as such other party may reasonably request in order to comply with IRC § 6045(e), as amended, or any successor provision or any regulations promulgated pursuant thereto, insofar as the same requires reporting of information in respect of real estate transactions. The provisions of this para. 20 shall survive the Closing. The parties designate **Seller's Attorney** as the attorney responsible for reporting this information as required by law.

21. **Broker:** Seller and Purchaser represent and warrant to each other that the only real estate broker with whom they have dealt in connection with this Contract and the transaction set forth herein is **Selling Broker: Joseph Taplitzky, The Corcoran Group, 660 Madison Avenue, New York, New York 10065 and Purchasing Broker: Anne Prosser, Halstead Property LLC, 499 Park Avenue, 14th Floor, New York, New York 10022**

and that they know or no other real estate broker who has claimed or may have the right to claim a commission in connection with this transaction. The commission of such real estate broker shall be paid by Seller pursuant to separate agreement. If no real estate broker is specified above, the parties acknowledge that this Contract was brought about by direct negotiation between Seller and Purchaser and each represents to the other that it knows of no real estate broker entitled to a commission in connection with this transaction.

Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses (including reasonable attorneys' fees) arising out of the breach on their respective parts of any representation, warranty or agreement contained in this para. 21. The provisions of this para. 21 shall survive the Closing or, if the Closing does not occur, the termination of this Contract.

22. **Mortgage Commitment Contingency.** *(Delete paragraph if inapplicable)* ~~(a) The obligation of Purchaser to purchase under this Contract is conditioned upon issuance, on or before _____ days after a fully executed copy of this Contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 14 or subparagraph 22(k) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $_____ for a term of at least _____ years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 22(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this Contract even if the lender fails or refuses to fund the loan for any reason.~~

~~(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 22(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.~~

~~(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 22(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).~~

~~(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this Contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 22.~~

~~(e) If no Commitment is issued by the Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 22(a), Purchaser may cancel this Contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 22.~~

~~(f) If this Contract is canceled by Purchaser pursuant to subparagraphs 22(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 21.~~

~~(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 22(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this Contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 22.~~

~~(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this Contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all of its obligations under this paragraph 22) and except as set forth in paragraph 21.~~

~~(i) The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries under this paragraph 22.~~

~~(j) For purposes of this Contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.~~

~~(k) For purposes of subparagraph (a), Purchaser shall be deemed to have been given a fully executed copy of this Contract on the third business day following the date of ordinary or regular mailing, postage prepaid.~~

23. **Gender, Etc.:** As used in this Contract, the neuter includes the masculine and feminine, the singular includes the plural and the plural includes the singular, as the context may require.

24. **Entire Contract:** All prior understandings and agreements between Seller and Purchaser are merged in this Contract and this Contract supersedes any and all understandings and agreements between the parties and constitutes the entire agreement between them with respect to the subject matter hereof.

25. **Captions:** The captions in this Contract are for convenience and reference only and in no way define, limit or describe the scope of this Contract and shall not be considered in the interpretation of this Contract or any provision hereof.

26. **No Assignment by Purchaser:** Purchaser may not assign this Contract or any of Purchaser's rights hereunder.

27. **Successors and Assigns:** Subject to the provisions of para. 26, the provisions of this Contract shall bind and inure to the benefit of both Purchaser and Seller and their respective distributees, executors, administrators, heirs, legal representatives, successors and permitted assigns.

28. **No Oral Changes:** This Contract cannot be changed or terminated orally. Any changes or additional provisions must be set forth in a rider attached hereto or in a separate written agreement signed by both parties to this Contract.

29. **Contract Not Binding Until Signed:** This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

30. **Lead-Based Paint:** If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

**In Witness Whereof**, the parties hereto have duly executed this Contract on the day and year first above written.

| _____ | (Soc. Sec. No.) | _____ | (Soc. Sec. No.) |
| Seller Ora Naftali, Trustee | | Purchaser Yanping Zhou | |
| _____ | (Soc. Sec. No.) | _____ | (Soc. Sec. No.) |
| Seller Roni Naftali, Trustee | | Purchaser | |
| _____ | (Soc. Sec. No.) | _____ | (Soc. Sec. No.) |
| Seller | | Purchaser | |
| _____ | (Soc. Sec. No.) | _____ | (Soc. Sec. No.) |
| Seller | | Purchaser | |

Agreed to as to para. 16: _____
Escrowee Jeffrey L. Wechsler, Esq.

Escrow Depository: **Citibank**

Address: **90 Park Avenue, New York, NY**

## SCHEDULE A - Permitted Exceptions

1. Zoning laws and regulations and landmark, historic or wetlands designation which are not violated by the Unit and which are not violated by the Common Elements to the extent that access to or use of the Unit would be materially and adversely affected.

2. Consents for the erection of any structure or structures on, under or above any street or streets on which the Building may abut.

3. The terms, burdens, covenants, restrictions, conditions, easements and rules and regulations set forth in the Declaration, By-Laws and rules and regulations of the Condominium, the Power of Attorney from Purchaser to the board of managers of the Condominium and the floor plans of the Condominium, all as may be amended from time to time.

4. Rights of utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Building and Common Elements, provided that none of such rights imposes any monetary obligation on the owner of the Unit or materially interferes with the use of or access to the Unit.

5. Encroachments of stoops, areas, cellar steps, trim, cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Building over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Common Elements.

6. Any state of facts which an accurate survey or personal inspection of the Building, Common Elements or Unit would disclose, provided that such facts do not prevent the use of the Unit for dwelling purposes. For the purposes of this Contract, none of the facts shown on the survey, if any, identified below, shall be deemed to prevent the use of the Unit for dwelling purposes, and Purchaser shall accept title subject thereto.

The survey referred to in No. 6 above was prepared by _____
dated _____ and last revised _____

7. The lien of any unpaid common charge, real estate tax, water charge, sewer rent or vault charge, provided the same are paid or apportioned at the Closing as herein provided.

8. The lien of any unpaid assessments to the extent of installments thereof payable after the Closing.

9. Liens, encumbrances and title conditions affecting the Common Elements which do not materially and adversely affect the right of the Unit owner to use and enjoy the Common Elements.

10. Notes or notices of violations of law or governmental orders, ordinances or requirements (a) affecting the Unit and noted or issued subsequent to the date of this Contract by any governmental department, agency or bureau having jurisdiction and (b) any such notes or notices affecting only the Common Elements which were noted or issued prior to or on the date of this Contract or at any time hereafter.

11. Any other matters or encumbrances subject to which Purchaser is required to accept title to the Unit pursuant to this Contract.

7. The lien of any unpaid common charge, real estate tax, water charge, sewer rent or vault charge, provided the same are paid or apportioned at the Closing as herein provided.

8. The lien of any unpaid assessments to the extent of installments thereof payable after the Closing.

9. Liens, encumbrances and title conditions affecting the Common Elements which do not materially and adversely affect the right of the Unit owner to use and enjoy the Common Elements.

10. Notes or notices of violations of law or governmental orders, ordinances or requirements (a) affecting the Unit and noted or issued subsequent to the date of this Contract by any governmental department, agency or bureau having jurisdiction and (b) any such notes or notices affecting only the Common Elements which were noted or issued prior to or on the date of this Contract or at any time hereafter.

11. Any other matters or encumbrances subject to which Purchaser is required to accept title to the Unit pursuant to this Contract.

RIDER TO CONTRACT OF SALE
DATED JULY 30, 2014
BETWEEN ORA NAFTALI & RONI NAFTALI AS TRUSTEES OF THE EDTOM TRUST, AS SELLERS
AND YANPING ZHOU AS PURCHASER

RIDER annexed to and forming part of the Contract of Sale dated July 30, 2014, between ORA NAFTALI & RONI NAFTALI AS TRUSTEES OF THE EDTOM TRUST, the "Sellers" and YANPING ZHOU the "Purchaser" of 322 West 57th Street, Apartment 42U1, New York, New York 10019.

IN THE EVENT OF ANY INCONSISTENCY, AMBIGUITY OR CONFLICT BETWEEN THE TERMS HEREOF AND THE CONTRACT TO WHICH THIS RIDER IS ATTACHED, THE TERMS HEREOF SHALL GOVERN AND PREVAIL.

31. Purchaser acknowledges that neither the Sellers nor anyone of behalf of the Sellers have made any promises, statements, estimates, representations, warranties, conditions or other inducements to Purchaser or anyone on behalf of the Purchaser regarding the condition of the Premises, operating expenses of the Premises, the use to which the Premises may be put or any other matter or thing relating to the Premises except as otherwise stated in this Contract and the Purchaser rely on Purchaser's own investigation and knowledge with respect to said matters.

32. Sellers are not obligated to install any equipment or appliances in the Premises or otherwise make any repairs, improvements or decorations to the Premises or its equipment, appliances and fixtures except as otherwise stated in this Contract including that appliances, windows, and the plumbing, heating, air-conditioning, and electrical systems, are to be in "working order" at the time of closing.

33. Sellers shall prepare the New York State Real Estate Transfer Tax Return (New York State Department of Taxation of Finance, Form TP584) and Sellers and Purchaser shall execute the same as and when requested at the closing. Sellers shall pay the applicable New York State transfer tax and the Purchaser shall pay the New York State Mansion Tax. Sellers and Purchaser shall execute the tax form for the New York City Transfer Tax Return as and when requested at the closing. Sellers shall be responsible for the New York City Transfer Tax.

34. The monies paid on account of the purchase price prior to closing shall be paid over to Jeffrey L. Wechsler, Esq., as escrow agent, at 60 East 42nd Street, Suite 1133, New York, New York 10165, the "Escrowee", and held in escrow by his in accordance with the following provisions and conditions:

(a) Said escrow fund shall be deposited by the Escrowee in an IOLA account having FDIC coverage in Citibank, a bank or banks having a principal office in New York City. Interest on said escrow funds shall not accrue to either the Purchaser or nor Seller.

(b) (1) Escrowee shall deliver the escrow fund to Seller (i) upon the closing hereunder, or (ii) in the event that Seller makes a written demand therefor stating that Purchaser has failed to perform Purchaser obligations hereunder subject to Subparagraph 3 herein below.

1

(2) Escrowee shall return the escrow fund to Purchaser in the event that Purchaser makes a written demand therefor stating (i) that Seller has failed to perform Seller's obligations hereunder, or (ii) that Purchaser is otherwise entitled to the return of the escrow fund in accordance with the terms hereunder, subject to Subparagraph 3 herein below.

(3) In the event that Escrowee intends to release the balance of the escrow fund then in its possession to either party pursuant to Subparagraph (b)(1) or (b)(2) hereof, the Escrowee shall give to the other party not less than ten (10) days prior written notice by Certified Mail Return Receipt Requested or Priority Mail, and, if Escrowee receives written notice during such ten (10) day period that such other party objects to the release, then Escrowee shall not release the fund and any such dispute as to which party is entitled to the fund shall be resolved as hereinafter provided.

(4) In the event that a dispute shall arise as to the disposition of the balance of the escrow fund, Escrowee shall have the right, at its option, to either hold the same or deposit the same with the court of competent jurisdiction pending the decision of such court, and Escrowee shall be entitled to rely upon the decision of such court regarding disposition of the escrow fund.

(5) Escrowee shall have no liability whatsoever arising out of or in connection with its activity as Escrowee except for its gross negligence or willful misconduct. Seller and Purchaser jointly and severally agree to indemnify and hold harmless Escrowee from and against any and all loss, claim, cause of action, damage, liability and expense (including attorney's fees and court costs) which may be incurred by reason of its acting as Escrowee except those due to Escrowee's gross negligence or willful misconduct.

(6) Escrowee shall be entitled to rely upon any judgment, certification, demand or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any fact stated therein, the proprietary or validity thereof, or the jurisdiction of the court issuing any such judgment. Escrowee may act in reliance upon (i) any instrument or signature believed to be genuine and duly authorized, and (ii) advice of counsel in reference to any matters connected therewith.

(7) Any notice, demand or communication to Escrowee hereunder shall be in writing and delivered in person or send by Certified Mail, Return Receipt Requested, postage prepaid, addressed to Escrowee as follows:

> Jeffrey L. Wechsler, Esq.
> 60 East 42nd Street
> Suite 1133
> New York, New York 10165

The same shall be deemed given on the date delivered, if delivered in person, or on the third (3rd) business day following the date of mailing if mailed in accordance with the provisions hereof.

35. The parties agree that in any action brought to enforce this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and court costs.

2

NAFTALI-00103

36. This contract may be executed in counterparts, each of which when taken together shall constitute one and the same instrument, and a "PDF" and a facsimile signature shall be deemed to be an original signature.

37. The Purchaser represents that they have not been convicted of a felony and have never filed for bankruptcy.

38. The Sellers may be conducting a 1031 Exchange with the sale of the Premises. The Purchaser shall comply with the execution of any documents in order to facilitate the 1031 Exchange with the Exchanger. There shall be no liability or costs to the Purchaser for said 1031 Exchange.

40. In the event Purchaser owns a home, Purchaser hereby acknowledge and agree that Purchaser <u>does not</u> condition the within purchase of the Premises upon the sale of Purchaser's home. Likewise, in the event Purchaser own other assets(s) or expect to liquidate and/or receive any gifts, asset(s), distributions, etc (hereafter collectively referred to as "asset(s)". Purchaser hereby acknowledge and agree that Purchaser <u>does not</u> condition the within purchase of the Premises upon the receipt or liquidation of any asset(s).

41. Should the Purchaser desire to request an Assignment of Mortgage from the existing lender of the Sellers, the Sellers will comply with this process provided that the resulting savings of the Mortgage Tax as a result of the Assignment is split equally between the Purchaser and the Sellers and the current lender provides a release letter to the Sellers.

42. Any notice required or permitted hereunder shall be deemed delivered if hand delivered or sent by Registered or Certified Mail Return Receipt Requested, postage prepaid, or by Federal Express or Priority Mail with receipt acknowledged.

If intended for the Sellers to:
Jeffrey L. Wechsler, Esq.
60 East 42nd Street
Suite 1133
New York, New York 10165
(212) 599-1900 telephone
(212) 599-0535 fax

If intended for the Purchaser to:
George Bunn, Esq.
126 East 56th Street
12th Floor
New York, NY 10022
(212) 688-3020 telephone
(212) 888-0669 fax

43. The real estate brokerage commissions are to be paid by the Seller. The commission is a total of 5%: The Corcoran Group shall receive 2 ½% and Halstead Property LLC shall receive 2 ½%.

3

NAFTALI-00104

44. The Premises are being sold subject to a lease. The Purchaser will be purchasing the Premises with the Lease assigned to the Purchaser from the Sellers. Adjustments as necessary will be made for a security deposit and monthly rent. Attached to the Contract is the Lease labeled as "Exhibit A".

45. Seller represents that (i) any alterations made to the Unit by Seller, if any, were done in accordance with all applicable governmental regulations (including, without limitation, all zoning laws and building codes) and were approved by the Board of Managers of the Condominium pursuant to the terms of any applicable Alteration Agreement or similar document; (ii) all necessary permits and licenses, if any, were obtained and all required fees were paid in connection with such alterations; (iii) all such alterations, if any, were approved by the appropriate governmental agencies where required; and (iv) Seller will not make any alterations to the Unit from the date of this Contract to the date of Closing hereunder.

46. Seller represents and warrants that the heating, electrical and plumbing systems in the Unit are, and at the Closing will be, in good working order to the extent that the care and maintenance of such systems is the Seller's responsibility under the Declaration, By-Laws and other legal documents relating to the Unit.

47. Seller represents and warrants that Seller is able to, and will, deliver a Certificate of Nonforeign Status pursuant to the terms of Paragraph 25 hereof.

48. It is agreed that the Seller shall permit Purchaser and Purchaser's architect, decorator or other authorized persons to have the right of reasonable access to the Unit from time to time between the date hereof and the Closing for the purpose of inspecting the same and taking measurements and for other reasonable purposes, provided that Purchaser, in each instance, gives Seller reasonable advanced notice of the proposed appointment.

49. Purchaser's obligations under this Contract of Sale are subject to the issuance to the Purchaser prior to the closing by the Board of Managers of the Condominium of written permission to utilize the Apartment for occupancy by immediate members of the Purchaser's family when they may be visiting New York. This written permission will be in addition to any rights of occupancy granted to owners of apartments by the Declaration and the By Laws of the Condominium and by the pronouncements and resolutions issued and to be issued from time to time by the Board of Managers of the Condominium. If such written permission is not granted, then Purchaser shall have the right to elect to terminate this Contract of Sale in which event Purchaser's down payment will be returned to Purchaser along with any interest earned thereon, the Contract of Sale will be deemed as terminated and cancelled, and neither party will thereafter have any rights against or obligations toward the other under the Contract of Sale.

50. There is a working smoke detecting alarm and carbon monoxide detector in the Unit.

51. Seller represents and warrants to Purchaser that:

a. Seller is the record title owner of the Premises and knows of no encumbrances or defects to title that are not of record other than those set forth in this Contract;

    b. Seller is not now a party to any litigation and Seller knows of no litigation or threatened litigation affecting the Premises, and Seller shall give to Purchaser prompt notice of the institution prior to the Closing of any such litgations;

    c. Seller has not filed any application for the reduction of the assessed valuation of the Premises or instituted certiorari proceedings for review of such assessed valuations.

52. All warranties to the extent assignable shall be assigned to Purchasers and all manuals shall be turned over to the Purchaser at the Closing.

53. Seller represents that Seller has no knowledge of the presence of bedbugs or other pests in the Apartment within the last eighteen (18) months.

54. Seller represents that there have been no leaks in the Unit or water penetration into the Unit from the exterior portion of the Unit, during Seller's ownership of the Unit.

Purchaser:            Sellers:

_____    _____
YANPING ZHOU           ORA NAFTALI, TRUSTEE

                 _____
                 RONI NAFTALI, TRUSTEE

NAFTALI-00106

## DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT
## AND LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**
Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Seller's Disclosure (initial)**
\_\_\_\_\_ (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):
[ ] Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

[x] Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
(b) Records and reports available to the seller (check one below):
[ ] Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____

[x] Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**
\_\_\_\_\_ (c) Purchaser has received copies of all information listed above.
\_\_\_\_\_ (d) Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.
\_\_\_\_\_ (e) Purchaser has (check one below):
[ ] Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
[x] Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**
\_\_\_\_\_ (f) Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

_____  7/29/2014        _____  7·29.14
Seller Ora Naftali           Date             Seller Roni Naftali         Date

_____  _____         _____  _____
Agent                        Date             Agent                       Date

Yanping Zhen  7/25/14
Purchaser Yanping Zhou       Date             Purchaser                   Date
as Agent

NYSBA's Residential Real Estate Forms (9/03)        © 2014 Matthew Bender & Co., a member of the LexisNexis Group.

NAFTALI-00107