# Exhibit B





# EXCHANGE AGREEMENT

EXCHANGE AGREEMENT, made as of this 10th day of October, 2014, by and between Ora Naftali and Roni Naftali as Trustees of The Edtom Trust (referred to herein as "Owner"), and New York Deferred Exchange Corporation, a New York corporation doing business at 6800 Jericho Turnpike, Suite 120W, Syosset, New York 11791 (referred to herein as "Qualified Intermediary", "QI", or "NYDEC").

WITNESSETH:

WHEREAS, Owner desires to exchange, for other property of like kind and qualifying use within the meaning of Section 1031 of the Internal Revenue Code, Owner's real property interest (*to the extent used for trade or business, or investment purposes*) in the property known by street address: 322 West 57th Street, New York, New York, and Tax Map Designation: Unit No. 42U1 *in the building known as The Sheffield Condominium*, County of New York referred to herein as the "**Relinquished Property**"; and

WHEREAS, QI desires to acquire said **Relinquished Property** in exchange for one or more other fee simple absolute titles in property of like kind and qualifying use within the meaning of Section 1031 of the Internal Revenue Code, referred to herein as the "**Acquired Property**"; and

WHEREAS, it is the intention of the parties that QI acquire the **Relinquished Property** and transfer it to the Purchaser, and acquire the **Acquired Property** and transfer it to the Owner within the meaning of Internal Revenue Code Section 1031 and as provided in the Qualified Intermediary Safe Harbor of IRC Regulation Section 1.1031(k)-1(g)(4)

NOW, THEREFORE, in consideration of the mutual promises herein contained, Owner and QI agree as follows:

ARTICLE ONE

SALE PHASE

(1) Owner agrees to transfer the **Relinquished Property** to QI and QI agrees to acquire the **Relinquished Property** upon the terms and conditions set forth in this Exchange Agreement. The **Relinquished Property** shall be transferred to QI subject to the rights of Yanping Zhou, Purchaser(s), to purchase the **Relinquished Property** pursuant to a Real Estate Contract dated July 30, 2014, herein referred to as the "**Relinquished Property Contract**."

(2) Owner agrees to assign to QI, all of Owner's rights in the **Relinquished**



2

Property Contract, and QI agrees to accept the Assignment from Owner of Owner's rights in the **Relinquished Property Contract**.

(3) Owner represents that it will provide notice to Purchaser that Owner's rights in the **Relinquished Property Contract** have been assigned to QI on or before the **Relinquished Property** Closing Date.

## ARTICLE TWO

## PURCHASE PHASE

(1) The consideration for the transfer of the **Relinquished Property** to QI shall be the exchange by QI to Owner of fee simple titles to other property of like kind and qualifying use within the meaning of Section 1031 of the Internal Revenue Code which shall hereafter be acquired by QI and which shall be acceptable to Owner.

(2) Owner will enter into any contract for the acquisition of **Acquired Property**, referred to herein as the "**Acquired Property Contract**" and Owner will assign its rights under each **Acquired Property Contract** to QI.

(3) Owner represents that it will, prior to the **Acquired Property** Closing Date, provide notice to the Seller under said **Acquired Property Contract**, that Owner's rights in said **Acquired Property Contract** have been assigned to QI.

(A)  IDENTIFICATION OF **ACQUIRED PROPERTY**

If **Acquired Property** has not been identified by Owner on or before the **Relinquished Property** Closing Date, Owner may, at any time prior to the expiration of the period ending on midnight on the 45th day after the **Relinquished Property** Closing Date, referred to herein as the "Identification Period", identify **Acquired Property** to QI or other eligible person as described by IRS Regulations (Treasury Decision 8346). Owner may identify up to three (3) properties without regard to the value of said properties, or Owner may identify more than three (3) properties so long as the aggregate fair market value does not exceed 200% of the aggregate fair market value of all **Relinquished Property**. Owner may, at any time prior to the expiration of said 45-day period, revoke an identification and identify substitute **Acquired Property** in substitution of any **Acquired Property** previously identified. For purposes of this Article, identification of **Acquired Property** only occurs if the Property is designated as **Acquired Property** in writing, signed by Owner, and hand delivered, sent by certified mail, or faxed to QI before the expiration of the Identification Period.

(B)  EXCHANGE PERIOD

If on or before 45 days from the date of the **Relinquished Property** Closing Date, Owner shall identify one or more Replacement Properties, QI shall use its best efforts to acquire and transfer to Owner each **Acquired Property** so identified by the earlier of 180 days from the **Relinquished Property** Closing Date, or the due date of the Owner's Federal income tax return for the year in which the **Relinquished Property** Closing Date occurs, determined with extensions,



New York Deferred Exchange Corporation • 6800 Jericho Turnpike Suite 120W • Syosset NY 11791 • (800) 656-9332

3

(referred to herein as the "Exchange Period"), at the purchase price(s), and upon such other terms and conditions, including but not limited to conditions of title, as have been approved by Owner.

## ARTICLE THREE

DEFINITIONS and MISCELLANEOUS TERMS:

(A)   OWNER'S EQUITY IN **RELINQUISHED PROPERTY**

For the purposes of this Agreement, the term "**Relinquished Property Equity**" is deemed to be:

- Gross Sales Price of the **Relinquished Property**

- Less the sum of the following:

    a.   the unpaid principal amount, if any, of mortgage(s) recorded against the **Relinquished Property**, and

    b.   State, City or other transfer taxes, and

    c.   typical real property tax and expense item prorations/adjustments as between seller and purchaser, and

    d.   document recording charges, legal fees, professional fees in connection with the IRC Sec. 1031 exchange, broker's commissions, title company charges and any other closing costs which relate to the disposition of the **Relinquished Property** and which are typically the responsibility of the seller.

(B)   CASH REQUIRED TO PURCHASE **ACQUIRED PROPERTY**

For the purposes of this Agreement, the term "Cash Required" shall be an amount equal to 100% of the sum of the following items:

    a.   the total cash portion of the aggregate consideration required to be paid by QI under all contracts to acquire the **Acquired Property**, and

    b.   the typical closing costs to be incurred by QI in the acquisition of all **Acquired Property**(s) which shall include, but not be limited to, any mortgage taxes, recording taxes or charges, charges for title searches, title insurance, survey costs, and

    c.   State, City or other transfer taxes to be paid by purchaser, and

    d.   closing prorations/adjustments, and

    e.   brokerage commissions, legal fees and all charges of any lenders making mortgage loans on **Acquired Property**.


New York Deferred Exchange Corporation • 6800 Jericho Turnpike Suite 120W • Syosset NY 11791 • (800) 656-9332

NAFTALI-00024

4

(C)  EXCHANGE BALANCE OVERAGE

The amount, if any, by which the **Relinquished Property Equity** exceeds the "Cash Required" constitutes the "Exchange Balance Overage", to be paid by QI to Owner as provided in ARTICLE FIVE.

(D)  ADVANCED OR LOANED FUNDS

(1) In no event shall QI be required to advance sums in excess of the **Relinquished Property Equity** on account of the purchase of **Acquired Property**. Owner shall have the right to (a) advance funds to QI in the event amounts in excess of the **Relinquished Property Equity** are required in order to purchase the **Acquired Property** ("Advanced Funds") or (b) locate and designate a lender or lenders from which QI shall borrow funds ("Loaned Funds"), and in such event, QI shall complete such borrowing terms acceptable to Owner, provided that QI shall have no recourse liability with respect to such borrowing.

(2) The Advanced Funds or Loaned Funds shall be delivered in immediately available funds to QI no later than the date such funds are required to be paid pursuant to **Acquired Property Contract**.

(E)  I.R.C. SECTION 1031

Any reference to Section 1031 of the Internal Revenue Code shall include reference to all current Treasury Department Regulation promulgated under Section 1031.

## ARTICLE FOUR

(A)  CLOSING DATES:

    (i)  **Relinquished Property** CLOSING DATE

The closing of title with reference to the **Relinquished Property** shall take place on or about October 10, 2014 (the "**Relinquished Property** Closing Date").

    (ii)  **Acquired Property** CLOSING DATE

The closing of title with reference to the **Acquired Property** shall take place on a date (the "**Acquired Property** Closing Date") designated by Owner in a written notice to QI, not earlier than the **Relinquished Property** Closing Date and not later than the end of the Exchange Period.

(B)  PRORATIONS/ADJUSTMENTS:

    (i)  **Relinquished Property** PRORATIONS/ADJUSTMENTS

The same apportionments and adjustments shall be made as of the **Relinquished Property**


New York Deferred Exchange Corporation • 6800 Jericho Turnpike Suite 120W • Syosset NY 11791 • (800) 656-9332

5

Closing Date between Owner and QI as are made between QI and the Purchaser of the **Relinquished Property** pursuant to the **Relinquished Property Contract** relating thereto.

    (ii)    **Acquired Property PRORATIONS/ADJUSTMENTS**

The same apportionments and adjustments shall be made as of the Replacement Property Closing Date between Owner and QI as are made between QI and the Seller of each parcel of the **Acquired Property(s)** pursuant to the **Acquired Property Contract** relating thereto.

(C)    CERTIFIED FUND REQUIREMENTS

All adjustments and payments shall be made between Owner and QI as of the **Relinquished Property** Closing Date, or the **Acquired Property** Closing Date, as appropriate.

Any payments made pursuant to ARTICLE TWO must be by either (i) good and sufficient certified check of QI or Owner, as the case may be, drawn on a bank or banks which are members of the New York Clearing House, or (ii) official check or checks of such bank(s), or a combination of any such checks, or (iii) by wiring via federal funds.

(D)    DIRECT DEEDING

At the direction of QI, a conveyance by Owner to QI, or by QI to Owner, includes, respectively, a direct conveyance from the Owner to a third party purchaser ("Purchaser") of the **Relinquished Property**, or from a seller of **Acquired Property** to Owner. All deeds shall be in proper statutory form necessary to effectuate the requisite transfer and must be reviewed by QI prior to closing, along with all ancillary (i) tax forms, (ii) affidavits or (iii) documents necessary to record a deed with the appropriate County Clerk.

## ARTICLE FIVE

(A)    QUALIFIED EXCHANGE ESCROW AGREEMENT

In order to secure QI's obligations to purchase **Acquired Property** and to transfer it to Owner, QI shall create an Exchange Escrow Account by depositing into a segregated account held by a New York State or Federally chartered bank or savings and loan ("Bank") an amount equal to the **Relinquished Property Equity** (hereinafter referred to as the "Exchange Escrow Account").

All funds received by Bank shall be deposited on behalf of Exchanger into a NYDEC escrow account until verification by Bank that all funds have cleared and are deemed "available funds." Said funds shall be transferred to the Exchange Escrow Account within two (2) business banking days of when said funds are deemed available, which funds shall be invested and reinvested as a segregated bank account under which NYDEC continues to serve as escrowee. The commencement date for accrual of interest on Exchanger's behalf, and for Exchanger's benefit, shall be within two (2) business banking days of the funding of said segregated Exchange Escrow Account. NYDEC and Exchanger, jointly and severally agree to indemnify and hold Bank harmless from any loss or liability, including attorney's fees and other expenses (1) resulting from or related to any tax consequences in connection with any relinquishment or exchange of



property or the requirements of joint signatures to disburse funds from the account and (2) arising from compliance with the agreement's terms or instructions given to Bank unless caused by the Bank's gross negligence or willful misconduct. Bank shall be under no obligation to determine whether or not any instructions given to Bank are contrary to any provision of law.

(B)  EARNEST MONEY CONTRACT DOWNPAYMENT FOR **ACQUIRED PROPERTY**

QI shall be entitled to withdraw funds from the Exchange Escrow Account in order to make contract down payment deposits on **Acquired Property** and to pay the balance of the purchase price due on the purchase of such **Acquired Property**. The amount of the Exchange Account shall be reduced by (i) the amount of any withdrawals made by the QI under this Article, and (ii) the QI's fees and other expenses for which the QI is entitled to be paid pursuant to this agreement. Payments from said account require a minimum of 3 business days written notice from Owner or Owner's attorney with regard to specific check or wire transfer requests.

Exchanger acknowledges that all Exchange Escrow Account check disbursements and wire transfers ("fund disbursements") are effectuated independently by Bank, which maintains the account. NYDEC has no control with respect to the facilitation of fund disbursements, other than communicating Exchanger's instructions. Accordingly, Exchanger hereby expressly releases NYDEC from and against any liability or responsibility for damages incurred for Bank's error or Bank's malfeasance which may occur with respect to fund disbursements. Exchanger's sole recourse, if any, shall be against the Bank. Exchanger further authorizes NYDEC to accept instructions for fund disbursements from Exchanger's attorney named herein.

(C)  ADDITIONAL RESTRICTIONS ON EXCHANGE ESCROW ACCOUNT

No amounts in the Exchange Escrow Account shall be paid, loaned, pledged or otherwise made available to Owner until (i) If Owner has not identified any **Acquired Property** on or before 45 days from the **Relinquished Property** Closing Date, after 45 days from the **Relinquished Property** Closing Date, or (ii) after Owner has received all of the identified **Acquired Property** to which Owner is entitled. In all other cases, the Exchange Escrow Account shall terminate on the day after the Exchange Period expires and NYDEC shall, in satisfaction of its remaining obligations under this Agreement, pay any remaining amount in the Exchange Account to Owner; provided, however, that in the event QI has executed one or more **Acquired Property Contracts** which have not been acquired by QI within the Exchange Period, and QI reasonably determines that it may be liable at law or in equity under such **Acquired Property Contracts**, the funds in the Exchange Escrow Account are not to be paid to Owner until such time as QI obtains a complete release of liability under such **Acquired Property Contracts** from the **Acquired Property Contract** sellers thereto, or the **Acquired Property Contracts** are and can be, to Owner thereby releasing QI from all liability.

(D)  INTEREST REPORTING

Owner and QI acknowledge and agree that interest income will be reported to the Internal Revenue Service and that such amount will be attributed to Owner for Federal income tax purposes.


New York Deferred Exchange Corporation • 6800 Jericho Turnpike Suite 120W • Syosset NY 11791 • (800) 656-9332

NAFTALI-00027

## ARTICLE SIX

(A)   Notwithstanding anything herein contained to the contrary, QI shall not be in default under this Exchange Agreement and shall not be liable for any damages, losses or expenses incurred by Owner, if: (i) QI fails to take any steps to locate or negotiate for **Acquired Property** or borrow or locate funds to acquire **Acquired Property**, or (ii) any **Acquired Property** fails to qualify as "like-kind" property, or (iii) the transaction otherwise fails, for any reason, to afford Owner the benefits of Section 1031 of the Internal Revenue Code.

(B)   Owner shall hold QI harmless from and indemnify QI against, any and all claims (and expenses relating thereto) made against QI at any time with respect to the **Relinquished Property** and the **Acquired Property** or any of the transactions contemplated by the Exchange Agreement. This indemnity shall survive the end of the Exchange Period and all Closings pursuant to this agreement.

(C)   Owner represents and warrants to QI that Owner is duly authorized to enter into this Agreement and to consummate the proposed transactions contemplated hereunder.

(D)   Notwithstanding anything contained herein to the contrary, QI shall have no obligation whatsoever to execute or otherwise endorse any note, bond, mortgage, deed of trust, or any other loan or credit document pursuant to which QI may be obligated to assume any recourse liability.

(E)   Notwithstanding anything contained herein to the contrary, QI shall have no obligation whatsoever to take the assignment of any **Acquired Property** purchase contract wherein:

   1.   QI's liability under said Contract is not limited to the down payment thereunder; or

   2.   QI's duty's, obligations, representations, or warranties are required to survive closing of title, except as to QI's representations as to corporate authority.

   3.   QI may be obligated to assume any obligations to a tenant pursuant to a lease.

(F)   QI makes no guarantee, promise or other representation with respect to the validity, viability or qualification of this transaction for IRC Section 1031. The Exchangor acknowledges that QI has not been a party to contract execution, actual closing or settlement, or any ministerial or logistical issues or matters related thereto. All of said matters related thereto, including pertinent dates, issuance of checks (except for checks issued by QI), have been made and will be made by Exchangor or his Counsel without verification or validation by QI. Accordingly, The Exchangor hereby expressly releases and relieves QI of any liability or responsibility as it relates to any tax matter.

(G)   The contract down payment made pursuant to the **Acquired Property Contract** shall be held by QI or any other third party acceptable to QI (with the necessary limitations contained in Reg. 1.1031(k)-1(g)(6)).


New York Deferred Exchange Corporation • 6800 Jericho Turnpike Suite 120W • Syosset NY 11791 • (800) 656-9332

8

## ARTICLE SEVEN

NOTICES:

Any notice, designation, consent, approval or other communication required or permitted to be given pursuant to the provisions of this Exchange Agreement shall be given in writing and shall be sent by certified/registered mail, Federal Express, overnight courier, or fax, addressed as follows:

If to Owner:
Jeffrey L. Wechsler                                    Telephone:   212-599-1900
Attorney At Law
60 East 42nd Street, Suite 1133
New York, New York 10165                               Fax:         212-599-0535

If to NYDEC:
New York Deferred Exchange Corporation                 Telephone:   516-364-2949
Attention: Fritz Trinklein
6800 Jericho Turnpike, *Suite 120W*
Syosset, New York  11791                               Fax:         516-364-5957

Either party may by Notice given in accordance with the provisions of this Article, designate any further or different address to which subsequent Notices shall be sent pursuant to the provisions of this Exchange Agreement. Any Notice shall be deemed to have been given on the date such Notice shall have been delivered. If such delivery shall be made on a Saturday, Sunday or holiday, said notice shall be deemed to have been given on the next succeeding business day, except for Identification of **Acquired Property** pursuant to ARTICLE TWO (B).

## ARTICLE EIGHT

(A)   SUCCESSORS AND ASSIGNS

This Exchange Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and except as otherwise herein provided, their assigns. It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged into this agreement, which alone fully and completely expresses their understanding. This agreement may not be changed or terminated orally, but only by an instrument in writing executed by the party to be charged. This agreement shall not be transferred or assigned without the prior written consent of the other party.

(B)   GOVERNING LAW

This Exchange Agreement shall be governed by and construed under the laws of the State of New York.


New York Deferred Exchange Corporation • 6800 Jericho Turnpike Suite 120W • Syosset NY 11791 • (800) 656-9332

9

(C) FIRPTA CERTIFICATION

Owner hereby certifies under penalties of perjury that Owner is not a "Foreign Person" as defined by Section 1445 of the Internal Revenue Code and the regulations promulgated there under, that Owner's United States taxpayer identification number is _____ and that Owner's address is 322 West 57th Street, Apartment 42U1, New York, New York 10019 and that Owner is not subject to backup withholding.

(D) QUALIFIED INTERMEDIARY FEE

As additional consideration for QI's acquisition and transfer of Acquired Property to Owner, QI shall receive a fee from Owner in the sum of $3,100.00, under the Comprehensive Service Exchange program. QI shall also receive reasonable compensation for any special services, which may be rendered by QI, with consent by Owner. Such fees, charges and other compensation shall be paid to the QI from the Exchange Escrow Account.

The Exchange Escrow Account, invested at Bank, are insured by the Federal Deposit Insurance Corporation up to the maximum amount prescribed by law. Owner's funds will be placed in a segregated account earning interest, which is taxable to Owner, from the Bank at a rate equal to 135 basis points (1.35%) less than the Federal Funds Rate (adjusted monthly), or at a rate of 15 basis points (.15%), whichever is greater.

The Bank will provide NYDEC with a financial benefit for placing Owner's funds at the Bank. This benefit will be paid by the Bank directly to NYDEC and will not be paid out of Owner's funds or Owner's interest earned on Owner's funds. Accordingly, this financial benefit will not be deducted from the interest income otherwise accruing for the benefit of the Owner.

Owner hereby acknowledges that NYDEC is receiving a financial benefit from the depository Bank in connection with the deposit of Owner's funds at the Bank, and Owner consents to the payment of any such financial benefit.

(E) COUNTERPARTS

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. In this agreement the singular includes the plural, and vice versa.

IN WITNESS WHEREOF, the parties hereto set their hand and seals as of the day and year first above written.

New York Deferred Exchange Corporation

By: _____
*President*

The Edtom Trust

By: _____
RON NAFTALI - MEMBER
Print name and title (if applicable)

By: _____
ORA NAFTALI - MEMBER
Print name and title (if applicable)



New York Deferred Exchange Corporation • 6800 Jericho Turnpike Suite 120W • Syosset NY 11791 • (800) 656-9332

NAFTALI-00030