# Exhibit N

```
                                                              Page 1
 1
 2    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 3    Case No. 15-cv-07152(JMA)(ARL)
      - - - - - - - - - - - - - - - - - - - - x
 4    ORA NAFTALI AND RONI NAFTALI, AS
      TRUSTEES OF THE EDTOM TRUST DATED
 5    APRIL 10, 2011,
 6                         Plaintiff,
 7          - against -
 8    NEW YORK DEFERRED EXCHANGE CORP.,
      FRITZ TRINKLEIN, and JEFFREY L.
 9    WECHSLER,
10                         Defendants.
      - - - - - - - - - - - - - - - - - - - - x
11    NEW YORK DEFERRED EXCHANGE CORP.,
12           Counterclaim Plaintiff,
13           - against -
14    ORA NAFTALI AND RONI NAFTALI, AS
      TRUSTEES OF THE EDTOM TRUST,
15
                           Defendants.
16    - - - - - - - - - - - - - - - - - - - - x
      NEW YORK DEFERRED EXCHANGE CORP.,
17
             Third-Party Plaintiff,
18
             - against -
19
      ORA NAFTALI AND RONI NAFTALI,
20
             Third-Party Defendants.
21    - - - - - - - - - - - - - - - - - - - - x
22
23
24
25
```

### Page 2

```
 1
 2  - - - - - - - - - - - - - - - - - x
    ORA NAFTALI AND RONI NAFTALI,
 3
            Third-Party
 4      Counterclaim Plaintiffs,
 5      - against -
 6  NEW YORK DEFERRED EXCHANGE CORP.,
 7          Third-Party
        Counterclaim Defendants.
 8  - - - - - - - - - - - - - - - - - x
    ORA NAFTALI AND RONI NAFTALI,
 9
            Third-Party
10      Cross-Claim Plaintiffs,
11      - against -
12  JEFFREY L. WECHSLER,
13          Third-Party
        Cross-Claim Defendants.
14  - - - - - - - - - - - - - - - - - x
    JEFFREY L. WECHSLER,
15
      Second Third-Party Plaintiff,
16
        - against -
17
    JOSEPH TAPLITZKY,
18
      Second Third-Party Defendant.
19  - - - - - - - - - - - - - - - - - x
20
21
              May 1, 2020
22            10:00 a.m.
23
24
25
```

### Page 3

```
 1
 2      DEPOSITION of DMITRIY GOYKHMAN, an Expert Witness for
 3  the Plaintiff/Third-Party Defendants herein, held remotely
 4  before Sara K. Killian, a Registered Professional
 5  Reporter, Certified Court Reporter and Notary Public of
 6  the State of New York.
```

### Page 4

```
 1
 2  A P P E A R A N C E S :
 3
 4
 5  KISHNER MILLER HIMES, P.C.
      Attorneys for Plaintiff/Third-Party Defendants
 6  420 Lexington Avenue, Suite 300
    New York, New York  10170
 7
      BY: JONATHAN COHEN, ESQ.
 8
 9
10
11
12  MILBER MAKRIS PLOUSADIS & SEIDEN, LLP
      Attorneys for Defendant
13      JEFFREY WECHSLER
      1000 Woodbury Road, Suite 402
14  Woodbury, New York  11797
15  BY: JOHN A. LENTINELLO, ESQ.
16
17
18
19
    HINSHAW & CULBERTSON, LLP
20  Attorneys for Defendant/Third-Party Plaintiff
      NEW YORK DEFERRED EXCHANGE CORP.
21  800 Third Avenue, 13th Floor
    New York, New York  10022
22
      BY: MATTHEW C. FERLAZZO, ESQ.
23     SUZANNE WALSH, ESQ.
24
25  (Appearances continued on following page)
```

### Page 5

```
 1
 2  A P P E A R A N C E S: (cont'd)
 3
 4
 5  ORLOFF LOWENBACH STIFLEMAN SIEGEL
      Attorneys for Second Third-Party Defendant
 6      JOSEPH TAPLITZKY
      44 Whippany Road, Suite 100
 7  Morristown, New Jersey  07960
 8  BY: XIAO SUN, ESQ.
```

Page 30

1          D. Goykhman
2  don't quote me on this -- I believe they used the
3  American Exchange -- they're, like, one of the
4  larger ones that's publically traded --
5  intermediaries, and we've also worked with a
6  client -- because they were foreign client, we had
7  them fund additional -- additional money into
8  their lawyer's account, so we have to be
9  calculating for what the property withholding
10 would be for them.  We had them fund that into a
11 separate US account, which was their lawyer's
12 escrow, to pay the withholding, so this way they
13 wouldn't break any part of their 1031 and we
14 wouldn't have any problem.
15         After the 1031 was fully completed,
16 we prepared the 1031 form -- I believe it's
17 8824 -- and that's it.
18    Q.    How many of the five to ten 1031s
19 where you're representing clients have involved
20 clients who were not residents of the United
21 States?
22         MR. COHEN:  Objection.
23    A.    I believe just that one.
24         MR. FERLAZZO:  I'm sorry?
25         MR. COHEN:  I was objecting to the

Page 31

1          D. Goykhman
2  form of the question.
3     Q.    I believe, Mr. Goykhman, you said
4  that it was only one of those five to ten involved
5  clients who were not residents of the United
6  States?
7     A.    Correct.  There was other -- there
8  was others that were done through blocker corps,
9  so you cannot call them foreign because they had
10 US blocker corporations that stopped them from
11 being foreign.
12    Q.    I'm sorry.
13         What was that term you used?
14    A.    Blocker corporations.
15    Q.    Now, are you familiar with the term
16 "qualified intermediary" in connection with the
17 1031?
18    A.    Yes.
19    Q.    What is a qualified intermediary as
20 you understand it in connection with a 1031?
21    A.    Qualified intermediary is an
22 entity -- I don't know if the term has to be an
23 entity; I've only seen it as entities -- that is
24 going to be -- that is holding the funds -- that
25 basically holds the funds and acts as an

Page 32

1          D. Goykhman
2  intermediary or a transaction.  In order for a
3  1031 to be valid, the funds can never touch the
4  seller's account, so they always have to go to a
5  third party.
6     Q.    That third party is a qualified
7  intermediary?
8     A.    Yes.
9     Q.    Have you ever acted as a qualified
10 intermediary in connection with in 1031?
11    A.    I have not.
12    Q.    Has your firm ever acted as a
13 qualified intermediary in connection with the
14 1031?
15    A.    They have not.
16    Q.    When you were at Ernst & Young, were
17 you ever involved in a transaction where
18 Ernst & Young acted as a qualified intermediary
19 for a 1031?
20    A.    I have not.
21    Q.    With the transactions where you
22 represented a client in connection with a 1031,
23 have you ever been involved in selecting the
24 qualified intermediary involved in that
25 transaction?

Page 33

1          D. Goykhman
2     A.    I have not.
3     Q.    Would you consider yourself --
4          MR. FERLAZZO:  I don't know if I lost
5  John Lentinello for a second.
6          John, are you still there?
7          MR. LENTINELLO:  I'm there.  I just
8  went off video for a second.
9          MR. FERLAZZO:  That's fine.  I didn't
10 want to continue if you weren't around.
11         MR. LENTINELLO:  Thank you, Matt.
12         MR. FERLAZZO:  I also didn't want to
13 lose counsel for the expert witness, so I'm
14 looking at the names on the boxes.
15         MR. COHEN:  I'm here.
16         MR. FERLAZZO:  Good.
17    Q.    Would you consider yourself an expert
18 on how qualified intermediaries conduct their
19 business?
20         MR. COHEN:  Object to form.
21         MR. FERLAZZO:  You can answer.
22         Sometimes counsel may object, but
23 unless he directs you otherwise, you can go
24 ahead and answer.
25         MR. COHEN:  You can answer, Dmitriy.

Page 34

D. Goykhman

2  A.  I can tell you what the tax
3  requirements are, what the IRS requirements are.
4  I cannot tell you what their business practices
5  are.  I cannot tell you how and in which form they
6  take the funds.  Those would be business
7  operations.  We don't have any clients that are in
8  that industry, so I've never seen the inside of
9  it.  I can talk you through what I believe the IRS
10 would require for them to be able to start their
11 process.  Once their process starts, that's not
12 something that I am privy to.
13  Q.  Okay.
14      What are the IRS requirements that
15 you understand have to be met for a qualified
16 intermediary to start the process?
17  A.  There has to be a closing.  The
18 client has to -- again, this is how I've seen it.
19 Usually, a few days or a week prior to the
20 closing, the intermediary is selected.  The
21 intermediary fills out all of the required
22 internal paperwork that they need to verify that
23 they can actually do a 1031, that this would meet
24 a 1031 exchange.
25      At that point, they work with -- from

Page 35

D. Goykhman

2  my experience -- with either the title company or
3  whoever is holding the funds to transfer the funds
4  directly to them.  So that's basically it.  At
5  that point, they have to meet certain
6  requirements, whether they make sure they have to
7  notice on 45 days, things like that.
8  Q.  You were talking about generally
9  things happening a few days to a week before a
10 closing.
11      Is that right?
12 A.  Correct.  I've never seen it any
13 earlier, any closer to the due date.  I feel it
14 doesn't give enough time to get the proper
15 paperwork together.
16 Q.  You've never seen one half, for
17 example, on the day of the closing?
18 A.  When a -- other than this case, I
19 haven't seen anybody where on the day of closing,
20 they said "Let's call a 1031 company and try to do
21 a 1031."
22 Q.  So in the cases you've been involved
23 with, your clients have considered using a 1031
24 transaction prior to the closing?
25 A.  Well, typically, a 1031 transaction

Page 36

D. Goykhman

2  requires planning.  Or at least in order to do a
3  successful 1031 transaction.
4  Q.  Have you ever heard -- other than in
5  this case -- of instances where 1031s have
6  happened on the day of the closing?
7      MR. COHEN:  Object to form.
8      You can answer.
9  A.  Successful ones?  No.
10 Q.  But you have heard of unsuccessful
11 1031 transactions where the 1031 first came up on
12 the day of the closing?
13 A.  I have read of cases of -- of cases
14 where IRS had argued about 1031s that weren't
15 successful and from what I recall -- again, this
16 isn't something I read recently -- there were
17 cases that had outcomes that weren't favorable to
18 the taxpayer.
19 Q.  Do you remember the names of any of
20 those cases?
21 A.  No.  I'm sure ACP Journal -- the New
22 York State Society CPA Journal, that's probably
23 one of the ones where I read it.  I've been
24 subscribing to it for ten years, 15 years, so ...
25 Q.  Other than what's required by the

Page 37

D. Goykhman

2  IRS, do you have an opinion as to what duties a
3  qualified intermediary has in connection with the
4  1031 transaction?
5  A.  Internal duties or whatever the IRS
6  requires?
7  Q.  Outside of what the IRS requires, do
8  you have an opinion as to what a qualified
9  intermediary's duties are?
10     MR. COHEN:  Object to form.
11     You can answer.
12 A.  Again, it's business practice.  If
13 it's not tax or tax law, it would be a best guess.
14 It wouldn't be anything that I could be
15 comfortable saying yes, this is how I think.
16 Q.  I understand.
17     Now, we're here in this lawsuit about
18 a 1031 transaction or an attempt to do a 1031
19 transaction, right?
20 A.  Yes.
21 Q.  How did you -- strike that.
22     You are now familiar with the
23 Naftalis, correct?
24 A.  Yes.  I met them.
25 Q.  How did you first come to know them?

10 (Pages 34 - 37)