**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ORA NAFTALI AND RONI NAFTALI,
AS TRUSTEES OF THE EDTOM TRUST,

      Plaintiff ,

        - v –


NEW YORK DEFERRED EXCHANGE
CORP., AND JEFFREY WECHSLER

      Defendants.

---

And related Counterclaims and Third-Party Actions

Civil Action No. 15-cv-7152 (JMA)(JMW)


### DEFENDANT NEW YORK DEFERRED EXCHANGE CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT



800 Third Ave., 13th Floor
New York, NY 10022
212-471-6200

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.      PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS BECAUSE
        THEY HAVE NOT PERFORMED THEIR OBLIGATIONS ......................................... 2

II.     PLAINTIFFS' NEGLIGENCE CLAIM FAILS BECAUSE NYDEC OWED
        THEM NO DUTY ......................................................................................................... 5

III.    PLAINTIFFS' DUPLICATIVE CONVERSION CLAIM FAILS .................................... 8

CONCLUSION........................................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arp Films. Inc. v. Marvel Entertainment Group, Inc.*,
   952 F.2d 643 (2d Cir. 1991) .................................................................................4

*Bradley v. Roe*,
   282 N.Y. 525 (1940) .............................................................................................9

*Chase Sci. Research v. NIA Group*,
   96 N.Y.2d 20, 725 N.Y.S.2d 592 (2001) ............................................................7

*Cole v. Macklowe*,
   99 A.D.3d 595, 953 N.Y.S.2d 21 (1st Dep't 2012) ............................................3

*Command Cinema Corp. v. VCA Labs, Inc.*,
   464 F. Supp. 2d 191 (S.D.N.Y. 2006).................................................................8

*Kreisers, Inc. v. First Dakota Title Limited Partnership*,
   2014 S.D. 56 (2014) .............................................................................................6

*Sinzheimer v. Bank of Am., N.A.*,
   161 A.D.3d 414, 76 N.Y.S.3d 29 (1st Dep't 2018) .............................................9

*Vassenelli v. City of Syracuse*,
   138 A.D.3d 1471, 31 N.Y.S.2d 320 (4th Dep't 2016) .....................................5, 6

*Verizon N.Y., Inc. v. Optical Communications Group, Inc.*,
   91 A.D.3d 176, 936 N.Y.S.2d 86 (1st Dep't 2011) .............................................6

*Zelik v. 261 Lofts Mgr. LLC*,
   2020 NY Slip Op. 33435(U), 2020 N.Y. Misc. LEXIS 9860
   (Sup. Ct. Kings County Oct. 15, 2020)..............................................................8, 9

**Statutes**

Internal Revenue Code § 1445(a) .................................................................................1

Internal Revenue Code § 1031................................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 56(c) ..........................................................................1

## PRELIMINARY STATEMENT

Defendant NYDEC respectfully submits this reply memorandum of law in further support of its motion for summary judgment dismissing Plaintiffs' claims against it with prejudice pursuant to Federal Rule of Civil Procedure 56(c).

This action arises from Plaintiffs lie in connection with the sale of an apartment they owned in Manhattan. Plaintiffs, citizens of Israel, signed an agreement with NYDEC swearing that they were not foreign persons. Plaintiffs also told NYDEC that they had, and would provide NYDEC with, a tax identification number ("TIN", also known as an "Employer Identification Number" or "EIN"). Those statements were lies. Plaintiffs lied in an effort to avoid FIRPTA withholding tax and induce NYDEC to act as the QI to hold the proceeds of the sale (the "Proceeds") as part of a Section 1031 exchange.[1]

NYDEC established in its moving papers that is entitled to summary judgment on: (1) Plaintiffs' breach of contract claim because the undisputed material facts establish that Plaintiffs failed to perform their obligations under the Exchange Agreement; (2) Plaintiffs' negligence claim because NYDEC owed no duty to Plaintiffs; and (3) Plaintiffs' conversion claim because it

---

[1] "FIRPTA" refers to the Foreign Investment in Real Property Tax Act of 1980 (Internal Revenue Code § 1445(a)), which requires that when a "foreign person" disposes of US real property, the "transferee" (usually the buyer) deduct and withhold a tax equal to ten (10) percent of the gross proceeds of the sale. The "foreign person" can then claim the withheld tax as a credit on their income tax return.

"Section 1031 exchange" refers to a like-kind property exchange in accordance with Internal Revenue Code Section 1031, which provides a procedure that may allow the seller of real property to postpone paying tax on the gain realized in the sale of real property. Among the requirements of a Section 1031 exchange are that within 45 days of the sale, the seller identify potential like-kind property to purchase (the "Replacement Property"), and that the seller purchase the Replacement Property within 180 days of the sale. To facilitate the Section 1031 exchange, a qualified intermediary ("QI") may be used to hold the proceeds of the sale during the six-month exchange period. Using a QI ensures that the proceeds are never in the possession of the seller, which is a requirement of a Section 1031 exchange.

improperly duplicates the breach of contract claim, and in any event, NYDEC lawfully obtained the Proceeds and has not asserted dominion over them.

In response, Plaintiffs opposition makes baseless attacks on NYDEC, raises meritless arguments, cites inapplicable case law, and incorrectly describes the evidence. In short, Plaintiffs opposition is "full of sound and fury, Signifying nothing" because it fails to raise a triable issue of fact on any of their claims. Accordingly, the Court should grant NYDEC summary judgment dismissing Plaintiffs' claims.

## ARGUMENT

### I.    PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS BECAUSE THEY HAVE NOT PERFORMED THEIR OBLIGATIONS

In its moving papers, NYDEC established that Plaintiffs breach of contract claim failed because the indisputable facts establish that Plaintiffs did not perform their obligations under the Exchange Agreement. Specifically, Plaintiffs have never paid NYDEC the agreed upon fee for NYDEC acting as the QI, and at the time of the alleged breaches Plaintiffs had not provided a TIN to NYDEC as required by the Exchange Agreement. *See* NYDEC's Moving Br. at p. 10. Plaintiffs' arguments in opposition are meritless.

Plaintiffs argue that NYDEC was not entitled to a fee for acting as the QI because they never completed the Section 1031 exchange is based on an unreasonable reading of the Exchange Agreement. *See* Plaintiffs' Br. at p. 13. The Exchange Agreement provides that "[a]s additional consideration for QI's acquisition and transfer of Acquired property to Owner, QI shall receive a fee from Owner in the sum of $3,100.00 . . . ." Exchange Agreement, Art. 8(D), at p. 9 (Ferlazzo Decl. Ex. B).[2] Plaintiffs assert that pursuant to the foregoing provision, NYDEC is only entitled to

---

[2] "Ferlazzo Decl. Ex." refers to the documents annexed to the Declaration of Matthew C. Ferlazzo, dated February 19, 2021, submitted in support of NYDEC's motion for summary judgment.

a fee if an exchange is completed. *See* Plaintiffs' Br. at p. 13. The provision references the completion of the exchange in an introductory clause, which is understandable because at the time the parties enter into the agreement, they contemplate the completion of the exchange. But the introductory clause does not condition the payment of the fee on the completion of the exchange. Further, interpreting the introductory clause as creating a condition to payment of the fee would lead to the commercially unreasonable result where NYDEC would not be paid a fee for acting as QI if the seller, like Plaintiffs, never complete the exchange. The Court should reject Plaintiffs' commercially unreasonable interpretation of the agreement. *See Cole v. Macklowe*, 99 A.D.3d 595, 595, 953 N.Y.S.2d 21, 23 (1st Dep't 2012) (rejecting a parties interpretation of a contract that would produce a "commercially unreasonable" result).

Plaintiffs also assert that NYDEC has never insisted on payment of the fee (*see* Plaintiffs' Br. at p. 13), but that is irrelevant because the Exchange Agreement does not condition Plaintiffs obligation to pay on a demand by NYDEC. Plaintiffs also assert that their attorney, Jeffrey Wechsler, authorized NYDEC to take the fee from the Proceeds in November 2014 when Plaintiffs claim they decided they did not want to complete the exchange. *See* Plaintiffs' Br. at p. 16 n.11. Plaintiffs direction, through Mr. Wechsler, shows that NYDEC was entitled to the fee even if the exchange was not completed. In any event, Plaintiffs subsequently decided to move forward with the exchange, nullifying their earlier direction that NYDEC withdraw the fee from the Proceeds. *See* Dec. 2014 email exchanges between NYDEC and Mr. Wechsler (Ferlazzo Decl. Ex. D).

As for their obligation to provide a TIN, Plaintiffs' advance the meritless arguments that they the Exchange Agreement did not require them to do so, and even if it did, NYDEC waived that requirement. *See* Plaintiffs' Br. at pp. 13-14. The Exchange Agreement clearly required

Plaintiffs to provide a TIN – there was a blank space in the agreement for Plaintiffs to provide the number:

> under penalties of perjury that Owner is not a "Foreign Person" as defined by Section 1445 of the Internal Revenue Code and the regulations promulgate there under, that Owner's United State taxpayer identification number is _____ and that Owner's address if 322 West 57th Street, Apartment 42U1, New York, NY 10019 and that Owner is not subject to a backup withholding.

Exchange Agreement, Art. 8(C), at p. 9 (Ferlazzo Decl. Ex. B).[3] Nor did NYDEC waive the requirement that Plaintiffs provide a TIN. Plaintiffs' waiver argument is based on the assertion that NYDEC knew that they did not have a TIN (*see* Plaintiffs' Br. at p. 14), but the testimony of NYDEC's President that Plaintiffs cite does not support their contention. NYDEC's President testified that upon his receipt of the fully executed Exchange Agreement, he understood that Plaintiffs "were looking for" the TIN. *See* F. Trinklein Dep. Tr. at 232:2-18 (Cohen Decl. Ex. J).[4] In fact, NYDEC inquired why a TIN was not listed in the agreement, and was told that one would be provided. *See* F. Trinklein Dep. Tr. at 85:7-23 (Ferlazzo Decl. Ex. J).

In a last ditch effort to avoid dismissal of their breach of contract claim, Plaintiffs argue that their breaches are not material because they did not go to the "root" of the Exchange Agreement. *See* Plaintiffs' Br. at p. 15. Contrary to Plaintiffs' argument, their failure to pay the fee for the services provided is a clear material breach of the Exchange Agreement. *See Arp Films. Inc. v. Marvel Entertainment Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991) ("failure to tender payment is generally deemed a material breach of a contract"). Similarly, the failure to provide a

---

[3] Plaintiffs disingenuously assert that the quoted language is "tucked" into the Exchange Agreement. Plaintiffs' Br. at p. 3. The language however, is a few inches above Plaintiffs' signatures on the agreement. *See* Exchange Agreement at p. 9 (Ferlazzo Decl. Ex. B).

[4] "Cohen Decl. Ex." refers to the documents annexed to the Declaration of Jonathan Cohen, dated May 11, 2021, submitted by Plaintiffs in opposition to NYDEC's motion.

4

TIN is a material breach because had NYDEC known Plaintiffs did not have a TIN, it would not have entered into the Exchange Agreement. As the testimony of NYDEC's President cited by Plaintiffs confirms, NYDEC would not have agreed to act as a QI for an exchange involving a foreign person who did not have a TIN. *See* F. Trinklein Dep. Tr. at 33:6-14 (Cohen Decl. Ex. J) (testifying that NYDEC might consider acting as a QI for an exchange with a foreign person if that foreign person had a TIN).

## II.   PLAINTIFFS' NEGLIGENCE CLAIM FAILS BECAUSE NYDEC OWED THEM NO DUTY

NYDEC established in its moving papers that it is entitled to summary judgment on Plaintiffs' negligence claim because they have failed to demonstrate that NYDEC owed them a legal duty independent of its obligations under the Exchange Agreement. *See* NYDEC's Moving Br. at pp. 11-14. Plaintiffs' arguments in opposition do not create an issue of fact on this issue.

Plaintiffs argue that NYDEC owed them a duty to file with the IRS a FIRPTA withholding tax form with certain information, and that NYDEC violated that duty by filing a form with incorrect information. *See* Plaintiffs' Br. at pp. 16-19. Plaintiffs spill pages of ink on this issue, but miss the critical point, which is that there is no federal or New York statutory or case law holding that a QI owes a duty to the foreign person with respect to what is included in the FIRPTA withholding tax form. Instead, Plaintiffs cite case law concerning whether accountants can be liable for alleged negligence in preparing tax forms. *See* Plaintiffs' Br. at p. 18. Those cases are inapposite because NYDEC is not an accountant.

Plaintiffs also cite *Vassenelli v. City of Syracuse*, 138 A.D.3d 1471, 1474, 31 N.Y.S.2d 320, 324 (4th Dep't 2016) for the proposition that by filing the FIRPTA withholding tax form, NYDEC voluntarily undertook a duty to file the form and can be held liable for negligently completing that duty. In *Vassenelli*, however, the duties at issue arose out of contractual

relationships, and the plaintiff sought to recover for personal injuries. *See id.* But, as explained in NYDEC's moving brief, no independent duty can arise out of a contractual relationship when the plaintiff asserts only economic harm. *See Verizon N.Y., Inc. v. Optical Communications Group, Inc.*, 91 A.D.3d 176, 181, 936 N.Y.S.2d 86, 90 (1st Dep't 2011). Unlike *Vassenelli*, in this case, the contractual relationship between NYDEC and Plaintiffs does not give rise to tort liability because Plaintiffs seek to recover only for economic harm. *See* Joint Pretrial Statement at pp. 25-26 (describing Plaintiffs damages as the amount of the remaining Proceeds held in escrow, prejudgment interest, the loss of use of the Proceeds and accounting fees) (D.E. 74).

Plaintiffs also argue that prior to executing the Exchange Agreement, NYDEC owed them a duty to determine if they could proceed with a  Section 1031 exchange. *See* Plaintiffs' Br. at p. 20.[5] In support of its argument, Plaintiffs equate NYDEC to a "professional," under New York law. *See id.* Plaintiffs, however, cite no New York or federal case law holding that a QI is a "professional" that owes pre-contractual duties to a party that wants to engage in a Section 1031 exchange.[6] In fact, New York courts have been reluctant to extend the meaning of the word "professional" beyond its traditional application to people such as doctors, lawyers, accountants, architects and engineers. *See Chase Sci. Research v. NIA Group*, 96 N.Y.2d 20, 28-30, 725 N.Y.S.2d 592, 596-98 (2001) (holding that insurance agents and brokers were not "professionals"

---

[5] Plaintiffs focus on NYDEC's alleged pre-contractual liability because in the Exchange Agreement they agreed that NYDEC "makes no guarantee, promise or other representation with respect to the validity, viability or qualification of this transaction for IRC Section 1031." Exchange Agreement, Art. 6(F), at p. 7 (Ferlazzo Decl. Ex. B).

[6] Plaintiffs cite a case in which the South Dakota Supreme Court held that a QI could be liable for negligence. *See Kreisers, Inc. v. First Dakota Title Limited Partnership*, 2014 S.D. 56 (2014). In reaching its decision in *Kreisers*, however, the court relied in part on expert testimony concerning the duties allegedly owed and breached by the QI. *See id.* at P27. Here, Plaintiffs have not offered any expert testimony on the alleged duties owed and breached by NYDEC. *See* NYDEC's Moving Br. at p. 11. Thus, *Kreisers* does not apply here.

for purposes of the application of the statute of limitations). As the New York Court of Appeals has noted, a "professional" generally means someone who has "extensive formal learning and training, licensure and regulation indicating a qualification to practice, a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards", as well as "a professional relationship is one of trust and confidence, carrying with it a duty to counsel and advise clients." *Id.* at 29, 725 N.Y.S.2d at 598. Plaintiffs have not shown that a QI meets any of those requirements. Thus, Plaintiffs miss the mark when they argue that NYDEC owes them a duty as a "professional."

Plaintiffs also advance the factually incorrect assertion that they have a viable negligence claim because NYDEC agreed to act as the QI when it knew that a Section 1031 exchange could not take place. *See* Plaintiffs' Br. at p. 20. The basis for the Plaintiffs assertions is that NYDEC knew that at the closing of the sale of their property, Plaintiffs had received the checks for the Proceeds from the buyer. *See id.* NYDEC's President testified that he was not told that Plaintiffs had received checks payable for the Proceeds. *See* F. Trinklein Dep. Tr. at 72:15-22 (Ferlazzo Decl. Ex. J). To create an alleged dispute concerning this fact, Plaintiffs' cite the testimony of Mr. Wechsler that he told NYDEC "everything" and that he spoke to NYDEC's President to confirm that Plaintiffs could move forward with a Section 1031 exchange. *See* Plaintiff's Br. at p. 21. In the testimony cited by Plaintiffs however, Mr. Wechsler never specifically states that he told NYDEC that Plaintiffs received possession of the checks at the closing. In fact, Mr. Wechsler testified that when he spoke to NYDEC on the day of the closing, he told NYDEC that checks had been issued payable to Plaintiffs, but at the time he spoke to NYDEC the checks had not been handed to Plaintiffs. *See* J. Wechsler Dep. Tr. at 270:10-20 (Ferlazzo Decl. Ex. L). Thus,

NYDEC's President's testimony stands unrebutted, and the undisputed evidence establishes that NYDEC did not know that Plaintiffs could not move forward with a Section 1031 exchange.

### III.   PLAINTIFFS' DUPLICATIVE CONVERSION CLAIM FAILS

In its moving papers, NYDEC established that Plaintiffs' conversion claim fails because it impermissibly duplicates the breach of contract claim and NYDEC lawfully obtained possession of the Proceeds and does not exercise dominion over them. *See* NYDEC's Moving Br. at pp. 14-16. Like their arguments on their other claims, Plaintiffs' arguments in opposition concerning the conversion claim are meritless and do not create an issue of fact.

In their opposition, Plaintiffs confirm that their breach of contract and conversion claims are the same. Plaintiffs describe their breach of contract claim as based on "NYDEC's wrongful withholding of Plaintiffs' Proceeds." Plaintiffs' Br. at p. 12. Plaintiffs describe their conversion claim as based on "NYDEC's conduct in withholding Plaintiffs' money." *See id.* at p. 24. Thus, Plaintiffs' own words establish that their conversion claim is not distinct from their breach of contract claim. *See Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) (dismissing conversion claim that was based on the same wrong – failure to return property – as the breach of contract claim). In an effort to avoid dismissal of the duplicative claim, Plaintiffs primarily rely on *Zelik v. 261 Lofts Mgr. LLC*, 2020 NY Slip Op. 33435(U), 2020 N.Y. Misc. LEXIS 9860 (Sup. Ct. Kings County Oct. 15, 2020). In *Zelik*, the plaintiff was allowed to maintain breach of contract and conversion claims against an escrow agent for a loan transaction because the claims were based on separate duties owed to plaintiff, a "contractual duty and duty of loyalty as fiduciary." *See id.* at *13, 2020 N.Y. Misc. LEXIS 9860 at *15-16. Plaintiffs, however, have cited no case law establishing that NYDEC, as a QI, owed Plaintiffs a fiduciary duty in addition to its contractual obligations. Thus, *Zelik* does not apply here.

Contrary to Plaintiffs argument, their conversion claim also fails because NYDEC has remitted the Proceeds to an agent of the Court for an adjudication of ownership. In January 2016, NYDEC and Plaintiffs agreed that the remaining portion of the Proceeds would be held in escrow by Plaintiffs' counsel subject to either further agreement of the parties or this Court's order. *See* Jan. 6, 2016 Agreement at p. 1 (Ferlazzo Decl. Ex. H). The fact that that Plaintiffs can seek the Court's determination as to the ownership of the Proceeds means that NYDEC does not assert dominion over the Proceeds, and thus, has not converted the Proceeds. *See Bradley v. Roe*, 282 N.Y. 525, 531-32 (1940) (a person who deposits property with a custodian designated by a court and subject to court order does not commit conversion because, in that circumstance, there is "not an assertion of dominion over the property.") That Plaintiff has not yet convinced the Court that they have a right to possession of the Proceeds does not mean that NYDEC has committed conversion. *See Sinzheimer v. Bank of Am., N.A.*, 161 A.D.3d 414, 415, 76 N.Y.S.3d 29, 30-31 (1st Dep't 2018) (plaintiff failed to state a claim for conversion when defendant refused to surrender funds to plaintiff until plaintiff "proved his right to them").

Finally, Plaintiffs assert that they can maintain a conversion claim because NYDEC has acted in bad faith. *See* Plaintiffs' Br. at pp. 23-24. NYDEC submits that it is not bad faith to insist that Plaintiffs establish their right to the Proceeds by complying with their tax obligations and providing a TIN. *See Sinzheimer*, 161 A.D.3d at 415, 76 N.Y.S.3d at 30-31. NYDEC also submits that it is not bad faith to request that a portion of the Proceeds be held in escrow to protect NYDEC against its potential liability to the IRS, liability created by Plaintiffs' wrongdoing.

## **CONCLUSION**

For the reasons set forth in its moving papers and above, NYDEC respectfully requests that the Court issue an Order granting it summary judgment dismissing Plaintiffs' claims against it with prejudice, and such other, further and different relief as this Court deems just and proper.

Dated: July 1, 2021
New York, NY

**HINSHAW & CULBERTSON LLP**
*Attorneys for Defendant and Counterclaim Plaintiff/ Third-Party Plaintiff/Third-Party Counterclaim Defendant New York Deferred Exchange Corp.*

By: _____
        Matthew C. Ferlazzo

800 Third Avenue, 13th Floor
New York, NY 10022
Tel: 212-471-6200
Email: mferlazzo@hinshawlaw.com

10