**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ORA NAFTALI AND RONI NAFTALI,
AS TRUSTEES OF THE EDTOM TRUST,

    Plaintiff ,

       - v –

NEW YORK DEFERRED EXCHANGE
CORP., AND JEFFREY WECHSLER,

    Defendants.

And related Counterclaims and Third-Party Actions

Civil Action No. 15-cv-7152 (JMA)(JMW)

## NYDEC'S OBJECTIONS TO THE REPORT AND RECOMMENDATION
## ON ITS MOTION FOR SUMMARY JUDGMENT



800 Third Ave., 13th Floor
New York, NY 10022
212-471-6200

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

    A. Plaintiffs Failed to Comply with Their Tax Obligations ……………………………3

    B. Plaintiffs Lied When They Entered Into the Exchange Agreement ………………4

    C. Plaintiffs' Lie Was Exposed …………………………………………………………6

    D. NYDEC Paid the Withholding Tax to the IRS ………………………………………7

    E. NYDEC Agreed to Release the Vast Majority of the Proceeds to Plaintiffs ………..7

    F. NYDEC's Motion for Summary Judgment ………………………………………..9

STANDARD OF REVIEW…………………………………………………………………11

ARGUMENT ..................................................................................................................11

  I.  PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS BECAUSE THEY FAILED TO PERFORM THEIR OBLIGATIONS UNDER THE EXCHANGE AGREEMENT ..................................................................................................11

  II.  PLAINTIFFS' NEGLIGENCE CLAIM FAILS BECAUSE NYDEC OWED THEM NO DUTY CONCERNING THE FORM 8288 .................................................15

CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
   17 N.Y.3d 565 (2011) ................................................................................15

*GTF Marketing, Inc. v. Colonial Aluminum Sales, Inc.*,
   66 N.Y.2d 965 (1985) ................................................................................11

*Johnson v. Nextel Communs., Inc.*,
   660 F.3d 131 (2d Cir. 2011) .......................................................................11

*Limited, Inc. v. McCrory Corp.*,
   169 A.D.2d 605 (1st Dep't 1991) ...............................................................18

*Progress Am., Inc. v. Cynergy Holdings, LLC*,
   839 F.3d 125 (2d Cir. 2016) .......................................................................11

*Pulka v. Edelman*,
   40 N.Y.2d 781 (1976) ................................................................................15

*Valdez v. City of New York*,
   18 N.Y.3d 69 (2011) ..................................................................................15

**Statutes**

26 U.S.C. § 1445(a) ...........................................................................1, 16, 17

26 U.S.C. § 1445(d) ................................................................................1, 17

26 U.S.C. § 1031(a)(1)...................................................................................2

26 U.S.C. § 1031(a)(3)...................................................................................2

**Other Authorities**

26 C.F.R. § 1.1445-1(c)(1)......................................................................16, 17

26 C.F.R. § 1.1445-2(b)(2) ...........................................................................12

26 C.F.R. § 1.1031(k)-1(f)...............................................................................2

26 C.F.R. § 1.1031(k)-1(g)(1)............................................................................2

26 C.F.R. § 1.1031(k)-1(g)(4)............................................................................2

Fed. R. Civ. P. 72(b)(3)...................................................................................10

## PRELIMINARY STATEMENT

Defendant NYDEC respectfully submits this objection to those portions of the Magistrate Judge's report that recommend denying, in part, NYDEC's motion for summary judgment on the claims asserted by Plaintiffs, Edtom Trust and its trustees Ora and Roni Naftali.

This action arises from Plaintiffs failure to comply with their federal tax obligations and their lies to NYDEC. Plaintiffs, who are "foreign persons" under US tax law, owned an apartment in New York for investment purposes. For several years, Plaintiffs rented the apartment to a tenant, but in violation of US tax law, Plaintiffs never obtained a tax identification number (a "TIN, also called an Employer Identification Number, or "EIN") and never filed US income tax returns. In 2014, Plaintiffs sold the apartment.

At the closing table, Plaintiffs came to understand that they may be able to circumvent an otherwise mandatory federal FIRPTA withholding tax, and avoid or minimize federal capital gains tax, by purporting to sell the property through a Section 1031.[1] Plaintiffs decided to move forward

---

[1] "FIRPTA" refers to the Foreign Investment in Real Property Tax Act of 1980, which requires that when a "foreign person" disposes of US real property, ten percent of the gross proceeds of the sale be withheld and deducted from the proceeds. *See* 26 U.S.C. § 1445(a) (2008), *amended by* 26 U.S.C. § 1445(a) (2017) (increasing withholding tax requirement from ten to fifteen percent). The "foreign person" can then claim the withheld tax as a credit on their income tax return. Usually, the buyer withholds the FIRPTA tax, but in certain circumstances a third-party can become responsible for the withholding. *See* 26 U.S.C. § 1445(d).

"Section 1031 exchange" refers to a like-kind property exchange procedure that may allow the seller of real property to postpone paying tax on the gain realized in the sale of real property. As pertinent to this action, a Section 1031 exchange usually occurs in three steps. First, the seller/exchanger sells real property, with the net proceeds of the sale payable to a qualified intermediary ("QI") who deposits the net proceeds in a segregated bank account using the seller/exchanger's TIN. Using a QI ensures that the proceeds are never in the possession of the seller, which is a requirement of a Section 1031 exchange. Second, within 45-days of the sale, the seller identifies potential like-kind property to purchase. Third, the seller purchases the Replacement Property within 180 days of the sale of the initial property. If the seller/exchanger does not identify a Replacement Property within the 45-day period, or does not complete the purchase of the Replacement Property within the 180-day period, and the seller/exchanger has complied with their obligations under their agreement with the QI, then QI releases the proceeds

with the Section 1031 exchange, and on the day of the closing requested that NYDEC act as the QI for the exchange. In doing so, Plaintiffs signed an Exchange Agreement with NYDEC in which they represented, under penalty of perjury, that the trust was not a "foreign person" and had a TIN that they would provide to NYDEC. Plaintiffs, however, were "foreign persons" and did not have a TIN.

Relying on Plaintiffs' representations, NYDEC agreed to act as the QI, and accepted possession of the proceeds of the sale (the "Proceeds") until Plaintiffs completed the Section 1031 exchange. Eventually, Plaintiffs' lies were exposed and NYDEC learned that it was potentially liable to the IRS, in its inadvertent role as a FIRTPA tax withholding agent, for penalties and interest because of Plaintiffs' actions. Thus, when the time for Plaintiffs to complete the Section 1031 exchange expired, NYDEC filed a Form 8288 with the IRS and paid the FIRPTA withholding tax from the Proceeds. NYDEC also subsequently agreed to return the lion share of the remaining Proceeds to Plaintiffs while at the same time ensuring that a portion remained in escrow to protect NYDEC from the tax-penalty risks to which Plaintiffs had exposed it.

Plaintiffs went on the attack and in a brazen effort to shift the consequences of their wrongdoing to NYDEC, they asserted claims against NYDEC in this action. Three of Plaintiffs' claims against NYDEC remain in this action: (1) breach of the Exchange Agreement for the alleged failure to return the Proceeds to Plaintiffs; (2) negligence in filing the Form 8288 and agreeing to act as QI for a Section 1031 exchange that allegedly failed at the outset because the Proceeds were initially payable to Plaintiffs; and (3) conversion based on the alleged failure to return the Proceeds to Plaintiffs.

---

to the seller/exchanger. *See* Report & Recommendation at pp. 2-3 (D.E. 88); 26 U.S.C. § 1031(a)(1)&(3); 26 C.F.R. § 1.1031(k)-1(f), (g)(1)&(g)(4).

NYDEC sought summary judgment on Plaintiff's remaining claims against it. The Magistrate Judge recommended that the Court grant NYDEC summary judgment on Plaintiffs' negligence claim for failing to determine if the sale had been structured to comply with Section 1031, and Plaintiffs' conversion claim. The Magistrate Judge also recommended that the Court deny NYDEC summary judgment on Plaintiff's breach of contract claim and negligence claim concerning the filing of the Form 8288.

NYDEC respectfully submits that it is entitled to summary judgment on all of Plaintiffs' claims. Plaintiffs cannot not maintain a breach of contract claim in light of their failure to perform their obligations under the Exchange Agreement, including failing to provide NYDEC with a TIN. Further, Plaintiffs' negligence claim fails because NYDEC owed no duty to Plaintiffs concerning filing the Form 8288. Accordingly, NYDEC requests that the Court reject the recommendations to deny portions of its motion, adopt the recommendations to grant portions of its motion, and grant NYDEC summary judgment dismissing all of Plaintiffs' claims against it with prejudice.

## STATEMENT OF FACTS

### A. Plaintiffs Failed to Comply with Their Tax Obligations

In 2011, the Naftalis created the Edtom Trust to purchase the condominium at 322 West 57th Street, Unit 42U1, New York, New York (the "Apartment"). *See* Joint Pretrial Statement at pp. 20-21, ¶¶ 4, 14 (D.E. 74). Plaintiffs utilized the Apartment strictly for investment purposes, renting it and receiving income on it for the next three years, but never filed income tax returns for the rental income and never obtained a TIN. *See id.* at p. 21, ¶ 29; *see also* O. Naftali Dep. Tr. at 41:19- 42:17 & 54:7-55:25 (D.E. 84-12).

In 2014, Plaintiffs decided to sell the Apartment. *See* Joint Pretrial Statement at p. 21, ¶ 15 (D.E. 74). On October 10, 2014, Plaintiffs attended the closing of the sale. *See id.* at p. 22, ¶¶ 22-30. The sale price was $3,950,000, and the net Proceeds of sale were $1,795,405.61, checks for

which were initially made payable to Plaintiffs. *See id.* at pp. 22-23, ¶¶ 23 & 26. The Plaintiffs faced potential tax consequences as a result of the sale, including possible capital gains taxes and FIRPTA withholding tax. *See id.* at p. 21, ¶ 21. At the closing table, Defendant Jeffrey Wechsler (Plaintiffs' then counsel) and Third-Party Defendant Joseph Taplitzky (Plaintiffs' real estate broker), explained to Plaintiffs that they may be able to avoid or limit the tax consequences of the sale through a Section 1031 exchange. *See* J. Wechsler Dep. Tr. at 70:12-22 & 75:14-76:30 (D.E. 84-15); J. Taplitzky Dep. Tr. at 81:23-83:24 (D.E. 84-16). After the discussion with Messrs. Wechsler and Taplitzky, Plaintiffs decided to move forward with the Section 1031 exchange. *See* J. Wechsler Dep. Tr. at 75:14-76:8 (D.E. 84-15); J. Taplitzky Dep. Tr. at 81:23-84:4 (D.E. 84-16).

### B. Plaintiffs Lied When They Entered Into the Exchange Agreement

In light of Plaintiffs decision, Mr. Wechsler stepped out of the closing and contacted NYDEC to see if Plaintiffs could retain it as the QI for the exchange. *See* J. Wechsler Dep. Tr. at 85:6-87:8, 92:12-95:14 & 268:14-17 (D.E. 84-15). When Mr. Wechsler stepped out of the closing, the checks payable to Plaintiffs had not been handed to them. *See id.* at 270:10-20. NYDEC was not told that Plaintiffs had received checks payable for the Proceeds. *See* F. Trinklein Dep. Tr. at 72:15-22 (D.E. 84-13).[2] NYDEC agreed to act as the QI, and the closing of the sale of the Apartment was completed that same day. *See* Joint Pretrial Statement at p. 21, ¶ 29 (D.E. 74). The checks payable to Plaintiffs were voided and the buyer issued new checks for the Proceeds payable to NYDEC. *See* J. Wechsler Dep. Tr. at 98:6-16 (D.E. 84-15); Joint Pretrial Statement at p. 23, ¶¶ 32-34 (D.E. 74). At the same time, Plaintiffs agreed to and signed an Exchange Agreement with NYDEC. *See id.* at p. 22, ¶ 30.

---

[2] Fredrich "Fritz" Trinklein is the President of NYDEC.

In Article 8(C) of the Exchange Agreement (on the signature page, in 12-point type), Plaintiffs certified as follows:

> under penalties of perjury that Owner is not a "Foreign Person" as defined by Section 1445 of the Internal Revenue Code and the regulations promulgate there under, that Owner's United State taxpayer identification number is _____ and that Owner's address if 322 West 57th Street, Apartment 42U1, New York, NY 10019 and that Owner is not subject to a backup withholding.

Exchange Agreement, Art. 8(C), at p. 9 (D.E. 84-5). Plaintiffs, however, were citizens of Israel, and thus were "foreign persons" under US tax law. *See* Joint Pretrial Statement at p. 20, ¶¶ 1, 5-6 (D.E. 74). Moreover, when they signed the Exchange Agreement, Plaintiffs did not have a TIN. *See id.* at p. 21, ¶¶ 19-20.

In agreeing to act as the QI, NYDEC relied on Plaintiffs' representation – NYDEC does not act as a QI involving "foreign persons" due to the complications and financial risks. *See* F. Trinklein Dep. Tr. at 31:8-32:7 (D.E. 84-13). Thus, had Plaintiffs told the truth, NYDEC never would have acted as the QI. Moreover, Mr. Wechsler told NYDEC that the trust had a TIN, and that it would be provided to NYDEC. *See id.* at 85:7-23.

In the Exchange Agreement, Plaintiffs agreed to a number of other key provisions: (1) that NYDEC was not liable if "the transaction otherwise fails, for any reason, to afford Owner the benefits of Section 1031 of the Internal Revenue Code"; (2) that NYDEC makes no guarantee, promise or other representation that the transaction was a valid Section 1031 exchange; (3) that Plaintiffs would hold NYDEC harmless against any claims or expenses arising from the exchange; (4) that Mr. Wechsler would serve as Plaintiffs' agent; and (5) that they would pay NYDEC a fee for acting as the QI – a fee which Plaintiffs never paid. Exchange Agreement, Arts. 6(A), 6(B), (6(F), 8(D), at pp. 7-9 (D.E. 84-5); F. Trinklein Decl., ¶ 4 (D.E. 84-14).

## C.      Plaintiffs' Lie Was Exposed

In order for Plaintiffs to move forward with the Section 1031 exchange, on October 14, 2014, Mr. Wechsler sent to NYDEC the checks from the buyer for the Proceeds, payable to NYDEC. *See* Joint Pretrial Statement at p. 23, ¶¶ 32-35 (D.E. 74). On November 18, 2014, however, Mr. Wechsler notified NYDEC that Plaintiffs no longer wished to move forward with the exchange. NYDEC requested that Mr. Wechsler provide it with Plaintiffs' TIN so that NYDEC could release the Proceeds to Plaintiffs. *See* Nov. 2014 email exchange between NYDEC and Mr. Wechsler (D.E. 84-6). At this point, Plaintiffs finally came clean and admitted that they did not have a TIN. *See* Dec. 23, 2014 email exchange between NYDEC and Mr. Wechsler (D.E. 84-8). NYDEC also learned that Plaintiffs were "foreign persons." These two revelations raised questions for NYDEC as to Plaintiffs because they had both lied and the lack of a TIN indicated they had not complied with their obligation to file tax returns.

Learning that Plaintiffs had lied and were "foreign persons" also raised for NYDEC the specter of FIRPTA withholding tax because the buyer had not withheld the tax. As a result, NYDEC, as the party now holding the Proceeds, was concerned it may be liable for paying that tax and filing any associated forms. *See* Joint Pretrial Statement at pp. 21, 23, ¶¶ 21, 39 (D.E. 74); F. Trinklein Dep. Tr. at 104:2-107:3 (D.E. 84-13). NYDEC was also concerned that Plaintiffs had made it a party to tax fraud. *See* F. Trinklein Dep. Tr. at 104:2-107:3 (D.E. 84-13). NYDEC would spend substantial time and money having to address these issues and understand its potential liability.

Accordingly, NYDEC advised Mr. Wechsler that it might commence an impleader action seeking permission to pay the Proceeds to the IRS. Mr. Wechsler assured NYDEC that there was no fraud, and that Plaintiffs now wished to continue with the Section 1031 exchange. Mr. Wechsler also provided written proof that Plaintiffs had identified a Replacement Property by making an

offer on a condominium within the 45-day "property identification" period. *See* Dec. 2014 email exchanges between NYDEC and Mr. Wechsler (D.E. 84-7).

### D. NYDEC Paid the Withholding Tax to the IRS

The "180-day exchange period" expired on April 8, 2015, and Plaintiffs still had not provided NYDEC with a TIN and had not completed the exchange. Because the purchaser of the Apartment had not deducted the mandatory FIRPTA Withholding Tax from the Proceeds, NYDEC was now responsible for payment of such fee. *See* Joint Pretrial Statement at p. 23, ¶ 39 (D.E. 74). Therefore, at the expiration of the exchange period, and with Plaintiffs consent, NYDEC filed IRS Form 8288, and paid the FIRPTA withholding tax ($395,000) and state withholding tax ($96,206) due as a result of the sale. *Id.* at pp. 23-24, ¶¶ 40 & 43-44. NYDEC paid the FIRPTA and state withholding tax from the Proceeds. *See* Jan. 5, 2016 Agreement at p. 1 (D.E. 84-11). On the IRS Form 8288, NYDEC listed the "Date of Transfer" as April 8, 2015, the last date of the exchange period. *See* Form 8288 (D.E. 84-9).

NYDEC believed that under the IRS rules, April 8 was the proper date to use under exchange parlance because that was the date Plaintiffs were first entitled to receive the Proceeds. That date also minimized any liability that NYDEC or Plaintiffs might face for an alleged failure to file the form and pay the withholding tax at the time of the sale in November 2014. *See* Apr. 10, 2015 Email (D.E. 84-9); F. Trinklein Dep. Tr. at 170:2-176:21 (D.E. 84-13). After NYDEC paid the withholding taxes, the balance of the Proceeds totaled $1,309,199.61. *See* Joint Pretrial Statement at p. 24, ¶ 45 (D.E. 74).

### E. NYDEC Agreed to Release the Vast Majority of the Proceeds to Plaintiffs

NYDEC continued to be concerned that it had been implicated in Plaintiffs tax fraud, and, based on advice provided by counsel hired by NYDEC, was concerned that it faced potential liability if the IRS asserted that the Form 8288 and the FIRPTA withholding tax had been filed

and paid late (defined by the IRS as more than 20 days after the "Date of Transfer"). *See* F. Trinklein Dep. Tr. at 182:21-184:7 & 195:2-15 (D.E. 84-13). Therefore, NYDEC engaged in discussions with Plaintiffs' counsel to address NYDEC's concerns by returning the vast majority of the remaining the Proceeds to them and holding a portion of the Proceeds in escrow. *Id.* at 189:20-190:18 & 195:2-15.

In lieu of continuing to work with NYDEC to resolve the issues they created, in December 2015, Plaintiffs commenced this action against NYDEC and Mr. Trinklein. *See* Complaint (D.E. 1). On January 5, 2016, NYDEC and Plaintiffs agreed that the vast majority of the Proceeds would be paid to Plaintiffs ($1,104,199.61), and $200,000 would be placed in escrow to protect NYDEC's potential liability to the IRS (the "Balance of Escrow"). *See* Jan. 5, 2016 Agreement at p. 1 (D.E. 84-11); F. Trinklein Dep. Tr. at 216:2-14 (D.E. 84-13). Paragraph 3 of the January 5, 2016 agreement states:

> Escrow Agent agrees to continue to hold the sum of Two Hundred Thousand Dollars ($200,000.00) ("Balance of Escrow") until there is an adjudication determining the disbursement of the Balance of Escrow in the Action or a further agreement of both the Plaintiff and Defendants.

Jan. 5, 2016 Agreement at p. 1 (D.E. 84-11). As there has been no adjudication determining the disbursement of the Balance of Escrow nor a further agreement of Plaintiffs and NYDEC, Plaintiffs' counsel continues to hold the Balance of Escrow as required by the explicit terms of the January 2016 agreement.

On July 22, 2016, Plaintiffs filed an Amended Complaint and added Mr. Wechsler as a Defendant. *See* Amended Complaint (D.E. 15). The Court subsequently granted Mr. Trinklein's motion to dismiss the claims against him and granted NYDEC's motion to dismiss to the extent of dismissing Plaintiffs' claims for an accounting and for an injunction. *See* Order (D.E. 34). After the Court's decision on the motion to dismiss, Plaintiffs only remaining claims against NYDEC

are: (1) breach of the Exchange Agreement for the alleged failure to return the Proceeds to Plaintiffs; (2) negligence in filing the Form 8288 and agreeing to act as QI for a Section 1031 exchange that allegedly failed at the outset because the Proceeds were initially payable to Plaintiffs; and (3) conversion based on the alleged failure to return the Proceeds to Plaintiffs.

NYDEC has asserted counterclaims and third-party claims against Plaintiffs.[3] *See* Answer with Affirmative Defenses, Counterclaims and Third-Party Complaint (D.E. 35). Mr. Wechsler asserted a third-party claim against Mr. Taplitzky (a claim which has subsequently been resolved). *See* Second Third-Party Complaint (D.E. 48). The parties completed discovery and filed a Joint Pretrial Statement (D.E. 74).

F.      **NYDEC's Motion for Summary Judgment**

On July 1, 2021, NYDEC filed its motion for summary judgment seeking dismissal of Plaintiffs remaining claims against it. *See* NYDEC's Motion (D.E. 84 to D.E. 84-17); NYDEC's Reply (D.E. 84-18 & 84-19). NYDEC sought summary judgment based on three arguments: (1) Plaintiffs could not maintain a breach of contract claim in light of their failure to perform their obligations under the Exchange Agreement, including their failure to provide NYDEC with a TIN and to pay NYDEC its fee; (2) Plaintiffs' negligence claim failed because NYDEC owed no duty to Plaintiffs; and (3) Plaintiffs' conversion claim improperly duplicated their breach of contract claim, and in any event, NYDEC lawfully obtained the Proceeds and had not asserted dominion over them. Plaintiffs' opposed NYDEC's motion. *See* Plaintiffs' Opposition (D.E. 85 to 85-23).

---

[3] NYDEC did not seek summary judgment on its affirmative claims against Plaintiffs.

The Court ordered the Magistrate Judge to issue a report and recommendation on the motion, which the Magistrate Judge did on December 2, 2021 (D.E. 88).[4]

The Magistrate Judge recommended dismissing Plaintiffs' claim that NYDEC was negligent because it agreed to act as QI for a Section 1031 exchange that allegedly failed at the outset. *See* Report & Recommendation at pp. 12-13 (D.E. 88). The Magistrate Judge's recommendation was based on the determination that NYDEC did not owe Plaintiffs a duty to determine if the Section 1031 failed at the outset. *See id.* The Magistrate Judge also recommended dismissing Plaintiffs' conversion claim because it duplicated Plaintiffs' breach of contract claim. *See id.* at 16-18. NYDEC respectfully submits that the Court should adopt the Magistrate Judge's recommendations to grant NYDEC summary judgment on the foregoing claims.

The Magistrate Judge, however, recommended denying NYDEC's motion for summary judgment on Plaintiffs' breach of contract claim and on Plaintiffs' claim that NYDEC was negligent in filing the Form 8288. *See id.* at pp. 7-10 & 14-16. With respect to Plaintiffs' breach of contract claim, the Magistrate Judge determined that the Exchange Agreement did not require Plaintiffs to pay NYDEC the fee because the exchange was never completed. *See id.* at pp. 8-9. The Magistrate Judge further determined that there was an issue of fact as to whether Plaintiffs' failure to provide NYDEC with their TIN was a material breach that precluded their breach of contract claim. *See id.* at p. 10. As to Plaintiffs' negligence claim related to the Form 8288, the Magistrate Judgment recommended denying NYDEC's motion on that claim because it had a duty to Plaintiffs to use reasonable care in filing the form. *See id.* at p. 15. NYDEC objects to the recommendations to deny, in part, its motion for summary judgment.

---

[4] The Court extended the parties time to file objections to the Report and Recommendation to January 13, 2022. *See* Docket Entry Orders dated Dec. 14, 2021 & Jan. 4, 2022.

## STANDARD OF REVIEW

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Upon de novo review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

## ARGUMENT

## I. PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS BECAUSE THEY FAILED TO PERFORM THEIR OBLIGATIONS UNDER THE EXCHANGE AGREEMENT

In New York, to recover for a breach of contract claim a plaintiff must show "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Communs., Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). The plaintiff cannot recover for breach of contract if it has not performed its obligations. *See GTF Marketing, Inc. v. Colonial Aluminum Sales, Inc.*, 66 N.Y.2d 965, 968 (1985) (holding that plaintiff's breach of contract cause of action should be dismissed because it did not perform its obligations under the contract). The plaintiff's failure to perform must constitute a "material breach." "Whether a failure to perform constitutes a 'material breach' turns on several factors, such as the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefitted under the contract." *Progress Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016). "For a breach to be material, it must go to the root of the agreement between the parties." *See id.* (internal quotation marks and citations omitted).

The indisputable facts establish that NYDEC is entitled to summary judgment on Plaintiffs' breach of contract claim because they failed to provide NYDEC with a TIN, a material obligation

under the Exchange Agreement. The Exchange Agreement clearly required Plaintiffs to provide NYDEC with their TIN – a few inches above Plaintiffs' signatures is a blank space in the agreement for Plaintiffs to provide the number:

> under penalties of perjury that Owner is not a "Foreign Person" as defined by Section 1445 of the Internal Revenue Code and the regulations promulgate there under, that Owner's United State taxpayer identification number is _____ and that Owner's address if 322 West 57th Street, Apartment 42U1, New York, NY 10019 and that Owner is not subject to a backup withholding.

Exchange Agreement, Art. 8(C), at p. 9 (D.E. 84-5).

The foregoing provision not only requires Plaintiffs to provide their TIN, but in it they also swore they were not foreign persons. That sworn certification and requirement for a TIN is in the agreement to ensure that NYDEC does not become a FIRPTA withholding agent. *See* 26 C.F.R. § 1.1445-2(b)(2) (providing that a person can avoid having withhold the FIRPTA tax if it receives a sworn statement from the seller that includes a statement that they are not a "foreign person" and the seller provides its TIN).

Plaintiffs claim that NYDEC breached the Exchange Agreement "by refusing to pay the remaining escrow monies . . . after a new 'exchange property' was not timely identified [in November 2014] and the time period of accomplishing an exchange transaction had ended [in April 2015]." Joint Pretrial Statement at pp. 8-9 (D.E. 74). At the times Plaintiffs allege NYDEC breached the Exchange Agreement (*i.e.*, November 2014 and April 2015), Plaintiffs had not provided a TIN to NYDEC as required by the Exchange Agreement because they did not have one. *See* IRS Notice issuing a TIN to the trust, dated July 9, 2015 (D.E. 84-10).

The failure to provide a TIN is a material breach of the Exchange Agreement because it goes to the "root" of the agreement. As established by the above quoted portion of the agreement, the "root" of the agreement was for NYDEC to act as a QI for a non-foreign person who had a

TIN, thereby allowing NYDEC to avoid becoming a FIRPTA withholding agent, while at the same time allowing the non-foreign person to proceed with a Section 1031 exchange. *See* Exchange Agreement, Art. 8(C), at p. 9 (D.E. 84-5).

The unrebutted testimony of NYDEC's president confirms that the TIN was part of the "root" of the Exchange Agreement. When NYDEC received the fully executed agreement, NYDEC noted that the TIN was not set forth in the agreement, raised the issue with Plaintiffs, and understood that Plaintiffs "were looking for" the TIN. *See* F. Trinklein Dep. Tr. at 232:2-18 (D.E. 84-13). In fact, when NYDEC's President inquired why a TIN was not listed in the agreement, he was told that one would be provided:

> Q. What did you discuss with Mr. Wechsler?
>
> A. Well, we're trying to determine why we were not getting a tax identification number.
>
> Q. So you hadn't received a tax identification number as part of the exchange agreement package, if you will?
>
> A. Correct.
>
> Q. And what did Mr. Wechsler say in this conversation that you had?
>
> A. That -- well, it was part of the conversation that the -- the exchanger was in the process of providing the tax identification number.
>
> Q. Providing to whom?
>
> A. NYDEC.

F. Trinklein Dep. Tr. at 85:7-23 (D.E. 84-13).

NYDEC's President further testified that a TIN was a key requirement to determining whether NYDEC would act as a QI:

> Q. If someone presented themselves to you and said, "We are a foreign person but we 8 have a tax ID number," would you handle that type of transaction?

> A. If they have a tax identification number, we would verify with the bank that this is sufficient for their purposes to be able to do a W-9 for the tax return; a 1099, I guess it is.

F. Trinklein Dep. Tr. at 33:6-14 (D.E. 85-12).

Despite the foregoing undisputed evidence, the Magistrate Judge determined that it was "unclear whether the availability of a TIN" goes to the "root" of the Exchange Agreement. Report & Recommendation at p. 10 (D.E. 88). The primary reason for the Magistrate Judge's conclusion was that "even without access to Plaintiffs' TIN, Defendant could have effectuated the exchange and enjoyed the benefits of the Agreement—*i.e.*, the financial benefit from the bank and the QI fee—albeit with the added responsibility of acting as the withholding agent." *Id.*

Whether, hypothetically, an entity could serve as a QI for a Section 1031 exchange without obtaining a TIN is not the issue here. The clear terms of the Exchange Agreement, and the unrebutted testimony of NYDEC's President, demonstrates that the "root" of the specific agreement was for NYDEC to act as a QI for a Section 1031 exchange involving a non-foreign person who had a TIN so that NYDEC could avoid acting as a FIRPTA withholding agent. This "root" of the agreement is specifically meant to avoid the significant time and expense that would be imposed on NYDEC if it had to serve as a QI for a foreign person, or serve as a QI for a person who did not have a TIN and thus may not have complied with its tax obligations. Thus, forcing NYDEC to act as a QI for a foreign person who did not have a TIN – such as Plaintiffs did here – deprived NYDEC of a substantial portion of the benefits of the agreement and imposed new obligations on NYDEC.

In arriving at his recommendation, the Magistrate Judge also relied on the fact that it was "undisputed that Defendant reviewed the Exchange Agreement and, despite the absence of Plaintiffs' TIN, accepted the proceeds of sale of the relinquished property." Report &

Recommendation at p. 10 (D.E. 88). But, the record shows that NYDEC did not accept the Proceeds knowing that Plaintiffs did not have a TIN. As discussed above, when NYDEC received the Exchange Agreement, it inquired about the missing TIN. In response, NYDEC was told that Plaintiffs "were looking for" the TIN and that it would be provided to NYDEC. *See* F. Trinklein Dep. Tr. at 33:6-14 & 232:2-18 (D.E. 84-13).

In light of foregoing facts, NYDEC is entitled to summary judgment on Plaintiffs' breach of contract claim because they failed to provide NYDEC with a TIN, a material obligation they had under the Exchange Agreement.

## II.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS BECAUSE NYDEC OWED THEM NO DUTY CONCERNING THE FORM 8288

NYDEC is entitled to summary judgment on Plaintiffs' negligence claim because Plaintiffs have failed to demonstrate that NYDEC owed them a legal duty concerning filing the Form 8288 and paying the FIRPTA withholding tax. "To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on defendant's part to plaintiff, breach of the duty and damages." *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 576 (2011). "It is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff. In the absence of duty, there is no breach and without a breach there is no liability." *Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976) (citations omitted). It is "the fundamental obligation of a plaintiff pursuing a negligence cause of action to prove that the putative defendant owed a duty of care." *Valdez v. City of New York*, 18 N.Y.3d 69, 75 (2011).

Plaintiffs assert that NYDEC acted negligently when it allegedly "knowingly remitted a FIRPTA withholding payment with an IRS filing that contained materially incorrect information about the sale transaction." Joint Pretrial Statement at p. 8 (D.E. 74). There is, however, no federal or New York statutory or case law holding that there is a duty running from a QI - who has

unwillingly been made a withholding agent for the FIRPTA tax - to the foreign person with respect to what is included in the FIRPTA withholding tax form.

As discussed *supra* Argument Section I, NYDEC sought to avoid becoming a FIRPTA withholding agent. Plaintiffs, however, lied when they certified that they were not foreign persons and had a TIN. Under these circumstances it is not reasonable for Plaintiffs to expect NYDEC to owe them a duty in connection with an obligation it sought to avoid, *i.e.*, becoming a FIRPTA withholding agent. It is also contrary to public policy to allow Plaintiffs to assert a claim based on how NYDEC sought to comply with obligations it sought to avoid, but that were imposed on it as a result of Plaintiffs' lies. Accordingly, Plaintiffs' negligence claim should be dismissed because Plaintiffs cannot establish that NYDEC owed them a duty with respect to completing the Form 8288.

The Magistrate Judge recommended denying NYDEC's motion for summary judgment on Plaintiffs' negligence claim related to the Form 8288. The Magistrate Judge's recommendation was based on the determination that NYDEC had a duty to act with reasonable care when filing the Form 8288 because it took "on the responsibility of submitting tax paperwork and paying taxes on" Plaintiffs' behalf. Report & Recommendation at p. 15. NYDEC, however, never voluntarily took on the responsibility to file the Form 8288 and pay the FIRPTA withholding tax.

Plaintiffs put NYDEC in the position of having no choice but to file the form and pay the tax when they lied and induced NYDEC to act as the QI. Ordinarily, the buyer's attorney is deemed a withholding agent, with the legal obligation  to submit the FIRPTA withholding tax within 20 days of closing, along with Form 8288. *See* 26 U.S.C. 1445(a); 26 C.F.R. 1.1445-1(c)(1).

Here, the buyer did not withhold the tax and did not file the Form 8288 based upon Plaintiffs' representation that they were engaging in a Section 1031 exchange and certifying in the

Exchange Agreement that they were not foreign persons. Therefore, when the Proceeds were transferred to NYDEC and it learned that Plaintiffs had lied and were foreign persons, NYDEC immediately and unwittingly became a withholding agent, thereby assuming the liability and obligation to file Form 8288 and submit the appropriate withholding tax. *See* Joint Pretrial Statement at p. 23, ¶ 39 (D.E. 74) (including among the parties' stipulated facts that "[u]pon accepting the Exchange Proceeds, NYDEC was required to act as the withholding agent for purposes of paying the FIRPTA withholding tax due as a result of the sale of the Apartment.") NYDEC specifically sought to avoid that tax obligation through the FIRPTA certification in the Exchange Agreement, the certification about which Plaintiffs lied to induce NYDEC to act as the QI. Thus, NYDEC was forced into acting as the withholding agent, and had to file the Form 8288 and pay the FIRPTA withholding tax.

Moreover, if there is a the duty to file the Form 8288 and pay the withholding tax, that duty is not owed to Plaintiffs, but is instead owed to the IRS. Tax law and regulations provide that it is the buyer's, or in certain cases a third party's, duty to withhold the tax, pay it to the IRS, and file the Form 8288 with the IRS. *See, e.g.*, 26 U.S.C. § 1445(a) (". . . the transferee shall be required to deduct and withhold a tax . . . ."); 26 U.S.C. 1445(d) (providing that in certain circumstances third-parties may be liable for the FIRPTA withholding when the seller has submitted a false certification  stating that it is not a foreign person); 26 C.F.R. 1.1445-1(c)(1) ("A transferee must report and pay over any tax withheld . . . . Forms 822 and 8288-A are used for this purpose . . . .). The statute and regulations saying nothing about a duty running from the person who withholds and pays the tax to the seller, *i.e.*, Plaintiffs. Nor do the statute and regulations provide for the creation of an agency relationship between the seller, *i.e.*, Plaintiffs, and the person who withholds and pays the tax.

In making his recommendation, the Magistrate Judge relied on *Limited, Inc. v. McCrory Corp.*, 169 A.D.2d 605 (1st Dep't 1991). *See* Report & Recommendation at p. 15 (D.E. 88). *Limited* is distinguishable from the facts here because in that case the defendants had "deliberately" filed improper tax returns as plaintiff's agent. *See id.* at 606-607. The allegation that the defendant in *Limited* acted "deliberately" indicates that the defendant acted voluntarily. As discussed above, here NYDEC did not act voluntarily in filing the Form 8288. Moreover, as is also discussed above, here there is nothing establishing that NYDEC acted as Plaintiffs' agent in filing the Form 8288.

Under these circumstances, NYDEC owed Plaintiffs no duty with respect to how it prepared and filed the Form 8288, and how it paid the FIRPTA withholding tax to the IRS. Accordingly, NYDEC is entitled to summary judgment on Plaintiffs' negligence claim concerning the Form 8288.

## CONCLUSION

For the reasons set forth above, NYDEC respectfully requests that the Court issue an Order: (i) rejecting the Magistrate Judge's recommendations to deny, in part, NYDEC's motion for summary judgment; (ii) adopting the Magistrate Judge's recommendations to grant, in part, NYDEC's motion for summary judgment; (iii) granting NYDEC's motion for summary judgment in its entirety; and (iv) granting such other and further relief as the Court may deem just and proper.

Dated: January 13, 2022
    New York, NY

**HINSHAW & CULBERTSON LLP**
*Attorneys for New York Deferred Exchange Corp.*

By:_____
        Matthew C. Ferlazzo

800 Third Avenue, 13th Floor
New York, NY 10022
Tel: 212-471-6200
Email: mferlazzo@hinshawlaw.com